Joshua Koltun (Bar No. 173040)
Attorney
101 California Street
Suite 2450, No. 500
San Francisco, California  94111
Telephone:  415.680.3410
Facsimile:  866.462.5959
joshua@koltunattorney.com

Attorney for Defendants
"Doe B" and "Doe W"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | | |
|---|---|---|
| ART OF LIVING FOUNDATION, a California corporation, | ) ) ) | Case No.:  CV 10-5022-LB |
| Plaintiff, | ) ) ) | **MOTION TO DISMISS OF DEFENDANTS DOE/KLIM AND DOE/SKYWALKER AND** |
| v. | ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| DOES 1-10, inclusive, | ) ) | **THEREOF** |
| Defendants. | ) ) ) | |
| | ) ) ) ) ) | Date:        March 17, 2011 Time:        11:00 am Judge:       Hon. Laurel Beeler Courtroom: 4 |

Documents filed herewith:
1.  Special Motion to Strike and MPA
2.  Motion to Quash and MPA
3.  Request for Judicial Notice
4.  Declaration of Doe/Klim
5.  Declaration of Doe/Skywalker
[Proposed] Order (lodged)

Joshua Koltun ATTORNEY

# Table of Contents

*I.*   *This Court Has No Personal Jurisdiction Over Defendants* .............................................................4

*II.*   *The Complaint Does Not State a Cognizable Claim for Defamation or Trade Libel* .....................5

A.   On a Motion To Dismiss Claims in Defamation, The Court Must Apply a Heightened Pleading Standard, Requiring that the Specific Statements be Set Forth, and Must Take Judicial Notice of the Full Context In Which The Statements Were Made.................................................................5

B.   Defendants Have An Absolute Right Under the First Amendment to Urge Persons to Avoid a Religious Organization..........................................................................................................6

C.   The Allegedly Defamatory Statements Are Not "Of and Concerning" Plaintiff ............................8

D.   The Statements at Issue are Constitutionally Protected Opinion ..................................................10

   1.   The Court Must Consider the "Totality of the Circumstances in Determining Whether a Statement Is Constitutionally Protected Opinion..........................................................................11

   2.   Opinions Based on Facts that are Disclosed to the Reader – or which are Expressly Based on Speculation Rather than Asserted Facts – Are Not Actionable, No Matter How Unreasonable the Opinion May Be .........................................................................................................13

E.   The Statements Specifically Placed At Issue by the Complaint are Statements of Opinion..........14

   1.   Statements Alleging Physical or Psychic Abuse or Damage Are Opinion .........................14

   2.   Plaintiffs Cannot Be Held Liable For Criticising And Raising Questions About the Churches' Financial Practices and Lack of Transparency.................................................................16

   3.   Statements Can Be Opinion Even If They Use Terms That May Connote Criminality in Other Contexts .................................................................................................................18

F.   Plaintiff Has Not Alleged That the Statements At Issue Were Made With "Actual Malice"........18

G.   Plaintiff Cannot Evade First Amendment Protections Here by Characterizing Its Cause of Action As "Trade Libel" ................................................................................................................20

*TABLE OF AUTHORITIES*

**Cases**

*Annette F. v. Sharon S.,* 119 Cal. App. 4th 1146, 1164; (2004) ..............................................20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). ...................................................................5

*Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 881 (9th Cir. 1988) ......................................11

*Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 263 (1986); ............................................14

*Barger v. Playboy Enterprises*, 564 F. Supp. 1151, 1154 (N.D. Cal. 1983) ...............6, 8, 10, 18

*Barry v. Time, Inc.*, 584 F. Supp. 1110, 1121-1122 (N.D. Cal. 1984)........................6, 18, 20

*Blumenthal v. Drudge*, 992 F. Supp. 44, 49 n.7 (D.D.C. 1998)...........................................12

*Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) .....................................................5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). ...........................................4

*Campanelli v. Regents of Univ. of Cal,* 44 Cal. App. 4th 572, 577-80.................................15

*Carr v.Warden*, 159 Cal.App.3d 1166, 1170 (1984); .........................................................14

*Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1091 (4th Cir. 1993)( ..................................17

*Church of Scientology v. Adams*, 584 F.2d 893, 899 (9th Cir. 1978)..................................5, 8

*Church of Scientology v. Flynn*, 744 F.2d 694, 697, (9th Cir. 1984).....................................9

*Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)..............................................................5

*Deupree v. Iliff*, 860 F.2d 300, 303-04 (8th Cir. 1988)........................................................13

*Dunn v. Gannett New York Newspapers*, 833 F.2d 446, 453-54 (3d Cir. 1987) ....................18

*Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App.4th 1359, 1384 (1999) .....................14

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers,*
    542 F.2d 1076, 1083 (9th Cir. 1976) ..........................................................................6

*Gertz v. Robert Welch, Inc.*, 418 U.S., 323, 339-340 (1974);..............................................10

*Greenbelt Coop. Publishing Assoc. v. Bresler*, 398 U.S. 6, 14 (1970)............................11, 18

*Gregory v.McDonnell Douglas*, 17 Cal.3d 596, 603 (1976). ..........................................14, 17

*Higgins v. Maher*, 210 Cal. App. 3d 1168 (1989). ..............................................................7

*Hunter v. Hartman*, 545 N.W.2d 669, 705 (Minn. Ct. App. 1996); ....................................13

Joshua Koltun ATTORNEY

*Hustler Magazine v. Falwell*, 485 U.S. 46  (1988)....................................................21, 22

*In re Yagman*, 796 F.2d 1165, 1173-75 (9th Cir. 1986) ("*Yagman I*")............................15, 18

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)....................................................4

*Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1989)......................................21

*Live Oak Publishing Co. v. Cohagan*, 234 Cal. App. 3d 1277, 1289 (1989) .......................19

*McVicker v. King*, 266 F.R.D. 92, 95-96 (W.D. Pa. 2010) ................................................5

*Moldea v. New York Times Co.*, 22 F.3d 310, 311-15 (D.C. Cir. 1994 ..............................12

*Nanavati v. Burdette Tomlin Memorial Hospital*, 857 F.2d 96, 99 (3d Cir. 1988) ..............13

*New York Times v. Sullivan,* 376 U.S. 254 (1964)..........................................................19

*Nicosia v. De Rooy*, 72 F.Supp. 2d 1093, 1101 (N.D. Cal. 1999); ....................................12

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995) .................................11, 12, 13, 15

*Paul v. Watchtower Bible & Tract Soc.*, 819 F.2d 875, 878 (9th Cir. 1987).........................7

*PETA v. Berosini*, 895 P.2d 1269, 1275 (Nev. 1995) ......................................................15

*Prince v. Massachusetts*, 321 U.S. 158, 177, 88 L. Ed. 645, 64 S. Ct. 438 (1944) ...............7

*Provisional Government of Republic of New Afrika v. American Broadcasting Co.*, 609 F. Supp. 104, 108 (D.D.C. 1985). ............................................................................................8, 9

*Reader's Digest Assn. v. Superior Court*,  37 Cal.3d 244, 253–254. ...............................19

*Riley v. Harr*, 292 F.3d 282, 290-91 (1st Cir. 2002)........................................................14

*Rosenaur v. Scherer* 88 Cal.App.4th 260, 278-89, 80 (2001)( ......................................11

*Rudnick v. McMillan,* 25 Cal.App. 4th 1183, 1189-91 (1994) ........................................20

*Sands v. Living Word Fellowship*, , 34 P.3d 955, 958 (Alaska 2001). ...............................7

*Standing Committee v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (*"Yagman II"*) .........13

