UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ART OF LIVING FOUNDATION, | Case No.: 10-CV-05022-LHK |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE |
| v. | |
| DOES 1-10, | |
| Defendants. | (re: dkt. #26 and #27) |

It has long been settled that an author's decision to remain anonymous is an aspect of freedom of speech protected by the First Amendment. The right to speak anonymously, however, is not unlimited. This case centers on the contours of balancing the First Amendment rights of online authors' decisions to speak anonymously and critically of an organization against the claims of the organization that the speech is simply the false and malicious rants of disgruntled former students and teachers.

Plaintiff Art of Living Foundation is a California non-profit corporation, and is the United States branch for the international Art of Living Foundation based in Bangalore, India. Plaintiff is dedicated to teaching the wellness and spiritual lessons of Ravi Shankar, the founder of the Art of Living Foundation. Defendants Doe Skywalker and Doe Klim are former adherents of the Art of Living Foundation, but are now critical of both the Foundation and Shankar. Plaintiff alleges that Defendants have posted defamatory statements on blogs, published trade secrets, and infringed

1

copyrighted materials.  Defendants, appearing specially via counsel, have moved to dismiss for lack of personal jurisdiction, and for failure to state a claim with respect to the defamation and trade libel claims.  Defendants have also filed a motion to strike the defamation, trade libel, and trade secrets claims under California Code of Civil Procedure § 425.16 (California Anti-SLAPP Statute).  The Court held a hearing on Defendants' motions on May 26, 2011.  For the reasons explained below, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.  Defendants' motion to dismiss the defamation and trade libel claims for failure to state a claim is GRANTED with leave to amend.  Defendants' motion to strike the defamation, trade libel, and trade secrets claim is DENIED WITHOUT PREJUDICE.  However, discovery on the trade secrets claim may not proceed until Plaintiff identifies the trade secrets with reasonable particularity.

## I. BACKGROUND

**A. The Parties**

The Art of Living Foundation is an international educational and humanitarian organization based in Bangalore, India, but with chapters in more than 140 countries.  Compl. ¶¶ 1, 21.  The Art of Living Foundation was founded by "His Holiness Sri Sri Ravi Shankar" in 1981.  *Id*. at ¶ 16.  Plaintiff here, also called Art of Living Foundation (Plaintiff or "AOLF-US"), is a California non-profit corporation based in Goleta, California and is the United States chapter of the international Foundation.  *Id*. at ¶¶ 2, 13.  Plaintiff offers courses that employ breathing techniques, meditation, and yoga, focusing on "Sudarshan Kriya," an ancient form of stress and health management via rhythmic breathing.  *Id*. at ¶ 3.

Defendants are Does, but have specially appeared through counsel under their blogger names of "Skywalker" and "Klim."  Plaintiff alleges that Defendants are "disgruntled student-teacher and/or students of Plaintiff, AoL [Art of Living Foundation], and/or Ravi Shankar."  *Id*. at ¶ 52.  In or around November 2009, Defendants started the blog called "Leaving the Art of Living," located at artoflivingfree.blogspot.com.  *Id*. at ¶ 53.  In or around November 2010, Defendants started the blog called "Beyond the Art of Living," located at aolfree.wordpress.com.  *Id*. at ¶ 54.

### B. AOLF-US's Allegations and Claims

Plaintiff alleges that an essential component of its practice is the training of teachers. *Id.* at ¶ 34. These teaching methods are contained in several written manuals, including: the Training Guide Phase One; the Continuation Manual; and the Yes! Teacher Notes. *Id.* at ¶ 39. However, Plaintiff alleges that the teaching methods for the "Sudarshan Kriya" have intentionally not been memorialized in writing and are kept "strictly confidential." Plaintiff alleges that although the ostensible purpose of Defendants' blogs is to provide a forum for former students/adherents of Art of Living, Defendants really use the Blogs to defame Plaintiff, misappropriate Plaintiff's trade secrets, and infringe on Plaintiff's copyright materials." *Id.* at ¶¶ 56-58.

Specifically, Plaintiff's first claim is that Defendants committed copyright infringement by publishing the Breathe Water Sound Manual on the blogs. *Id.* at ¶¶ 75-88. Plaintiff alleges that it first published the Breathe Water Sound Manual on June 1, 2003. Plaintiff has applied to the Copyright Office for registration of the Manual, and has not licensed the Manual's use to Defendants. *Id.*