*Stolz v. KSFM 102 FM*,, 30 Cal. App. 4th 195, 205 (1984)............................................19

*Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir. 1967)............................5

*Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) ......................10, 11

*Waldbaum v. Fairchild Publications, Inc.* 627 F.2d 1287, 1295-1296, fn. 22 (D.C. Cir. 1980)...........19

*Western Broadcast Co. v. Times Co.*, 14 Cal. App. 2d 120, 124 (1936). ...........................10

*Weyrich v. New Republic, Inc.*, 235 F.3d 617, 620 (D.C. Cir. 2001) ................................16

Joshua Koltun ATTORNEY

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)..................................................4

*Yorty v. Chandler,* 13 Cal.App.3d 467, 471, 477 (1970).....................................................................16

**Rules**

Rule 12 ...........................................................................................................................................4

**Treatises**

W. Page Keeton, *Prosser and Keeton on Torts* 814 (5th ed. 1984)...................................................15

1   TO PLAINTIFF ART OF LIVING FOUNDATION AND ITS COUNSEL OF RECORD:

2   PLEASE TAKE NOTICE that on March 17, 2011, at 11 a.m., or as soon thereafter as counsel may be

3   heard, in Courtroom Four of this court, located at 1301 Clay Street, Oakland, defendants Doe/Klim

4   and Doe/Skywalker will specially appear and move the Court for an order dismissing plaintiff's

5   Complaint pursuant to Rule12(b)(2) and (6) of the Federal Rules of Civil Procedure.  This motion is

6   based upon this Motion to Dismiss, on the Memorandum of Points and Authorities that follows, on

7   Defendant's Request for Judicial Notice and the exhibits thereto, on the Declarations  of Doe/Klim and

8   Doe/Skywalker, all submitted herewith, , on all the pleadings, records and files in this case, and on

9   such further material and argument as may be submitted at or before the hearing on this motion.

10         Defendants respectfully request that the Complaint be dismissed because Plaintiffs have not

11   alleged that this Court has personal jurisdiction over any Defendants, and because Doe/Klim and

12   Doe/Skywalker are aliens who reside outside the U.S.  Defendants also request this Court to dismiss

13   the Defamation and Trade Libel counts, as to all Defendants, on the ground that Plaintiff has failed to

14   state a claim.

15                                           *SUMMARY*

16         Defendants here are the creators of the two Blogs at issue, and will be referred to herein under

17   their pseudonyms, "Klim" and "Skywalker."  They have standing to assert the rights of all

18   Defendants.  The Complaint does not allege that they are residents or are citizens of the United States,

19   and in fact they are not.  Nor has the Complaint alleged any basis for the Court to find that it has

20   personal jurisdiction over them.

21         The Complaint also fails to state a claim for defamation or trade libel.  Under the First

22   Amendment, these claims are subject to a heightened pleading standard.  Only the 18 statements that

23   have been specifically cited in the Complaint ("Statements") should be considered to be at issue, and

24   these must be considered in their proper context, of which this Court must take judicial notice.  (See

25   Request for Judicial Notice, which has a "scorecard" showing where the statements appear).  Plaintiffs

26   fail to state a claim for the following reasons.

27         *First,* Defendants have an absolute right under the Free Exercise Clause to urge people to

28   avoid, or to leave, a religious or spiritual organization.  That is, in essence, what the Blogs have been

Joshua Koltun ATTORNEY

1   doing: urging people to carefully consider whether they wish to associate with any of the multifarious

2   organizations surrounding "His Holiness Sri Sri Ravi Shankar" – the leader, according to defendants

3   of a harmful and manipulative cult.

4       *Second,* the First Amendment (and California law) require a defamation plaintiff to show that

5   the statement at issue are referring to *him.*  A corollary rule is that a plaintiff cannot sue on a

6   statement that refers to a large group of people or organizations (i.e. 25 or more), even if plaintiff is a

7   member of that group.  Plaintiff cannot meet the "of and concerning" requirement.  Nor can an

8   organization claim that it is defamed by statements about specific members, or about its leader.  None

9   of the statements at issue are "of and concerning" plaintiff, the ***United States chapter*** of the Art of

10  Living Foundation.

11      *Third,* the First Amendment bars liability for statements of "opinion."  A statement that does

12  not make or imply an assertion of fact is not actionable, no matter how offensive it may be.  The Court

13  must apply a "totality of the circumstances" test to determine whether a statement is truly an assertion

14  of fact.  This requires examining the full context in which the statement appeared, and eliminating

15  epithets, hyperbole, figurative language, comments, and subjective statements that are not susceptible

16  of being proven true or false.  Considered in their full context, the Statements at issue are all

17  "opinion" once considered on the totality of the circumstances.

18      *Fourth,* where, as here, the plaintiff is a public figure, the statements at issue must have been

19  made with "actual malice," which in the First Amendment context means with knowledge that the

20  statement was false or with reckless disregard as to whether or not it was true.  The Complaint does

21  not allege actual malice, or any facts showing actual malice.

22      Plaintiff cannot avoid these First Amendment requirements by characterizing its claims as

23  "trade libel," that is to say the disparagement of the quality of the property, goods or services of a

24  business.  Assuming *arguendo* that this commercial disparagement tort applies to a religious or

25  spiritual organization, the First Amendment bars this claim for the reasons just stated.

26      The Complaint should be dismissed.

27

28

Joshua Koltun ATTORNEY

1

2                                              *FACTS*

3          ***Sri Sri Ravi Shankar and the various organizations founded by him.***   The Art of Living

4   Foundation ("AOL") is an international educational and humanitarian organization based in India,

5   with "regional centers" or chapters[1] in 140 countries..  Complaint, ¶ 1, RJN, ¶ 1 & Exh A.  It was

6   founded by "His Holiness Sri Sri Ravi Shankar" ("Shankar").  Complaint, ¶16.[2]  He has also founded

7   a variety of related "service" organizations.  RJN, ¶ 2 Exh B.

8          ***Plaintiff***.  Plaintiff is the United States Chapter of AOL, which is separately incorporated as a

9   California nonprofit corporation.  Complaint, ¶ 2, 13,  22.  The primary objectives and purposes of

10   Plaintiff include "to provide funds, materials, volunteers, and/or other resources for international relief

11   efforts through various organizations including the AOL Foundations worldwide, the AOL

12   International Organization, the International Association for Human Values, the VVM Organization,

13   and various Trusts established for that purpose."  RJN, ¶ 3 & Exh.C (Amended Articles of

14   Incorporation).

15          ***Defendants.***   Defendant Doe/Klim is the creator of the "Leaving the Art of Living Blog."  He

16   is not a citizen of the United States and does not reside there.  Declaration of Doe/Klim ("Decl.Klim")

17   ¶ 1.  Defendant Doe/Skywalker is the creator of the Beyond the Art of Living Blog.  He is not a

18   citizen of the United States and does not reside there.  Declaration of Skywalker ("Decl.S.W."), ¶ 1.

19   Neither one has a contractual relationship with Plaintiff.  *Id.*

20          ***Defendant's Blogs.***   The ostensible purposes of the Blogs are to provide former students of

21   Plaintiff and those doubting Plaintiff's teachings a space to heal, find answers, and understand the

22   processes they went through as "members" and "drop-outs."  Complaint, ¶ 56, RJN, ¶¶ 4, 5 & Exhs. D

23   & E.  Although the contributors to the blogs certainly tend predominantly to be disenchanted (to say

24   _____

25   [1]  The Complaint is vague about the precise corporate nature and organizational structure/heirarchy  of the corporate
     nature of the other 140 "regional centers" in each country, described as "chapters" in AOL's own literature.  *See* RJN, Exh.
26   A, *see also* Disclosure of Interested Parties filed with this Court (listing "International Art of Living Foundation" as an
     interested party).