Plaintiff's second claim is that its teaching Manuals and teaching processes for "Sudarshan Kriya" (the latter of which is intentionally not written down) are trade secrets. *Id.* at ¶¶ 89-107. Plaintiff submits that the Manuals and teaching processes have independent economic value (i.e., Plaintiff charges students for lessons based on the Manuals and teaching processes) and that Plaintiff engages in diligent efforts to keep the information confidential. *Id.* at ¶¶ 94-96. Plaintiff alleges that Defendants agreed to keep the trade secrets confidential, but then used the information to instruct students without authorization. *Id.* at ¶ 98. Moreover, Plaintiff continues, Defendants published the confidential Manuals on their blogs, and hyperlinked to another website that had a written summary of Plaintiff's teaching processes for "Sudarshan Kriya." *Id.* at ¶¶ 99-100. Defendant Skywalker concedes publishing the alleged trade secret documents and the Breath Water Sound Manual in June and July, 2010, but argues: (1) the documents are not actually trade secrets because they are well-known in the yoga community and are not kept strictly confidential; and (2) in any event, Skywalker's publication of the materials is protected by the First Amendment because it arises from free speech on a "public issue." *See* Defs.' Mot. to Strike at 2, 12.

3

Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE

Plaintiff's third claim is that Defendants use the blogs to intentionally disparage and defame Plaintiff, the Art of Living Foundation, and Ravi Shankar. *Id*. at ¶ 62 (providing list of 18 alleged examples of defamatory statements on the blogs). For example, one statement on one of the blogs is: "The truth is more disgruntled people should come out to do something about all the illegal activities that occur thru and in his organization, ranging from exploitation, to swindling, to cheating, to physical abuse, to sexual harassment and fondling, etc." *Id*. Another statement is: "Again answer is obvious, the master is a charlatan (is a person practising quackery or some similar confidence trick in order to obtain money) in disguise." *Id*. And: "The 'dollar a day' program was started in the US. The money never went to that cause."

Finally, Plaintiff's fourth claim that Defendants have committed trade libel because their disparaging statements have attacked Plaintiff's teaching methods and services, and have discouraged other potential students from registering for Plaintiff's courses. *Id*. at ¶¶ 116-121.

In its prayer for relief, Plaintiff seeks monetary damages and injunctive relief "restraining Defendants from operating the Blogs and requiring that the Blogs be removed the Internet." *Id*. at p. 19 ("Prayer for Relief").

## II.  DISCUSSION

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Specifically, Defendants allege: (1) that Plaintiff has not alleged personal jurisdiction over any of the Defendants in the Complaint; and (2) that neither Defendant Skywalker nor Defendant Klim are citizens of the United States, let alone California. Plaintiff responds that there are sufficient contacts between Defendants and California to make personal jurisdiction reasonable, especially in light of the "harmful effects" felt by Plaintiff in California.

#### 1.  Legal Standard

In order to establish personal jurisdiction, a plaintiff must first show that the forum state's jurisdictional statute confers personal jurisdiction over defendants, and that the exercise of such jurisdiction "accords with federal constitutional principles of due process." *Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1441 (9th Cir. 1987). California's "long-

4

1    arm" statute extends jurisdiction to the maximum extent permitted by due process. See Cal. Civ.

2    Proc. § 410.10. Accordingly, the jurisdictional inquiries under state law and constitutional due

3    process principles can be conducted simultaneously. In the Ninth Circuit, a three-part test is

4    applied to determine whether specific jurisdiction may be exercised over a defendant consistent

5    with due process principles: (1) The nonresident defendant must do some act or consummate some

6    transaction with the forum or perform some act by which he purposefully avails himself of the

7    privilege of conducting activities in the forum, thereby invoking the benefits and protections of its

8    laws; (2) the claim must be one which arises out of or results from the defendant's forum-related

9    activities; and (3) exercise of jurisdiction must be reasonable. *See Omeluk v. Langsten Slip &*

10   *Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1999). In the context of websites on the Internet, there

11   has to be "'something more' [than a web-site] to indicate that the defendant purposefully (albeit

12   electronically) directed his activity in a substantial way to the forum state." *See Panavision*

13   *International, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (quoting *Cybersell, Inc. v.*

14   *Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).

**2. Analysis**

16   Under the Ninth Circuit's "effects test" for tort actions of defamation, a court should

17   consider whether defendants purposefully availed their activities at the forum state or whether

18   defendants should have known that the "effects" of their actions would be felt in the forum state.

19   *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 835 (9th Cir. 1996) (finding personal jurisdiction in

20   California over out-of-state defendants where defendants published defamatory article about

21   California resident and circulated article to only 13-18 subscribers in California); *see also Nicosia*

22   *v. De Rooy*, 72 F. Supp. 2d 1093, 1097-99 (N.D. Cal. 1999) (finding personal jurisdiction in a

23   defamation action where defendant created a website with a defamatory article about a California

24   resident and circulated e-mails to California residents).