27   [2] "Sri Sri" is a Sanskrit honorific.  Sri Sri Ravi Shankar is not related to the famous musician of the same name.  He is also
     referred to as "Ravishankar" or by other honorifics such as "Guruji."
28

*Joshua Koltun* ATTORNEY

Joshua Koltun ATTORNEY

1   the very least) with Shankar and AOL and its associated organizations, teachings and practices, some

2   contributors have spoken up in support of Shankar and AOL in varying degrees.[3]  Both Blogs also

3   provide links to other Blogs and websites, including each other, and including with opposing views.

4   RJN, ¶¶ 6, 7 & Exhs. F, G. For example the LAOL Blog (which bears the subtitle, "Confessions of a

5   Guruholic," prominently directs its readers by hyperlink to a competing blog, "Exposing the

6   Guruholic,") which is devoted to debunking the LAOL Blog.  *Id.*  As another example, BAOL

7   published a pro-AOL article entitled "A letter of concern," by Ann Godwin, as well as an article (and

8   comments) responding thereto.  RJN, ¶ 5 & Exh. E3 & E4.  In other places, Blogs commenters on the

9   blog copy or hyperlinking to points made by pro-AOL bloggers, engaging in a cross-blog debate.[4]

10                                  ***ARGUMENT***

11        **I.        This Court Has No Personal Jurisdiction Over Defendants**

12         In order for a court to exercise personal jurisdiction over a non-consenting, non-resident

13   defendant, the Due Process Clause requires a plaintiff to demonstrate that: (1) the non-resident "has

14   'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that

15   state 'does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.

16   Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-

17   77 (1985).   These requirements "give[ ] a degree of predictability to the legal system that allows

18   potential defendants to structure their primary conduct with some minimum assurance as to where that

19   conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson,* 444

20   U.S. 286, 297 (1980). The Plaintiff bears the burden of pleading specific facts sufficient to support the

21   Court's exercise of personal jurisdiction over the Defendants.  A motion under Rule 12 (b)(2) can be

---

[3]  *See, e.g.*, RJN, Exh. E8, comment posted by "beaconofreason," August 25, 2010,  4:43

[4]For example, RJN, Exh. E8 contains an extensive debate back and forth over points raised in a letter denouncing the Blogs and other defectors.  The article *JGD, someone is peeing in his pants,*  RJN, Exh.E7, begins with a hyperlink to a pro-AOL blog, Exh. E7a --  which is then extensively and vehemently mocked, there and in the comments [of which statement C is a part]; *see also* RJN, Exh. D5 ("Eaten Up") (comment at April 24, 2010 5:30 PM,) commenter re-posts comment by devotee ("I, too, like others, have doubted whether it is necessary for Guruji to fly first-class, or stay in expensive hotels.  My personal observation is …. I have been astounded by how simple the settings are.  There was no sign of wealth.  If he stays in a hotel, I believe it is because there is always a throng of devotees waiting to talk to him, and only if he stays in a suite, is it possible to accommodate those devotees.  It is not because he loves large rooms or expensive hotels."

Joshua Koltun ATTORNEY

properly supported by affidavit, and the mere allegations of the complaint will not defeat it.  *Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir. 1967).  Here, Plaintiff has not even alleged that this Court has personal jurisdiction over *any* Defendants, let alone alleged a factual basis for such jurisdiction. Complaint, ¶¶ 11, 12.  And, indeed, Defendants Klim and Skywalker are neither citizens nor residents of the United States, let alone of California.  Moreover, as explained below in section II.C, the specific statements placed at issue by the Complaint, when considered in full context, do not indicate that the statements at issue relate to Plaintiff – the AoL Foundation of the United States. *Church of Scientology v. Adams*, 584 F.2d 893, 899 (9th Cir. 1978) (finding no jurisdiction, reasoning that "if jurisdiction properly may be exercised in California based on the articles at issue here, appellees equally may be called upon to defend against defamation charges in every state where a Scientology branch is located.")  The complaint should be dismissed for lack of personal jurisdiction as to all defendants.[5]

## II.    The Complaint Does Not State a Cognizable Claim for Defamation or Trade Libel

### A.    On a Motion To Dismiss Claims in Defamation, The Court Must Apply a Heightened Pleading Standard, Requiring that the Specific Statements be Set Forth, and Must Take Judicial Notice of the Full Context In Which The Statements Were Made

Under Rule 12(b)(6), a complaint should be dismissed where, assuming that all material factual allegations are true, the pleadings or other documents properly before the court establish plaintiff cannot state a claim.  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) *overruled on other grounds, Galbraith v. County of Santa Clara,* 307 F.3d 1119 (9th Cir. 2002); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).  A plaintiff alleging defamation thus cannot evade dismissal by quoting statements in the complaint without their proper context, since the Court can and should take judicial notice of the full context of the statements under Federal Rule of Evidence 201.

Moreover, while a court is required to accept as true allegations of *fact,* it should not accept allegations of legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

---

[5]  Defendants Klim and Skywalker have standing to assert the constitutional rights of other Doe defendants.  *See, e.g., McVicker v. King*, 266 F.R.D. 92, 95-96 (W.D. Pa. 2010)( "entities such as newspapers, internet service providers, and website hosts may, under the principle of *jus tertii* standing, assert the rights of their readers and subscribers.")

1   Moreover, only a complaint that states "a plausible claim for relief" should survive a motion to

2   dismiss, which is a "context-specific task that requires the reviewing court to draw on its judicial

3   experience and common sense." *Id.* at 1450.

4           Moreover, "in any case … where plaintiff seeks damages or injunctive relief … for conduct

5   which is prima facie protected by the First Amendment, the danger that the mere pendency of the

6   action will chill the exercise of First Amendment rights requires more specific allegations than would

7   otherwise be required." *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd.*

8   *of Culinary Workers,* 542 F.2d 1076, 1083 (9th Cir. 1976)

9           Thus, for example in *Barger v. Playboy Enterprises*, this Court applied the heightened

10  pleading standard of *Franchise Realty,* requiring plaintiffs to show precisely how the text of the

11  allegedly defamatory articles in question met the requirement that they be "of and concerning" the

12  plaintiffs. *Id.,* 564 F. Supp. 1151, 1154 (N.D. Cal. 1983)   Similarly, in *Barry v. Time, Inc.*, this Court

13  dismissed a defamation claim for failure to plead "actual malice" with sufficient specificity. *Id.,* 584

14  F. Supp. 1110, 1121-1122 (N.D. Cal. 1984).

15          Since the claims at issue implicate the First Amendment rights of defendants, this heightened

16  pleading standard applies.  The Court should ignore as conclusory and insufficiently specific the

17  contention that these statements "are a small sample of the complete false and defamatory statements

18  … published on the Blogs."  Complaint, ¶ 64.  The Court should consider only the 18 specific

19  allegedly defamatory statements placed at issue by the Complaint (on pages 10-12), and should take

20  judicial notice of the overall context in which they appeared.  (For ease of reference, the 18 statements

21  specified in the Complaint will be referred to herein as the "Statements," and will be assigned labels

22  [A through S, in the order they appear in the Complaint -- for the assistance of the Court, Defendants

23  have created a handy "scorecard" in the Request for Judicial Notice to cross-reference where each

24  statement appears).[6]

25      **B.      Defendants Have An Absolute Right Under the First Amendment to Urge Persons to**
            **Avoid a Religious Organization**
26

27  ───────────────

    [6]  *Compare* RJN, ¶¶ 4, 5 & Exhibits D, E (presenting the context in which the statements appeared, in chronological order,

28  *with* Table immediately following,  cross referencing by order that they appear in the Complaint.  The Complaint lists 19
    statements, but one of them is repeated twice (L and O).