25   Here, Plaintiff's Complaint, along with additional documentary evidence, establishes a

26   prima facie case of personal jurisdiction over Defendants. *See Harris Rutsky & Co. Ins. Servs. v.*

27   *Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) ("the plaintiff need only make a prima

28   facie showing of jurisdiction to avoid the defendant's motion to dismiss"). Plaintiff is incorporated

in California and is the Art of Living branch for the entire United States.  In addition, certain critical statements by Defendants on the Blogs are, in part, directed at Plaintiff's activities in the United States and exhibit knowledge of Plaintiff's incorporation in California.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) (finding personal jurisdiction where out-of-state defendant's website postings injured plaintiff in California, where plaintiff had its principal place of business).  In addition, the Blogs are hosted in California using northern California-based companies Google, Inc. (based in Mountain View, California) and Automattic, Inc. (based in Redwood City, California).  Defendants, in creating and using the Blogs, agreed to terms and conditions with California choice of law and venue provisions.

Moreover, Plaintiff represents that its office, located in Goleta, California, has received multiple inquires from individuals throughout the United States about the critical and negative statements on the Blogs.  *See Nicosia*, 72 F. Supp. 2d at 1099 (in determining personal jurisdiction, a court looks to where the injury is felt); *compare Church of Scientology v. Adams*, 584 F.2d 893, 898-99 (9th Cir.1978) (pre-dating "effects" test, finding no personal jurisdiction over out-of-state defendants where those defendants' statements did not concern or affect California residents).  Significantly, there appears to be no other alternative forum state for Plaintiff, a California non-profit corporation, to raise its claims because Defendants' United States contacts are centered in California.  *See FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987) (an important factor in determining reasonableness of asserting jurisdiction over a non-resident defendant is the existence of an alternative forum).  Finally, in addition to the allegedly defamatory statements posted on the Blogs hosted by northern California companies, Plaintiff alleges that Defendants have also published trade secrets and committed copyright infringement by publication of Plaintiff's confidential teaching materials.  These allegations, combined with the allegations regarding defamation, establish the "something more" requirement necessary for assertion of personal jurisdiction.  *See Cybersell*, 130 F.3d at 418.

Accordingly, the Court denies Defendants' motion to dismiss, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.

### B. Motion to Dismiss Defamation and Trade Libel Claims

Aside from the jurisdictional challenge, Defendants have moved to dismiss the defamation and trade libel claims for failure to state a claim.[1]  The Court begins with analysis of the allegations of defamation, which form the heart of the dispute between the parties.

**Defamation**

Defendants offer four challenges to Plaintiff's defamation claim: (1) that they have an "absolute right" under the First Amendment to urge persons to avoid a religious organization; (2) that the alleged defamatory statements are not "of and concerning" Plaintiff (i.e., that the statements are not specifically targeted at the *United States branch* of the Art of Living Foundation, which has the same name as the international organization based in India); (3) that the statements are constitutionally protected "opinions" that are not actionable under defamation law; and (4) that Plaintiff is a "public figure," which triggers a higher actual malice standard to prove defamation.

#### 1. Legal Standard

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (Cal. App. 6th Dist. 2010).  Civil Code section 45 provides, "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."  "Statements that contain such a charge directly, and without the need for explanatory matter, are libelous per se.  A statement can also be libelous per se if it contains a charge *by implication* from the language employed by the speaker and a listener could understand the defamatory meaning without the necessity of knowing extrinsic explanatory matter."  *See Wong*, at 1369.  Although potentially limited by the context of the statement, an allegation the plaintiff is guilty of a crime is generally libelous on its face and is actionable without proof of damages.  *See*

---

[1] Defendants have not moved to dismiss or strike Plaintiff's copyright claim.  Thus, it is not at issue in these particular motions.

1   *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, 117 Cal. App. 4th 1138,
2   1145 (Cal. App. 2d Dist. 2004).
3       Whether a statement is an assertion of fact or opinion is a question of law for the court.
4   *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1193 (9th Cir. 1989). Pure opinions -- "those
5   that do not imply facts capable of being proved true or false" -- are protected by the First
6   Amendment. *Partington v. Bugliosi*, 56 F.3d 1147, 1153 fn.10 (9th Cir. 1995). Assertions of fact
7   and statements that "may imply a false assertion of fact, however, are not protected." *Id*. To
8   determine whether a statement implies an assertion of fact, the Ninth Circuit applies the following
9   three-part test. First, a court reviews the statement in its "broad context," which includes the
10  general tenor of the entire work, the subject of the statement, the setting, and the format of the
11  work. Next, the court turns to the "specific context" and content of the statement, analyzing the
12  extent of figurative or hyperbolic language used and the reasonable expectations of the audience in
13  that particular situation. Finally, the court inquires whether the statement itself is sufficiently
14  factual to be susceptible of being proved true or false. *See Underwager v. Channel 9 Australia*, 69
15  F.3d 361, 366 (9th Cir. 1995).