Joshua Koltun ATTORNEY

The Free Exercise Clause of the First Amendment creates an absolute privilege for statements made to convince a person to leave, or not to join, a religious organization.  In *Sands v. Living Word Fellowship*, the plaintiff claimed that a church had negligently and intentionally inflicted emotional distress upon him and breached its duty of care to him by urging its members to avoid ("shun") him and other members of his church, calling his church a "cult," and referring to him as a "cult recruiter." *Id.,* 34 P.3d 955, 958 (Alaska 2001). The Court held that the Free Exercise of Religion Clause protected the right of the defendants to urge others to "shun" plaintiff and his church, and to try to convince members of plaintiff's church to "renounce and change their religious beliefs." *Id.* at 958-59.

Similarly, in *Paul v. Watchtower Bible & Tract Soc.*, the court held that a church had an absolute right under the Free Exercise clause to shun former members of its church. *Id.*, 819 F.2d 875, 878 (9th Cir. 1987) The Court reasoned that "Courts generally do not scrutinize closely the relationship among members ***or former members"*** of a church. *Id.* at 883 (emphasis added). "[R]eligious activities which concern only members of the faith are and ought to be free -- as nearly absolutely free as anything can be." *Id.* (*citing Prince v. Massachusetts*, 321 U.S. 158, 177, 88 L. Ed. 645, 64 S. Ct. 438 (1944) (Jackson, J. concurring)).

The Free Exercise Clause's privilege to discuss religious matters extends not only to overall conclusions – e.g. that a sect is a "cult" --  but also to underlying false factual allegations made within the religious context.  In *Higgins v. Maher***,** the court upheld the dismissal of a lawsuit against the Catholic Church liable for defamation, invasion of privacy, and intentional infliction of emotional distress, among other claims, arising from false allegations that plaintiff, a priest, had committed sexual misconduct.  *Id.,* 210 Cal. App. 3d 1168 (1989).  The Court reasoned that whereas "battery, false imprisonment or conversion cannot be perpetrated by a church upon its members with civil impunity," claims of injurious falsehood were "simply too close to the peculiarly religious aspects of the transaction to be segregated and treated separately." *Id.* at 1176.

Here, the overarching argument of the Blogs is that the various AOL national chapters and foundations and related service organizations are all part of a cult surrounding Ravi Shankar and that persons should think very carefully about whether they wish to join, or to remain a part of, the cult. *See, e.g.*, RJN Exh. D6.  Significantly, some of the Statements are precisely about Shankar's and

AOL's shunning former members of the cult.[7]  Other statements clearly appear in the context of discussions of Ravi Shankar's religious doctrines.[8]

### C.      The Allegedly Defamatory Statements Are Not "Of and Concerning" Plaintiff

Plaintiffs who sue for defamation must show that the allegedly libelous statements were made 'of and concerning' them, i.e., referred to them personally. When an article names specific individuals, this  is easily done. However, when the statements concern groups, as here, plaintiffs face a more difficult and sometimes insurmountable task. If the group is small and its members easily ascertainable, plaintiffs may succeed. But where the group is large -- in general, any group numbering over twenty-five members -- the courts in California and other states have consistently held that plaintiffs cannot show that the statements were "of and concerning them.

This rule embodies two important public policies. First, where the group referred to is large, the courts presume that no reasonable reader would take the statements as literally applying to each individual member. Second, and most importantly, this limitation on liability safeguards freedom of speech by effecting a sound compromise between the conflicting interests involved in libel cases. On the one hand is the societal interest in free press discussions of matters of general concern, and on the other is the individual interest in reputation. The courts have chosen not to limit freedom of public discussion except to prevent harm occasioned by defamatory statements reasonably susceptible of special application to a given individual.

*Barger,* 564 F. Supp. at 1153 (internal citations omitted).  By the same token, "[s] tatements which refer to individual members of an organization do not implicate the organization."  *Provisional Government of Republic of New Afrika v. American Broadcasting Co.*, 609 F. Supp. 104, 108 (D.D.C. 1985).

In *Church of Scientology v. Adams*, the Court of Appeals for the Ninth Circuit considered the application of the "of and concerning" requirement, and its corollary "group libel" rule in a case

---

[7] *See, e.g.,* Statement H ("He [Ravi Shankar] will use you until he no longer sees you as useful. If you try to leave and he is afraid you known too much about him, he will threaten you, directly, from his own mouth, and through others. You would not be the first, and will not be the last to leave and come under threat, ridicule, and be subject to lies and sick rumors."); Statement L/O ("And so, some remain anonymous because of verbal and physical threats made, and others because of psychic threats made, yes, even by the precious master himself!").  Note that Statement S appears in the context of an article (RJN, Exh. E9) that substantiates the allegations in the Statement about shunning – the article cites an open letter published and widely circulated by an AOL official (Swami) denouncing and identifying defectors. *Id.,see also* Exh. 7a (original Swami letter).  It purports to list the contact information for former associates and boyfriends of a defector who will purportedly confirm that she is mentally ill.  *Id.*

[8]  Statements D and E, relating to unidentified "teachers" who have "taken advantage of their status" sexually or "rap[ed] female students," RJN, Exh __ occur in the context of a discussion of desirability of Ravi Shankar's encouraging celibacy, and whether the recommendation to take "cold showers" when one has sexual thoughts is a feasible solution, or rather may have undesirable consequences.

Joshua Koltun ATTORNEY

strikingly similar to this one.  *Id.,* 584 F.2d 893, 899 (9th Cir. 1978).  Plaintiff, the Church of Scientology of California (CSC), alleged that it was defamed by statements which (it alleged) indicated that (1) that Scientology is not a religion but rather a commercial enterprise and that CSC is a commercial business; (2) that CSC exploits individuals for money and confers no benefits of a spiritual, religious, or other nature on its members; (3) that CSC is operated solely for the personal and financial aggrandizement of L. Ron Hubbard, the founder of Scientology, at the financial and emotional expense of its members;(4) that CSC is operated by "'a group of paramilitaristic fanatics who motivate and control members by instilling a fear of reprisal, and who drive members insane and harass members' who leave the organization."  *Id.* at 892-893.  "Further, it was alleged that CSC was defamed by reason of untruthful and highly derogatory remarks about Scientology's founder, L. Ron Hubbard."  *Id.*  The Court indicated that "there is serious doubt that the articles refer to [CSC]" and, at least in part because of that grave doubt, held that there was no jurisdiction over defendants.  *Id.* at 899.[9]

The Statements here are not, when considered in context "of and concerning" Plaintiff – the Art of Living Foundation of the United States -- as opposed to other unspecified national chapters of Art of Living.  Many of the statements, refer not to the organization itself, but to specific individuals.  In many cases the individuals are not identified -- rather the statement refers only to unnamed "teachers,"[10] "lackeys"[11] of Shankar.  In other cases the statements refer directly to Ravi Shankar,[12] or more generally, to members of his family and/or entourage.[13]  In neither event can these references to specific individuals be "of and concerning" AOL of the United States, or, indeed, to any particular AOL chapter or affiliated service or other organization.  *Provisional Government of New Afrika,* 609

---

[9]  By contrast, in *Church of Scientology v. Flynn,* CSC brought a defamation lawsuit against a lawyer who had been involved in litigation against CSC, and who had made remarks that, in context, were reasonably understood to refer to CSC specifically as opposed to "Scientology as a whole."  *Id.* 744 F.2d 694, 697, (9th Cir. 1984).  In this context, the Court found that CSC had shown that the statements at issue were "of and concerning" plaintiff.  *Id.*

[10]  Statements D and E, RJN Exh. D3.