16      **2. Analysis**

17          **a. No "Absolute Right" to Defame under First Amendment**

18      Defendants' assertion that they have an "absolute right" to make defamatory statements
19  about religious organizations misses the mark. As a preliminary matter, it is not clear that Plaintiff
20  is a religious organization. According to the allegations in the Complaint, Plaintiff is a non-profit
21  corporation that offers courses that employ breathing techniques, meditation, and yoga, focusing on
22  "Sudarshan Kriya," an ancient form of stress and health management via rhythmic breathing.
23  Compl. at ¶ 3. Moreover, the First Amendment does not protect "knowingly false" speech. *Solano*
24  *v. Playgirl, Inc.*, 292 F.3d 1078, 1089 (9th Cir. 2002). It is correct that a religious organization's
25  practice of "shunning" is protected by the First Amendment. *See Paul v. Watchtower Bible &*
26  *Tract Soc.*, 819 F.2d 875, 880 (9th Cir. 1987). Here, even assuming Plaintiff is a religious
27  organization, the allegedly defamatory statements at issue in the Complaint are not all directed at
28  religious conduct or religious ideology, but are instead directed at business and financial practices

8

1   and alleged criminal activity. *See Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179

2   F.3d 1244, 1250 (9th Cir. 1999) (courts may resolve disputes based on "neutral, secular

3   principles," without impermissible entanglement into religious doctrine).

4       Accordingly, Defendants' motion to dismiss on this ground is denied.

### b. Of and Concerning Plaintiff

6       The First Amendment requires a plaintiff to establish that the statement on which the

7   defamation claim is based is "of and concerning" the plaintiff. *Blatty v. New York Times Co.*, 42

8   Cal. 3d 1033, 1042, 232 Cal. Rptr. 542, 547, 728 P.2d 1177 (1986). "However, when the

9   statements concern groups, as here, plaintiffs face a more difficult and sometimes insurmountable

10  task. If the group is small and its members easily ascertainable, plaintiffs may succeed. But where

11  the group is large -- in general, any group numbering over twenty-five members -- the courts in

12  California and other states have consistently held that plaintiffs cannot show that the statements

13  were 'of and concerning' them." *Barger v. Playboy Enterprises*, 564 F. Supp. 1151, 1153 (N.D.

14  Cal. 1983). The rationale for this rule is to protect freedom of public discussion, except to prevent

15  defamatory statements *reasonably susceptible* of special application to a given individual. "In

16  California, whether statements can be reasonably interpreted as referring to plaintiffs is a question

17  of law for the court." *See SDV/ACCI*, 522 F.3d at 959 (citing *Alszeh v. Home Box Office*, 67 Cal.

18  App. 4th 1456, 80 Cal. Rptr. 2d 16, 18 (Cal. Ct. App. 1998)).

19      Here, Ravi Shankar would have a good argument that Defendants' statements are "of and

20  concerning" him because the statements expressly mention his name numerous times. However,

21  Plaintiff, which has the same name as the international organization (and presumably the same

22  name as some 140 other international branches), has not established that the allegedly defamatory

23  statements at issue, as opposed to the Blogs in general, are "of and concerning" AOLF-US. *See*

24  *SDV/ACCI.*, 522 F.3d at 960 (establishing defamation requires more than ambiguous statements

25  referring to a group). Most of the statements described in the Complaint only refer to "Art of

26  Living," or to "teachers" or "lackeys" of Art of Living. For example, the statement "all the illegal

27  activities that occur thru and in his organization, ranging from exploitation, to swindling, to

28  cheating, to physical abuse, to sexual harassment and fondling, etc." (Compl. at ¶ 62) only refers to

9

United States District Court
For the Northern District of California

1  "his organization," while the statement "I am fully convinced that AOL is front-end name for a
2  group of fraudulent NGOs. My lawyer tells me that what they are doing amounts to large-scale
3  organized fraud according to the laws of several countries" does not clearly implicate the United
4  States branch of the Art of Living Foundation, and appears focused on the international
5  organization in India.

6  As currently pled, the allegations in the Complaint are insufficient to satisfy the "of and
7  concerning" requirement of defamation law.

### c. In Context, Statements are Constitutionally Protected Opinions

Under Ninth Circuit law, the Court must consider the broad context of the statements, the specific context of the statements, and whether the statement is sufficiently factual to be proved true or false. The Court's review of these factors leads to the conclusion that the statements at issue are constitutionally protected opinions rather than verifiable facts.

In the broad context, the statements are made on obviously critical blogs ("Leaving Art of Living" and "Beyond Art of Living") with heated discussion and criticism of the Art of Living Foundation and Ravi Shankar. In this context, readers are less likely to view statements as assertions of fact rather than opinion. *See Nicosia*, 72 F. Supp. 2d at 1101 (N.D. Cal. 1999) (statements made on personal website, through Internet discussion groups, and as part of heated debate are less likely viewed as statements of fact). The First Amendment protects "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988)).