[11]  Statement J, RJN, Exh.D5

[12]  Statement P, RJN Exh D4

[13]  Statement J, RJN Exh. D5

Joshua Koltun ATTORNEY

1   F. Supp. at 108.  Other statements refer generally to AOL, without specifying which of the many

2   possible chapters, or all chapters, or AOL meaning generally "all those who follow Ravi Shankar" is

3   being referred to.  Under the "of and concerning" and "group libel" rules, such statements do not

4   defame Plaintiff.  *Barger,* 564 F. Supp. at 1153.

5        The only statement that makes any reference at all to the United States is Statement F: "The

6   'dollar a day program was started in the US.  The money never went to that cause."  RJN, Exh.E1.

7   The context immediately following this statement, however, shows that the speaker is referring to a

8   person (Shankar's sister, "Bhannu-didi") in a recipient country (India) who

10       when asked which children's photo's [sic] were to be sent to which donors (the list was
         small then the numbers of kids also small), her response was an annoyed 'doesn't
11       matter, just take a photo and send it to someone on the list"  Details were to be made
         up, as westerners didn't speak the children's language.  Each donor in those days was
12       under the sadly mistaken impression that they were sponsoring a particular child."

13  *Id.*  In context then, no wrongdoing by Plaintiff is suggested.  On the contrary, the statement seems to

14  indicate that it is the "westerners" who are being defrauded by the conduct discussed.  Similarly, many

15  of the statements at issue concern the use (or misuse)  of donor funds only after they arrive in India.

16  *See, e.g.,* RJN Exh. E2 (*The AOL Trance is Broken* article).

17       **D.      The Statements at Issue are Constitutionally Protected Opinion**

18       It has long been the law of California that a statement is not defamatory merely because it is

19  hostile or offensive to the plaintiff.  *Western Broadcast Co. v. Times Co.*, 14 Cal. App. 2d 120, 124

20  (1936).  A statement that only recites the author's argument or ultimate conclusions is not defamatory.

21  *Id.*   The First Amendment compels this rule, for "there is no such thing as a false idea. However

22  pernicious an opinion may seem, we depend for its correction not on the conscience of judges and

23  juries but on the competition of other ideas."  *Gertz v. Robert Welch, Inc.*, 418 U.S., 323, 339-340

24  (1974);  *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995); *Partington v. Bugliosi*,

25  56 F.3d 1147, 1153 (9th Cir. 1995).

26       Whether a statement could be reasonably understood as defendant's assertion of subjective

27  opinion presents a question of law for the Court.  *Partington*, 56 F.3d at 1152-53.  In answering this

28  question, the court must consider whether the average member of the audience to whom the speakers

Joshua Koltun ATTORNEY

commentary was addressed would have understood his assertions, considered in context, as opinions rather than literal statements of objective facts.  *Id.* at 1153;  *Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 881 (9th Cir. 1988).

> ### 1.    The Court Must Consider the "Totality of the Circumstances in Determining Whether a Statement Is Constitutionally Protected Opinion

To determine whether a statement "implies a factual assertion," the Court of Appeals for the Ninth Circuit applies a a three-factor test:

> [W]e examine the ***totality of the circumstances*** in which it was made.  First, we look a the statement in its ***broad context***, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work.  Next we turn to the ***specific context and content*** of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation.  Finally, we inquire whether the statement itself is sufficiently factual to be ***susceptible of being proved true or false***.

*Underwager*, 69 F.3d at 366 (citations omitted; emphasis added); *accord Partington*, 56 F.3d at 1153.

**Broad Context**  In *Underwager*, the Court considered the fact that the speaker was the proponent of one point of view in a heated debate over child witness reliability, and that his comments were in the nature of a spirited critique of his opponent's position.  69 F.3d at 366-67.  In such a context, the audience expects "emphatic language on both sides[, and t]herefore ... would be likely to recognize that the statements did not represent provable assertions."  *Id.*  In *Greenbelt Coop. Publishing Assoc. v. Bresler*, 398 U.S. 6, 14 (1970), the Court considered the context of an article about a developer's dealings with local government and the fact the challenged statements were made in the context of a heated debate over a proposed development.  In those circumstances, the term "blackmail" was understood as "rhetorical hyperbole, a vigorous epithet," not as an assertion of fact."  Id. at 13-14.[14]

Moreover, the broad context also includes the medium, format, and genre in which the remarks appear – for example whether the statement was on a news broadcast or in a comedian's monologue.

---

[14] Hyperbolic statements  -- such as "thief" and "liar" in a heated exchange – are protected, "provid[ing] assurance that public debate will not suffer for lack of 'imaginative expression' or 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Rosenaur v. Scherer* 88 Cal.App.4th 260, 278-89, 80 (2001)(citation omitted).   The "profound national commitment" to robust debate "may well include vehement, caustic and sometimes unpleasantly sharp attacks."  *Ghafur v. Bernstein,*  131 Cal.App.4th 1230, 1236-37 (2005)(quoting *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).   Thus even the crassest terminology is protected.[14]

Joshua Koltun ATTORNEY

*See, e.g. Moldea v. New York Times Co.*, 22 F.3d 310, 311-15 (D.C. Cir. 1994); *accord Partington*, 56 F.3d at 1153-54 (readers expect book written by lawyer who participated in trial to give his own subjective "theories about the facts of the trials and the conduct of those involved in them"); *Ault*, 860 F.2d at 881 (considering the "medium by which ..the statement is disseminated").

Where statements are published on a personal website and on Internet discussion groups, as part of a "part of a heated debate," the context tends to support the interpretation that statements are opinion rather than assertions of fact. *Nicosia v. De Rooy*, 72 F.Supp. 2d 1093, 1101 (N.D. Cal. 1999); *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 n.7 (D.D.C. 1998) ("Internet speakers are not restricted by the ordinary trappings of polite conversation; they tend to speak more freely online") (citation omitted).   Here, the general context of the statements is a raging debate amongst those who dissent from AOL orthodoxy, many of whom have or are likely to defect from AOL, and those who continue to adhere to it and/or support it.

***Specific Context and Content***    The "specific context" includes the language immediately surrounding the challenged statement.  Where, for example, a statement is "cautiously phrased in terms of apparency," such as "my impression is," the "listener or reader is on notice that the maker [of the statement] is not vouching for its accuracy." *Id.* at 258, 260-62.  The specific context also extends to the whole of the context surrounding the statements.  The commentary  "may not be divided into segments and each portion treated as a separate unit ...  It must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader." *Baker v. Los Angeles Herald Examiner*, 42 Cal. 3d 254, 261 (1986) (citation omitted).

Thus, when considering comments on the internet, the court should consider the specific context of material that is connected to the challenged statement by hyperlinks and other material to which the speaker has directed her readers.  *Nicosia,* 72 F.Supp.2d at 1103 ("These articles were at least as connected to the news group posting as the back page of a newspaper is connected to the front.").[15]  On a Blog such as this one, the context should include other articles and comments on the

---

[15] In this regard, Internet debates -- via dueling websites and postings to Internet newsgroups -- are like radio and television talk shows, and courts have frequently held that the views expressed in such talk shows are not actionable as defamation because they are marked "by the often exaggerated and uncareful exchange of vehemently held opinions; listeners understand the atmosphere of overstatement and `take such railings with a grain of salt.'" *Hunter v. Hartman*, 545

Blog, as well as to other materials referred to in the articles or comments (for example by hyperlinks.).