As to the specific context, the Court considers the "content of the allegedly defamatory statements, which includes the extent of figurative and hyperbolic language and the reasonable expectations of the readers." *Id*. at 1102. Certain statements are obviously critical, and do use words like "embezzle," "fraud," and "abuse." For example, there are statements that: "they obtained money from participants on false, deceitful declarations"; "companies, individuals give money to AOL organisation for specific projects, but the money never reaches those projects...None of this money goes toward helping any poor or disadvantaged people"; and "if

10

you...want to launder your black money...then AOL is for you." Plaintiff has its strongest case for defamation when these particular statements are read in isolation.

With context, however, these statements of hyperbole reflect poorly on Art of Living, but do not amount to factual accusations of criminal activity, especially on Blogs that readers obviously expect are critical of Art of Living. *See Nicosia*, 72 F. Supp. 2d at 1104 (in context of heated debate on the Internet, "statements accusing [plaintiff] of being a 'fraud,' a 'criminal' and acting illegally are rhetorical hyperbole"). Courts have extended First Amendment protection to such statements in recognition of "the reality that exaggeration and non-literal commentary have become an integral part of social discourse." By protecting speakers whose statements cannot reasonably be interpreted as allegations of fact, courts "provide[] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20 (quoting *Falwell*, 485 U.S. at 53-55). In addition, the Blogs do link to the Art of Living website and other articles about Art of Living that are positive, evincing a forum for debate and discussion.[2] *See id.* at 1101 (statements published on Internet as part of "heated debate" are less likely to be viewed as assertions of fact).

Finally, the statements as to the Art of Living Foundation (as opposed to Ravi Shankar, who is not a plaintiff in this action) are too loose and hyperbolic to be susceptible of being proven true or false. *See Milkovich*, 497 U.S. at 21-22 ("loose, figurative, or hyperbolic language" negates impression that author is making statement of fact). For example, the statement "Money from courses does not go into 'service projects' it goes into RS's [Ravi Shankar's] bank account" could be verifiable with respect to Shankar, but does not even refer to Art of Living. The statement "I am fully convinced that AOL is front-end name for a group of fraudulent NGOs. My lawyer tells me that what they are doing amounts to large-scale organized fraud according to the laws of several

---

[2] As the Court is dismissing Plaintiff's defamation claim with leave to amend, the scope of any potential remedy for Plaintiff is not yet ripe for decision. The Court notes its concern, however, that Plaintiff requests an extremely broad injunction "restraining Defendants from operating the Blogs and requiring that the Blogs be removed from the Internet." Compl. at p. 19 ("Prayer for Relief"). Even if certain statements on the Blogs are eventually found defamatory, Plaintiff has cited no authority for the proposition that the remedy is for "the Blogs to be removed from the Internet" altogether just because they are critical of Art of Living and Shankar.

1   countries" is clearly harsh, but, as noted above, does not clearly implicate Plaintiff.  Rather, the

2   statement voices an opinion ("fully convinced") in connection with the author's beliefs about the

3   international organization's lack of financial transparency, and relays what the "lawyer" told the

4   author about the international organization's practices.  *See Underwager*, 69 F.3d at 367 (denying

5   defamation claim where defendant's statement that plaintiff was "lying" in a deposition may have

6   been an exaggeration, but did not imply a verifiable assertion of perjury).

7       In sum, under the totality of circumstances, the statements at issue are not assertions of fact,

8   but are instead constitutionally protected opinions.

### d. Actual Malice

10   Public figures must prove actual malice in order to recover on defamation claims.  *See New

11   York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).  Actual malice means that the defamatory

12   statement was made with "knowledge that it was false or with reckless disregard of whether it was

13   false or not."  *Id*.  Reckless disregard, in turn, means that the publisher "in fact entertained serious

14   doubts as to the truth of his publication."  *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

15   To prove actual malice, a plaintiff must "demonstrate with clear and convincing evidence that the

16   defendant realized that his statement was false or that he subjectively entertained serious doubts as

17   to the truth of his statement."  *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511

18   n.30 (1984).

19   In *Gertz* v. *Robert Welch, Inc*., 418 U.S. 323 (1974), the Supreme Court defined two classes

20   of public figures.  The first is the "all purpose" public figure who has "achiev[ed] such pervasive

21   fame or notoriety that he becomes a public figure for all purposes and in all contexts."  The second

22   category is that of the "limited purpose" public figure, an individual who "voluntarily injects

23   himself or is drawn into a particular public controversy and thereby becomes a public figure for a

24   limited range of issues."  *Gertz*, 418 U.S. at 351.  Unlike the "all purpose" public figure, the

25   "limited purpose" public figure loses certain protection for his reputation only to the extent that the

26   allegedly defamatory communication relates to his or her role in a public controversy.