***Susceptible of Being Proven True or False***  Subjective or evaluative terms, as well as imprecise terms such as "phony" or "fake," the meaning or interpretation of which varies widely, cannot be considered sufficiently factual to be actionable.  *See Partington, 56 F.3d at* 1157-59 (citing numerous authorities).  Where, as here, the subject matter is one on which there can be several interpretations, "the First Amendment requires [courts] to give the author substantial latitude in describing and interpreting the events involved" in order to protect "the robust debate among people with different viewpoints that is a vital part of our democracy." *Id.,* 56 F.3d at 1154.  "Authors should have `breathing space' in order to criticize and interpret the actions and decisions of those involved in a public controversy." *Id*. at 1159.

> **2.** ***Opinions Based on Facts that are Disclosed to the Reader – or which are Expressly Based on Speculation Rather than Asserted Facts – Are Not Actionable, No Matter How Unreasonable  the Opinion May Be***

Where a statement of opinion is predicated on disclosed facts, the speaker can only  be punished if those underlying facts are themselves false and defamatory.  *Standing Committee v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (*"Yagman II"*); This is true even if the author's conclusion is "speculation ... conjecture, or surmise," since the reader is free to disagree with that conclusion.  *Partington*, 56 F.3d at 1156-57 (citation omitted); *see* Rest. of Torts (2d), § 566 (b) & (c) ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is"); *Nanavati v. Burdette Tomlin Memorial Hospital*, 857 F.2d 96, 99 (3d Cir. 1988) ("even outrageous statements of opinion are protected").

The same is true when comments are based on facts known to all.  *Id.*  Thus, for example, in *Carr v. Warden*, defendant's statement that the planning commission had been "bought" was deemed opinion in part because Warden disclosed the facts on which his opinion was based -- i.e., that the change in vote was too dramatic to point to any other conclusion.  *Id.,* 159 Cal.App.3d 1166, 1170

---

N.W.2d 669, 705 (Minn. Ct. App. 1996); *accord Deupree v. Iliff*, 860 F.2d 300, 303-04 (8th Cir. 1988) ("statement[s] ... made during the sort of call-in radio show," where listeners "tend[] to discount what follow[s]," are understood to be opinion).

1   (1984); *accord Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 266 & n.7 (1986); *Eisenberg v.*

2   *Alameda Newspapers, Inc.*, 74 Cal. App.4th 1359, 1384 (1999).   Such a statement is inactionable

3   because the readers are free to decide for themselves whether the opinion is warranted.

4          Subjective judgments, for example, that someone has an "exploitative business relationship"

5   with another "is merely an evaluative judgment which is not provable true or false. *Nicosia*, 72

6   F.Supp. 2d at 1107 (N.D. Cal. 1999)

7           Similarly, where, in context, the speaker indicates that he is speculating as to what the facts

8   might be, but does not actually know, the statement is not an assertion of fact but rather opinion.

9   *Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 263 (1986); *Gregory v.McDonnell Douglas*, 17

10   Cal.3d 596, 603 (1976).  In other words, even a provably false statement is not actionable if "it is plain

11   that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise,

12   rather than claiming to be in possession of objectively verifiable facts."  *Riley v. Harr*, 292 F.3d 282,

13   290-91 (1st Cir. 2002).

14          A related principle is that a "when "there could easily be a number of varying rational

15   interpretations," about "disputed events" an author writing about such "inherently ambiguous" matters

16   may "fairly describe[] the general events involved and offer[] his personal perspective about some of

17   [the] ambiguities and disputed facts" without subjecting himself to a lawsuit.  *Id.* Otherwise, authors

18   would never venture beyond "'dry, colorless descriptions of facts, bereft of analysis or insight,' and

19   the threat of defamation lawsuits would discourage' expressions of opinion by commentators, experts

20   in a field, figures closely involved in a public controversy, or others whose perspectives might be of

21   interest to the public."  *Riley*, 292 F.3d at 290-291 (citing *Partington,* 56 F.3d at 1154).

22   **E.      The Statements Specifically Placed At Issue by the Complaint are Statements of
     Opinion**

23

24      **1.      Statements Alleging Physical or Psychic Abuse or Damage Are Opinion**

25          Defendants cannot be held liable for stating evaluative judgments that the relationship between

26   Shankar and his adherents, or between certain teachers and their students were  manipulative or

27

28

exploitative.[16]   *See, e.g., Campanelli v. Regents of Univ. of Cal,* 44 Cal. App. 4th 572, 577-80;  *PETA v. Berosini*, 895 P.2d 1269, 1275 (Nev. 1995) *overruled on other grounds, City of Las Vegas v Downtown Redev. Agency*, 113 Nev 644 (1997) (citing W. Page Keeton, *Prosser and Keeton on Torts* 814 (5th ed. 1984) ("evaluative" judgments about the quality of a person's behavior, such as statement that plaintiff's actions were cruel or abusive are protected as a matter of law).

Similarly the claim in Statement I – that defecting former adherents who are "scarred by brainwash are ashamed of seeking therapy.  The physical damages require all sorts of medical supervision" – is a statement of opinion.  RJN, Exh. D7.  This is true when such an opinion is voiced by a professional.  *Nanavati*, 857 F.2d at 106-108 (statement by doctor that another doctor misdiagnosed a patient, causing her death, was opinion) *In re Yagman*, 796 F.2d 1165, 1173-75 (9th Cir. 1986) ("*Yagman I*") (doctor's conclusion that suspect was victim of homicide was protected opinion).  *A fortiori*, where a medical "diagnosis" is rendered by someone who is not a doctor, it is generally understood to be an expression of "opinion" and not "fact."  *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 577-80 (1996) (where parent said plaintiff had inflicted "psychological damage" on a child, the statement was not actionable as a matter of law because "[p]arents are not generally thought of as experts in the medical field" and "the general public would not reasonably expect the parent to be making an observation which could be proven true or false in a medical sense").

Statement K --"This leaves us with no doubt that SriSri has reached an acute stage of his degenerative illness and is in urgent need of hospitalization before total collapse!" – is clearly, in context, a statement of opinion.  RJN, Exh. E6 ("His Holiness Grand Delusions.")  The statement arises in the context of a discussion of a "circular issued by AOL to invite AOL members worldwide to a gathering in Berlin."  *Id.*  The circular consists of a mock New York Times cover story celebrating the future event, as well as the fictional awarding of the Nobel Peace Prize to Shankar.  RJN, Exh. E6a.  The reference to "degenerative disease" follows the statement "yes, it is now definitely confirmed, the self-proclaimed  'His Holiness Sri Sri' Ravi Shankar, suffers from a very

---

[16]  Statement A ("physical abuse"); Statement R ("someone he … abused"); RJN, Exh. D8.

1    rare and incurable mental illness, causing bouts of grand delusions in which he sees himself as NPP

2    winner, with world leaders gathered at his feet."  RJN, Exh. E6  Statement K is not a factual assertion

3    about Shankar's medical condition. *See Weyrich v. New Republic, Inc.*, 235 F.3d 617, 620 (D.C. Cir.