27   Plaintiff is likely a limited public figure because it is part of a relatively well-known

28   international organization and voluntarily solicits media attention.  In addition, Plaintiff is part of a

"public controversy" with respect to the allegations that Plaintiff is a "cult" and allegations regarding Art of Living's international activities. *See Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 256 (Cal. 1984). Given the Court's dismissal of the defamation claim with leave to amend on other grounds, however, the Court need not decide the "actual malice" issue at this time.[3]

### e. Conclusion on Defamation Claim

Although "the purpose of the anti-SLAPP statute is 'to allow early dismissal of meritless first amendment cases aimed at chilling expression," the Ninth Circuit has clearly ruled that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *See Verizon Del., Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Here, because it is not clear that leave to amend would be futile, and this is Plaintiff's initial complaint, striking Plaintiff's initial Complaint would "directly collide" with Rule 15's liberal amendment policy. Accordingly, for all the reasons explained above, the Court GRANTS Defendants' motion to dismiss the defamation claim with leave to amend. In light of this dismissal, the Court does not reach the motion to strike the defamation claim. Of course, Defendants may re-raise their anti-SLAPP arguments in opposition to any amended complaint. *See id.* ("If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants.").

### Trade Libel

Trade libel is defined as "an intentional disparagement of the quality of property, which results in pecuniary damage. . . ." *Erlich v. Etner*, 224 Cal. App. 2d 69, 73, 36 Cal. Rptr. 256, 258 (1964). The cause of action for trade libel thus requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages.

---

[3] The Court notes that Plaintiff has requested discovery with respect to Defendants' intent and knowledge when publishing the allegedly defamatory statements, including discovery of Defendants' identities. The Court agrees with Defendants that discovery on Defendants' intent and knowledge (e.g., "actual malice") is inappropriate when Plaintiff has not stated a valid defamation claim for the various reasons explained above.

13

Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE

1   To the extent that it is just a re-characterization of Plaintiff's defamation claim, the trade libel claim falls for the reasons that the statements at issue in the Complaint are not "of and concerning" Plaintiff and are not verifiable factual assertions. *See Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1043 (Cal. 1986) ("the various limitations rooted in the First Amendment are applicable to all injurious falsehood claims and not solely to those labeled 'defamation' is plain: although such limitations happen to have arisen in defamation actions, they do not concern matters peculiar to such actions but broadly protect free-expression and free-press values").

To the extent that Plaintiff's trade libel claim is distinct from the defamation claim, Plaintiff has failed to specifically plead special damages in the form of pecuniary loss. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated."). The allegations in the Complaint are simply that Plaintiff "has been substantially harmed" and that "due to the continuing presence of the Blogs, and their false and defamatory statements, Plaintiff continues to suffer irreparable injury." Compl. ¶¶73-74. These general statements of harm do not sufficiently identify special damages. *See Luxpro Corp. v. Apple Inc.*, 2011 U.S. Dist. LEXIS 35008, *42 (N.D. Cal. Mar. 24, 2011) ("Although a plaintiff does not need to plead a specific dollar amount, the plaintiff should allege an "'established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication.'").

Accordingly, the Court GRANTS Defendants' motion to dismiss the trade libel claim. The Court, however, grants Plaintiff leave to amend its trade libel claim because it is not clear that amendment would be futile, and because this is Plaintiff's initial complaint. As with the defamation claim, striking Plaintiff's trade libel claim pursuant to the California Anti-SLAPP Statute at this point would "directly collide" with Rule 15's liberal amendment policy. *See Verizon*, 377 F.3d at 1091. Defendants may re-raise their anti-SLAPP arguments in opposition to any amended complaint.

**C. Motion to Strike Trade Secrets Claim (CCP §425.16)**

Defendants did not move to dismiss the trade secrets claim, but instead moved to strike the trade secrets claim under the California Anti-SLAPP Statute. Defendants argue that: (1) the

14
Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE

1  alleged trade secrets are actually known within the yoga community; (2) it is not clear that the

2  alleged secrets have "independent economic value;" and (3) Plaintiff has not taken reasonable

3  efforts to protect the confidentiality of the secrets.  Plaintiff responds that the California Anti-

4  SLAPP Statute does not apply to its trade secrets claim because publishing the trade secret was not

5  protected First Amended speech, and that, even if the statute applies, it has established a

6  probability of prevailing on the claim.

### 1. Legal Standards

#### a. Section 425.16

The California legislature enacted section 425.16 to "provide a fast and inexpensive unmasking and dismissal of SLAPP" suits.  SLAPP suits are "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances in connection with a public issue."  *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 819 (1994) (quoting Cal. Civ. Proc. Code § 425.16(a), (b)).  A defendant who brings a section 425.16 motion has the initial burden of presenting a prima facie case that the suit arises "from any act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." *Wilcox*, at 820 (quoting Cal. Civ. Proc. Code § 425.16(b)) (internal quotations omitted).