4    2001)(*"paranoia"* in context was not intended as clinical diagnosis)**;** *Yorty v. Chandler,* 13 Cal.App.3d

5    467, 471, 477 (1970) (cartoon depicting plaintiff with medical orderlies holding a straitjacket behind

6    him, saying  "I've got to go now . . . I've been appointed Secretary of Defense and the Secret Service

7    men are here!" held not to be assertion of fact that Plaintiff was mentally ill).  Even if the statement

8    could be understood as intended seriously, it would nevertheless be one of opinion, for the same

9    reason as Statement I above – lay "diagnoses" of illness are opinion as a matter of law.

### 2.    *Plaintiffs Cannot Be Held Liable For Criticising And Raising Questions About the Churches' Financial Practices and Lack of Transparency*

12        Klim made clear in the LAOL Blog that he was concerned about the lack of transparency of

13   the AOL RJN, Exh. D (*The million dollar question: where do all the millions go?*).  According to

14   Klim, "we were taught to say", that "all of the money of the courses went to the million social projects

15   the AOL sponsored."  *Id.*  But he began to suspect otherwise, noting that "the truth is we only have a

16   few pictures to prove it.  And they were always the same pictures and the same video footages! (Let's

17   admit good editing does miracles.)"  *Id.*  Ultimately he came to believe that "social projects in the

18   AoL serve only the purpose of publicity."  *Id.* He does not purport to have access to the inner financial

19   documents of AOL, but on the contrary notes that ("The Art of Living and the International

20   Association for Human Values are the only two non-profits I know that don't openly provide an

21   annual financial report.")  *Id.*

22        This is the context– raising questions about the lack of transparency and about whether the

23   priority of AOL is in fact strictly devoted to humanitarian projects as opposed to perpetuating itself

24   through its constant seeking of new adherents to its Yogic Practices, to wit: paying course-members.[17]

25   For example, the article on the BAOL blog, "*AOL illegal financial practices"* is a response to a

---

[17] *See, e.g.,* RJN at Exh. D4 comment at April 19, 2010 6:46 PM ("AOL is a business – they take more and give less.  And as far as hinduism goes, the way AOL is run goes against the basic tenets of hinduism")

Joshua Koltun ATTORNEY

comment by Klim that as a teacher he did not "live an extravagant life," but eventually became suspicious of assertions that all of the tuition money from courses was going to humanitarian projects in India, in particular because money was frequently collected in cash."  *Id.*

Other statements that seem emphatic as quoted in the complaint were, in context, framed in terms of "apparency."  Thus, for example, Statement S – "Money from courses does not go into 'service projects' it goes into [Ravi Shankar's] bank account. …" – was prefaced by the following:

> *I suggest AOL to setup a formal Project Approval pipeline/process.* [this is a quote from the article, to which the commenter responds:] [¶]  You are not the first person to suggest this. People who have worked there have been suggesting them to be transparent about money for years. And it falls on deaf years, and they give you a bullshit answer. Which leads *one to conclude* that they are skimming from the top – using public funds without accountability sometimes for private gain.

RJN, Exh. E9 (emphasis added).  What the "true" motives of a person is inherently speculative, not susceptible to being proven true or false.[18]  *Gregory*, 17 Cal. 3d at 603-04  (statements that "impute motives of personal gain and political ambition" are opinion).  Thus comments that the real purpose of humanitarian projects is publicity or a lure to new adherents are opinion.  Similarly, judgments that the amounts actually going to such projects are "token"[19] are evaluative and not subject to being proven true of false. *Chapin v. Knight-Ridder, Inc.,* 993 F.2d 1087, 1091 (4th Cir. 1993)(statement that charity was charging a "hefty markup" held to be opinion).[20]

---

[18]   In context, Statement G ("If you are yourself a rich business man and want to launder your black money or show your competitors that oh I have a Guru then AOL is for you") is clearly a speculative opinion.  The statement is a sarcastic response of "Anonymous"  to the question previously asked by "Krish," to wit: "Can someone share what really are the motivations for anyone to become full time teacher?"  Compare RJN, Exh. __ ("A Full-Timer") at May 25, 2010 at1:33 PM *with id.* at 11:31 AM.  The statement at issue is the eighth in a list of sarcastic responses, including, for example:  "If you are bored of your wife and family and want a change, under the spiritual cover then AOL is for you."  *Id.*

[19]  Statement P.

[20]  *See also* Statement N ("charlatan," "quackery" "confidence trick").  Note that the context of this statement makes it clear that these epithets were inspired by the commenter's discovery that the new Sudarshan Kriya tape does not have Shankar's voice, which the commenter had previously understood was a necessary ingredient for the Sudarshan Kriya to to work.

Joshua Koltun ATTORNEY

### 3.  Statements Can Be Opinion Even If They Use Terms That May Connote Criminality in Other Contexts

There is nothing inherently defamatory about the use of terms like "illegal," fraud,[21] or "swindling"[22] that changes the analysis.  First of all, in the context of an bitter dispute carried out by bloggers and commentators on the internet, in which the speaker is a self-identified partisan, readers would expect the use of such hyperbolic rhetoric and not understand them as objective facts. *Greenbelt Coop. Publishing,* 398 U.S. at 14; *Information Control Corp. v. Genesis One Corp.*, 611 F.2d 781, 784 (9th Cir. 1980).

Moreoever, a person cannot be held liable merely setting forth true facts, and then expressing her opinion that these facts constitute a crime.  *Yagman I*, 796 F.2d at 1173-76; *Dunn v. Gannett New York Newspapers*, 833 F.2d 446, 453-54 (3d Cir. 1987).  In *Yagman I*, the Court of Appeals for the Ninth Circuit held that a statement by medical experts that indicated a suspect had been killed, thus implying that a crime had been committed by defendant police officers, was nonactionable opinion.  Because the doctors had stated "the basis for drawing that opinion ... [i]t was strikingly clear ... that the doctors were interpreting findings and presenting their individual opinions." 796 F.2d at 1174.  The court specifically rejected the argument that an opinion cannot be protected where it involves accusations of criminal conduct.  *Id.*  Similarly, where a newspaper suggested that the town's mayor had embezzled funds but set forth the facts upon which it based its opinion-- e.g., the government discovered funds were missing and the mayor ordered employees not to talk to the press-- the statement was not actionable.  *Dunn*, 833 F.2d at 453-54.

### F.  Plaintiff Has Not Alleged That the Statements At Issue Were Made With "Actual Malice"

Where a plaintiff is a "public figure" his complaint must allege specific facts showing that defendants made the statements with  "actual malice."   *Barry*, 584 F. Supp. 1121-22 (N.D. Cal. 1984); *Barger,* 564 F. Supp. at 1154.  "Actual malice" here is a term of art meaning i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true.

---

[21]Statement Q, RJN Exh. E2

[22]Statement A, RJN, Exh. D8

Joshua Koltun ATTORNEY

1  *New York Times v. Sullivan,* 376 U.S. 254 (1964)

2        The courts have recognized

3        two different categories of public figures. The first is the "all purpose" public figure
          who has "achiev[ed] such pervasive fame or notoriety that he becomes a public figure
4          for all purposes and in all contexts." The second is the "limited purpose" or "vortex"
          public figure who "voluntarily injects himself or is drawn into a particular public
5          controversy and thereby becomes a public figure for a limited range of issues."
          "Unlike the 'all purpose' public figure, the 'limited purpose' public figure loses certain
6          protection for his reputation only to the extent that the allegedly defamatory
          communication relates to his role in a public controversy."

7  *Reader's Digest Assn. v. Superior Court*, 37 Cal.3d 244, 253–254.