If defendant meets this burden, the burden shifts to the plaintiff to establish "a probability that plaintiff will prevail on the claim." *Wilcox*, at 823 (quoting Cal. Civ. Pro. Code §425.16(b)). To show a probability of prevailing, "the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox*, at 824.  The determination is made on the basis of the pleadings, as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. Cal. Civ. Proc. Code  § 425.16(b)(2).  Pleadings by themselves are inadequate to demonstrate a prima facie case -- the plaintiff must submit admissible evidence to show a probability of prevailing at trial. *Evans v. Unkow*, 38 Cal. App. 4th 1490, 1497-98, 45 Cal. Rptr. 2d 624, 628-29 (1995).

### b. Trade Secrets

Under California's Uniform Trade Secrets Act, a "trade secret" is defined as information that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d). "[I]nformation can be a trade secret even though it is readily ascertainable, so long as it has not yet been ascertained by others in the industry." *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21, 286 Cal. Rptr. 518 (Cal. Ct. App. 1991). Moreover, "[c]ombinations of public information from a variety of different sources when combined in a novel way can be a trade secret." *2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006). Whether information is publicly known is a factually intensive analysis. *DVD Copy Control Ass'n., Inc. v. Bunner*, 116 Cal. App. 4th 241, 252, 10 Cal. Rptr. 3d 185 (Cal. Ct. App. 2004). Finally,

### 2. Analysis

#### a. Defendants' Initial Burden

Under the burden-shifting framework of the California Anti-SLAPP Statute, Defendants must first show that the suit "arises from" any act in furtherance of Defendants' freedom of expression on a "public issue." *See* Cal. Civ. Proc. Code § 425.16(b); *see also Tuck Beckstoffer Wines LLC v. Ultimate Distribs.*, 682 F. Supp. 2d 1003, 1009 (N.D. Cal. 2010) ("the court must determine whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity"). Here, Defendants' anonymous statements that the Art of Living Foundation is basically a cult and a sham is speech on a "public issue*." See Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 649 (Cal. App. 2d Dist. 1996) (allegations that Church of Scientology harmed and abused its members was speech in connection with a "public issue"). Defendant Skywalker appears to have published the alleged trade secrets documents -- Art of Living teaching manuals -- as part of a larger effort to debunk the notion that the Art of Living Foundation and Ravi Shankar possess some "secret higher knowledge." Thus, Defendants have satisfied the initial anti-SLAPP burden by establishing a direct connection between Defendant

16

1    Skywalker's disclosure and Defendants' other protected speech on a public issue.  *See World*
2    *Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.*, 172 Cal. App. 4th 1561, 1568 (Cal.
3    App. 2d Dist. 2009) (in determining whether the "arising from" requirement is met, the critical
4    point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the
5    defendant's right of petition or free speech.").  The Court now turns to Plaintiff's burden of
6    establishing a prima facie trade secrets claim.

### b. Plaintiff's Responsive Burden

As Defendants have met their initial burden, the burden shifts to the Plaintiff to establish a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  Plaintiff has made such a showing.  *See Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923 F. Supp. 1231, 1250-51 (N.D. Cal. 1995).

Defendant Skywalker (and only Defendant Skywalker) has admitted to posting the alleged trade secrets documents in June and July 2010.  *See* Defs.' Mot. to Strike at 6 ("Skywalker, in June and July 2010, posted the alleged trade secret documents").  In addition, the "spiritual" nature of the works does not remove them from trade secrets protection.  As the Honorable Ronald M. Whyte noted in a similar case:

> "thus, there is at least some precedent for granting trade secret status to works that are techniques for improving oneself (though not specifically spiritually).  Conversely, there is no authority for excluding religious materials from trade secret protection because of their nature.  Indeed, there is no authority for excluding any type of information because of its nature.  While the trade secret laws did not necessarily develop to allow a religion to protect a monopoly in its religious practices, the laws have nonetheless expanded such that the Church's techniques, which clearly are 'used in the operation of the enterprise,' Restatement § 39, at 425, are deserving of protection if secret and valuable."

*Religious Technology Center*, 923 F. Supp. at 1252.

Moreover, Plaintiff has submitted credible evidence that it derives independent economic value from the secret teaching manuals and has established reasonable efforts to keep the manuals confidential.  According to declarations submitted with the opposition to the motion to strike, Plaintiff generates revenue from its courses and lessons based on the confidential teaching manuals.  *See* Declaration of Ashwani Dhall, Chairperson of the Board of Directors for AOLF-US, ¶¶64-69 ("Dhall Decl.") [dkt. #40].  Plaintiff distinguishes itself from other organizations that teach

breathing, yoga, and meditation by offering classes based on its confidential teaching manuals. *See ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (Cal. App. 4th Dist. 1991) (information that obtains value from its secrecy to competitors is subject to trade secret protection).