8        In *Hustler Magazine v. Falwell,* a minister with a nationally syndicated television show was

9  concededly an all purpose public figure. *Id.*, 485 U.S. 46, 57 (1988).   But nationwide fame is not

10 required to be an all-purpose public figure.  What is required is sufficient notoriety within the

11 community in which the challenged statements were made.  In *Stolz v. KSFM 102 FM,*, the court

12 concluded that a radio station had sufficient access to "general fame and pervasive power and

13 influence in the community in which the allegedly defamatory speech was broadcast" to be an all

14 purpose public figure.  *Id.* , 30 Cal. App. 4th 195, 205 (1984)(citing *Waldbaum v. Fairchild*

15 *Publications, Inc.* 627 F.2d 1287, 1295-1296, fn. 22 (D.C. Cir. 1980).  By means of its public

16 broadcast, plaintiff "thrusts itself into the public eye on a daily basis, seeking public attention … [it

17 has] voluntarily exposed [itself] to public scrutiny and must accept the consequences …."  *Stolz,* 30

18 Cal. App. 4th at  205 (*citing Live Oak Publishing Co. v. Cohagan*, 234 Cal. App. 3d 1277, 1289

19 (1989).  Moreover, the radio broadcaster was "less vulnerable to injury from defamation because of

20 its ability to resort to effective self-help through access to the media. … Indeed, [plaintiff] not only

21 has access to the media; it is a medium."  *Stolz,* 30 Cal.App.4[th] at 205. (citing *Reader's Digest Assn. v.*

22 *Superior Court,* 37 Cal. 3d at p. 256).

23        Moreover, a plaintiff whose public visibility is insufficiently pervasive to render it an all-

24 purpose public figure may nevertheless have thrust itself into the public eye sufficiently to be public

25 figure for the limited purpose of the controversy at issue.  For example in *Readers' Digest,* a drug-

26 rehabilitation program,Synanon and its leader made "myriad attempts to thrust their case and Synanon

27 in general into the public eye."  *Id.* 37 Cal. 3d at 255. "While any person or organization has the right

28

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

1 to engage in publicity efforts and to attempt to influence public and media opinion regarding their

2 cause, such significant, voluntary efforts to inject oneself into the public arena require that such a

3 person or organization be classified as a public figure in any related defamation actions." *Id.*  In that

4 case, both Synanon and its founder were found to be limited purpose public figures with respect to the

5 controversy at issue.  *Id.*  Similarly, a lesbian couple that deliberately solicited public attention and

6 media coverage of their commitment ceremony were deemed to be limited purpose public figures with

7 regard to a child custody/adoption dispute.  *Annette F. v. Sharon S.,* 119 Cal. App. 4th 1146, 1164;

8 (2004) *see also Rudnick v. McMillan,* 25 Cal.App. 4th 1183, 1189-91 (1994)(a person who sought to

9 have newspaper publish articles about nature preserve was limited purpose public figure regarding

10 that reserve).

11          Here, Plaintiff, AOL and Ravi Shankar are public figures.  AOL was accredited as a United

12 Nations non-governmental organization and serves as one of the United Nation's largest volunteer

13 NGOS.  Complaint, ¶ 19.  It "has been praised in the national and international press, including on

14 CNN, MSNBC, and other news outlets.  *Id.* ¶ 3.  Plaintiff, AOL and Ravi Shankar promote themselves

15 and seek adherents and donations through multiple websites that, among other things, collect and

16 republish numerous articles about themselves that have appeared in the media.  RJN at ¶¶ 2, 3 & Exhs.

17 B & C.

18          The Complaint does not, however, allege that Defendants statements were made with actual

19 malice, let alone set forth any specific facts upon which such a finding could be made. *Barry*, 584 F.

20 Supp. 1121-22 (N.D. Cal. 1984); *Barger,* 564 F. Supp. at 1154.[23]

21      **G.     Plaintiff Cannot Evade First Amendment Protections Here by Characterizing Its
               Cause of Action As "Trade Libel"**

22          The tort of trade libel is a  "particular form of injurious falsehood"  that encompasses all false

23 statements concerning the quality of services or product of a business which are intended to cause that

24

_____

25 [23]   The allegation that "Defendants have intentionally disparaged the quality of Plaintiff, Plaintiff's teachings,
Plaintiff's services"Complaint, ¶ 109,  is not a sufficient allegation, since someone can "intentionally" disparage

26 something while believing that the disparaging statements are true.  The allegation that the specific statements set forth in
the complaint "are a small sample of the complete false and defamatory statements, many of which are completely

27 fabricated," Complaint at 64, is insufficient, since it does not indicate which, *if any* of the statements set forth with
specificity are alleged to be "completely fabricated."

28

1   business financial harm and in fact do so.  *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572

2   (1989).

3        A plaintiff seeking to relief for damages caused to its reputation cannot avoid the requirements

4   of the First Amendment by characterizing its claim as a cause of action other than defamation.  For

5   example, in *Hustler Magazine v. Falwell*, a prominent minister sued a magazine for intentional

6   infliction of emotional distress arising from an article that, among other things, described as having

7   engaged in a drunken incestuous rendezvous with his mother in an outhouse.  *Id.* 485 U.S. 46  (1988).

8   The Court held that the same First Amendment restrictions apply as in a defamation case, reasoning

9   that

> the fact that society may find speech offensive is not a sufficient reason for suppressing
> it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason
> for according it constitutional protection.  The sort of expression involved in this case
> does not seem to us to be governed by any exception to the general First Amendment
> principles stated above.

13   *Id.*  The Court held that the minister was a public figure, and as such, had to show that the

14   statement was made with "actual malice."  *Id.*  Here, Plaintiff does not allege that Defendants made

15   the statements at issue with "actual malice," or indeed even that they did so with negligence.

16        The tort of trade libel applies to the quality of a commercial businesses property or services,

17   not the the "teachings" or "services" of a religious or spiritual organization.  Even assuming that

18   California law were construed to apply to such religious "teachings" or "services," the absolute

19   privilege conferred by the Free Exercise Clause to urge persons to leave or avoid a religious

20   organization.  *See* discussion, section II.B above.

21        By the same token, even on its trade libel claim, Plaintiff must show that the statements at

22   issue were "of and concerning" Plaintiff, and were assertions of fact, not opinion.  As the California

23   Supreme Court explained in *Blatty v. New York Times Co.,* the protections of the First Amendment

24   "are not peculiar" to defamation actions, "but apply to all claims whose gravamen is the alleged

25   injurious falsehood of a statement," including trade libel.  *Id.*, 42 Cal. 3d 1033, 1043 (1986).

> The ***"of and concerning"*** requirement serves to immunize a kind of statement which,
> though it can cause hurt to an individual, is deemed too important to the vigor and
> openness of public discourse in a free society to be discouraged. Statements of ***opinion***,
> "[however] pernicious," are immunized by the First Amendment in order to insure that

their "correction [depends] not on the conscience of judges and juries but on the competition of other ideas." Statements without specific reference are immunized for a similar reason:  "It is far better for the public welfare that some occasional consequential injury to an individual arising from general censure of his profession, his party, *or his sect* should go without remedy than that free discussion on the great questions of politics, or morals, or faith should be checked by the dread of embittered and boundless litigation."

*Id.   See also Falwell,* 485 U.S. at 53.  Here, Plaintiff can meet neither the "of and concerning" nor the "opinion" requirements.

***CONCLUSION***

Since this Court has no jurisdiction over Defendants, and since the Statements at issue were all protected by the First Amendment, Defendant respectfully request that the Complaint should be dismissed.

Dated: January 31, 2011                              _____\s_____

                                                     Joshua Koltun
                                                     Attorney for Defendants
                                                     Doe/Klim and Doe/Skywalker