With respect to maintaining secrecy, Plaintiff has submitted evidence that it keeps its manuals and lessons on password-protected computers, limits access to the electronic files, requires teachers to agree not to disclose the manuals and lessons, and requires teachers to agree to not use the manuals and lessons for any other purpose than teaching Plaintiff's courses. *See* Dhall Decl. at ¶¶ 29-36. Although the students do not sign non-disclosure agreements, the students also do not receive the actual manuals and lessons. On balance, these efforts at maintaining secrecy are reasonable under these circumstances. *See Religious Technology Center*, 923 F. Supp. at 1254 ("Efforts at maintaining secrecy need not be extreme, just reasonable under the circumstances.").

Defendants object that the manuals and lessons are not confidential because they are based on techniques that are already known within the yoga community. Information generally known to the public is not protectable as trade secret information. However, "[t]he secrecy requirement is generally treated as a relative concept and requires a fact-intensive analysis." *See DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (Cal. App. 6th Dist. 2004) (citing 1 Milgrim on Trade Secrets (2003) § 1.07[2], pp. 1-343, 1-352.). Defendants have not established that the manuals and lessons are generally known to the public. "Publication on the Internet does not necessarily destroy the secret if the publication is sufficiently obscure or transient or otherwise limited so that it does not become generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value." *See id*. Moreover, Defendants cannot rely on their own improper postings to support the argument that the works are no longer secrets. *See Religious Technology Center*, 923 F. Supp. at 1256.

Defendants are correct, however, that Plaintiff has not identified the "secret aspects" of their teaching manuals and lessons with sufficient particularity. *See id*. at 1252 ("Although trade secret status may apply to works that are techniques for spiritually improving oneself, the secret aspect of those techniques must be defined with particularity"). From the Court's review of the alleged trade secrets (filed under seal), it is clear that the works, in their entirety, are not entitled to

18
Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE

1   trade secret protection.  For example, as counsel for Plaintiff conceded at the May 26, 2011

2   hearing, some of the information is simply biographical information about Ravi Shankar and the

3   Art of Living Foundation.

4   Defendants argue that the trade secrets claim should be completely stricken for insufficient

5   particularity.  However, counsel for Defendants cited no case law in their briefing or at the May 26,

6   2011 hearing for the proposition that a trade secrets claim may be stricken for insufficient

7   particularity, and the Court has found none.  Instead, "[i]n any action alleging the misappropriation

8   of a trade secret … , before commencing discovery relating to the trade secret, the party alleging

9   the misappropriation shall identify the trade secret with reasonable particularity … ." (§

10  2019.210)."  *See Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1343 (Cal.

11  App. 4th Dist. 2009).  This "rule assists the court in framing the appropriate scope of discovery and

12  in determining whether plaintiff's discovery requests fall within that scope.  *Id*.  Thus, discovery on

13  the trade secrets claim may not proceed until Plaintiff identifies the scope of its trade secrets with

14  reasonable particularity.

15  As a final point, the Complaint alleges that "Doe Defendants" misappropriated its trade

16  secrets.  However, on the record before the Court, only Doe Skywalker acknowledged publishing

17  the alleged trade secrets.  Thus, even if Plaintiff does identify its trade secrets with sufficient

18  particularity (which it has not yet done), discovery on the trade secrets claim would only proceed

19  against Doe Skywalker.  *See Anonymous Online Speakers v. United States Dist. Court (In re*

20  *Anonymous Online Speakers),* 2011 U.S. App. LEXIS 487, *16 (9th Cir. Jan. 7, 2011) (in the

21  context of anonymous speech under the First Amendment, requiring a party seeking discovery to

22  meet a "heightened relevance standard requiring plaintiffs to demonstrate an interest in obtaining

23  the disclosures . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of

24  [the] constitutionally protected right of association.").

25  In sum, although the Court is denying Defendants' motion to strike the trade secrets claim,

26  Plaintiff may not obtain discovery with respect to that claim until if identifies, with reasonable

27  particularity, the genuinely secret aspects of its teaching lessons and manuals.

28

### III.  CONCLUSION

For all the reasons explained above, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED.  Defendants' motion to dismiss the defamation and trade libel claims is GRANTED with leave to amend.   Defendants' motion to strike the defamation, trade libel, and trade secrets claims is DENIED WITHOUT PREJUDICE.  However, discovery on the trade secrets claim may not proceed until Plaintiff identifies the confidential trade secrets with sufficient particularity.  Any amended complaint must be filed within thirty (30) days of this Order.

**IT IS SO ORDERED.**

Dated: June 15, 2011

_____
LUCY H. KOH
United States District Judge