Joshua Koltun (Bar No. 173040)
Attorney
101 California Street
Suite 2450, No. 500
San Francisco, California 94111
Telephone: 415.680.3410
Facsimile: 866.462.5959
joshua@koltunattorney.com

Attorney for Defendant Doe/ Skywalker

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ART OF LIVING FOUNDATION, a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>DOES 1-10, inclusive,<br><br>  Defendants. | Case No.: CV 10-5022 LHK HRL<br><br>MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE re MOTION TO QUASH<br><br>Filed Herewith:<br>Declaration of Joshua Koltun in Support of Motion for Relief ("Koltun Decl.")<br>Proposed Order (lodged)<br><br>Docket Entries Referenced:<br>15  Skywalker Decl. ("SW Decl.")<br>40  Dhall Decl. (Exh. F under seal)<br>62  2d Renoticed Mot.to Quash ("MTQ")<br>73  Reply Supp. MTQ ("Reply")<br>78  Joint Case Manag't Statem't ("JCMS")<br>83  Order of June 15, 2011 ("6.15 Ord.")<br>85  First Amended Complaint ("FAC")<br>88  Transcript of 5/26/2011Hearing<br>90  Order of August 10, 2011 ("8.12.Ord.") |

Pursuant to Fed.R.Civ.P. 72 and LR 72-2, Skywalker objects to the August 10, 2011 Order of the Honorable Howard R. Lloyd ("8.10.Ord.") only insofar as it denies the Motion to Quash.

***Standard of Review.*** The factual findings in a Magistrate Judge's discovery order are reviewed under the deferential "clearly erroneous" standard; by contrast, its legal conclusions are subject to plenary, de novo review under the "contrary to law" standard. *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983). Where the order involves a claimed First Amendment privilege, the Magistrate Judge must perform a comprehensive balancing of interests, which involves a "mixed question of law and fact" that the District Judge must review de novo to ensure that Constitutional rights are properly protected. *Id.* at 206.[1]

***Procedural Background*** After oral argument on this motion, Plaintiff amended its complaint, dropping its defamation and trade libel causes of action, and dropping its request for injunctive relief. The Magistrate Judge relied solely on the copyright claim in denying the motion to quash. 8.10.Ord at 8:6:19. Defendants intend to file a timely anti-SLAPP motion on the trade secret claim, and a motion for summary judgment on the copyright claims.

***The Magistrate Judge adopted the wrong legal test for this motion to quash, ignoring whether Plaintiff has demonstrated any "actual harm."*** The Magistrate Judge expressly declined to apply the two-prong standard announced by this Court in *Highfields Capital Management L.P. v. Doe*, 385 F.Supp.2d 969, 975-76 (N.D. Cal. 2005). Ord.8.10 at 5.n3. Under the first prong of the *Highfields* test, the Court determines whether plaintiff has presented *prima facie* evidence that would entitle it to prevail on its cause of action. *Id.* If so, then under the second prong, the Court may only strip the defendant of his anonymity if it determines that "enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs." *Id;* Reply at 2-5.

The Magistrate Judge reasoned that this second prong of the *Highfields* test was "more or less"

---

[1] Although Rule 72 frames the procedures to challenge a ruling by the Magistrate Judge, the rule does not constrain the District Judge, who at all times retains inherent power to modify any nondispositive pretrial order by the Magistrate Judge, as indeed the District Court may reconsider or modify its own orders. *Phillips v. Raymond Corp.*, 213 F.R.D. 521, 525 (N.D. Ill. 2003)(citing 12 Wright & Miller, Federal Practice and Procedure § 3069); *see also Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1997)(pretrial orders may always be modified, including by a newly assigned Judge).

Joshua Koltun ATTORNEY

1  included in the multifactor *Sony* Music test that he purported to apply.  *Id.* (citing *Sony Music Entm't*
2  *v. Does,* 326 F.Supp.2d 556, 563 (S.D.N.Y. 2004).  But having stated that he would consider "actual
3  harm" under the *Sony Music "prima facie"* test, the Magistrate Judge did ***not*** in fact consider the
4  question whether Plaintiff had demonstrated by prima facie evidence that it had suffered any actual
5  harm.  Instead, the Court ruled that it was sufficient "at this stage in the action" for Plaintiff to have
6  "sufficiently *alleged* harm."  8.10.Ord. at 6-8-11 (emphasis added).

7  ***In fact, this Court's ruling on the defamation claim effectively destroys any ability Plaintiff***
8  ***ever had to show that the posting of the BWSM caused any harm.***  Plaintiff is suing on a work that
9  was not registered until after infringement, and can recover only actual damages here.  17 USC §
10 504(b); MTQ at 11.  The Magistrate Judge relied on Plaintiff's "allegation" that it had "purportedly"
11 lost revenue after the Blogs began.  8.10.Ord. at 6:7-8.  But Plaintiff's own evidence demonstrated
12 that there was *no* such correlation; revenue has been dropping steadily since well before *either*
13 Defendant began his Blog, despite the fact that enrollment has been more or less *flat*.  Reply at 11;
14 Dhall Decl., Exh. F.  *Dendrite v. Doe*, 342 N.J. Super. 134, 158-159 (App.Div. 2001) (preserving
15 anonymity where no correlation shown to stock price drop).  In any event, evidence of "correlation
16 [is] not evidence of causation."  *Brown v. Entm't Merchs. Ass'n.,* 131 S.Ct. 2729, 2739 (2011).

17      Moreover, this Court's ruling dismissing the defamation claims effectively negates Plaintiff's
18 (inadmissibly speculative) proposed inference that the posting of the BWSM caused any drop in its
19 revenues.  As counsel passionately argued, "we are here because the Art of Living has been harmed
20 … a relaxed atmosphere … is key to teaching these classes and for the Art of Living to make money
21 … the allegations regarding rape, sexual fondling, and sexual harassment have been devastating."[2]
22 But this Court has ruled that the "devastating" statements at issue are constitutionally protected.  Thus
23 Plaintiff cannot now contend that it has shown that any drop in revenue was caused by Skywalker
24 having posted the BWSM for a few weeks.  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
25 173 F.3d 725, 732-733 (9th Cir. Cal. 1999) (overturning jury finding of damages in
26 defamation/Lanham Act case where liability was based on three statements, two of which were held,

---

[2] Hearing Transcript at 44-45; Dhall Decl.¶ 53 ("Many of the people inquiring about the Blogs have informed Art of Living that they would not register for Art of Living's courses as a result of the false statements on the Blogs.")

on appeal, to be constitutionally protected.)

***The Magistrate Judge disregarded the fact that the posting of the BWSM was speech on a matter of public interest, erroneously concluding that such concerns are irrelevant where copyright infringement is at issue.*** The Magistrate Judge purported to weigh Skywalker's privacy interest, and "accepted as true" that he was engaged in political speech, but ruled that this was irrelevant where copyright infringement was involved. Ord.8.10 at 7:21-25 and 4:21-28.

This misapplies the *Sony* test. The issue here is what weight is to be given to his expectation of privacy, not whether the First Amendment provides a defense to liability. In *Sony,* the Court did ***not*** rule that copyright infringers necessarily lack any First Amendment rights of privacy. There, Court did weigh the privacy interest of persons engaged in peer-to-peer copying of music, but gave that interest little weight on the grounds that they were not really engaged in First Amendment expression at all – they were "not seeking to communicate a thought or convey an idea," but rather were copying songs for personal use without paying for them. *Id.* 326 F.Supp.2d at 564; Reply at 7.

Here, by contrast, this Court has determined that Skywalker's posting of the manuals on his Blog was not only speech, but speech on the "public issue" of whether AOL is a cult. 5.26.Ord. at 16-17. (This was in the Trade Secret context but the reasoning applies equally to the BWSM). Such speech is subject to the highest degree of First Amendment protection and thus the privacy interest is paramount. *Anonymous Online Speakers,* 2011 US. App. Lexis 487 at 7, 18-19.

The Court in determining the proper legal standard to apply must consider the "potential chilling effect" of its ruling not just on the parties but on other potential speakers in the public arena. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010). And in this regard, if the bar is set too low, plaintiffs will be able to pursue cases even if their

> claim is not very strong, or worse, if they do not intend to pursue the defamation action to a final decision. After obtaining the identity of an anonymous critic through the compulsory discovery process, a defamation plaintiff who either loses on the merits or fails to pursue a lawsuit is still free to engage in extra-judicial self-help remedies; more bluntly, the plaintiff can simply seek revenge or retribution.

*Doe v. Cahill*, 884 A.2d 451, 457 (Del. 2005). The same is true if a defamation plaintiff can accomplish the same goal by pursuing a Copyright claim as to which there is no likelihood of obtaining anything other than a *de minimis* damages award. Here, once Skywalker's identity is

- 3 -

revealed, other AOL entities beyond the jurisdiction of this Court may renew the defamation action or other causes of action in jurisdictions that do not provide First Amendment protections. The Cease and Desist letter here emanated from an *Indian AOL entity*, not from AOLFUS. SW Decl., ¶ 10, Exh. F. The standard to be set in this case is of vital interest not only to Skywalker but to anonymous critics and protesters around the world, who use blogging platforms and social media hosted in the United States. They should not be stripped of anonymity without some showing of "actual harm."[3]

***The Magistrate Judge assumed that Plaintiff needs to know Skywalker's identity; but Plaintiff has shown no such need.*** The Magistrate Judge concluded that Plaintiff needs to know Skywalker's identity because without the identity of the infringing party, "it will be prohibitively difficult for Plaintiff to conduct discovery." 8.10.Ord. at 7:16-19. But in *Sony Music,* Plaintiff needed to learn the identity of the alleged infringers ***because they had not been served*** (their rights were being defended by amici). *Id.*, 326 F. Supp.2d at 566. Here, by contrast, Skywalker has appeared in the case to defend, and, moreover, has admitted that he posted the BWSM on his Blog during the dates in questions. SW Decl. ¶ 9. Plaintiff has not shown that it needs to know Skywalker's identity.

To be sure, Plaintiff may need discovery to prove up its damages, if any. But in this regard, Plaintiff told the Court that it needs information from computer servers concerning the numbers of persons who viewed the BWSM, and who downloaded it. Transcript of 5.26.Hearing at 16. This is information in the possession of *Automattic*, not of Skywalker. SW Decl., ¶10; MTQ at 11-12. Significantly although Defendants stipulated back in May that Plaintiffs could take such discovery, Plaintiff has made *no effort* to seek such information, or any discovery. Koltun Decl., ¶ 1; JCMS at 6. Its failure to do so strongly suggests that it is pursuing this action solely to learn the identity of Does, with further relief to be sought in foreign jurisdictions that lack First Amendment protections.

---

[3] The Magistrate Judge discounted Skywalker's fears of harassment on the grounds that the AOL statements Skywalker cited, which were published on the internet, were not offered by Defendants "for their truth." See 8.10.Ord. at 6 n.7. This reasoning is erroneous –harassing statements are never offered "for its truth," but to show that the harassing conduct (statement) occurred. For example, Skywalker put in evidence statements published by an AOL official that identified and denounced dissidents and gave contact information for (purported) ex-boyfriends and associates of one dissident who would confirm that she was mentally unstable. MTQ at 3:4-12 & n.1 (citing request that Court take judicial notice of published statements on the internet). A harassing statement alleging that a critic is mentally unstable is no less harassing because it is false; quite the contrary. In any event, in cases in which an anonymous speaker has been involuntarily haled into Court, the speaker need not make *any* showing of harassment in order to preserve his anonymity. Reply at 5 n.1.

1   ***The Magistrate Judge's deferral of the question of "actual harm" to "another day" causes***
2   ***Skywalker irreparable injury, whereas Plaintiff is not injured by being required to make such an***
3   ***initial showing.***  The Magistrate Judge conceded that Defendant's argument regarding "actual harm"
4   might have merit, but deferred consideration of it until "another day." 8.10.Ord at 6:11. Where a
5   party asserts a First Amendment right to anonymity, the disclosure itself is an irreparable injury that
6   cannot be remediable later in the proceedings. *Perry,* 591 F.3d at 1157-58. By contrast, requiring
7   Plaintiff to make an initial showing that it has suffered actual harm causes it no injury.[4]  Plaintiff has
8   not been denied the opportunity to pursue discovery on this issue; it has simply chosen not to.

9   Quite apart from issues of anonymity, where important First Amendment considerations are at
10  issue, Courts should bifurcate discovery to require Plaintiffs to prove certain threshold issues before
11  ordering invasive discovery of Defendants. MTQ at 7.[5]  Deferring discovery of Skywalker's identity
12  would be entirely consistent with this Court's ruling that Plaintiffs were not entitled to discovery of
13  Defendants' state of mind where Plaintiff had not otherwise made out a valid defamation claim. 6.15.
14  Ord. at 13.n.3. Indeed, assuming *arguendo* that Plaintiff were entitled to some award of damages,
15  there is no reason to strip Skywalker of his anonymity unless he fails to pay the judgment.

16  Skywalker thus respectfully requests that the ***Motion to Quash be granted in full.***  At a
17  minimum, Skywalker respectfully requests the Court, if it sustains the Order, to stay the Order for at
18  least 15 days, so as to afford Skywalker an opportunity to appeal and/or seek a writ in the Court of
19  Appeal on the significant issues presented, before he is irreparably stripped of anonymity.[6]

20  Dated August 24, 2011        /s/
                                 Joshua Koltun
21                               Attorney for Doe/Skywalker

---

[4] The sincerity-- indeed, the validity – of Plaintiff's copyright claim is surely undermined by Plaintiff having filed an **unsealed copy** of the BWSM on the Court's PACER docket, thus placing it in the **public domain**. See  Dhall Decl. Exh. E; *Religious Tech. Ctr. v. Lerma,* 897 F. Supp. 260, 265-266 (E.D. Va. 1995) (unsealed Scientology documents in court docket held to be in public domain).

[5] Citing *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001) ;*McBride v. Merrell Dow,* 255 U.S. App. D.C. 183, 800 F.2d 1208, 1214 (D.C. Cir. 1986) and Rule 26.

[6] *Perry,* 591 F.3d at 1155-56 , 1158 (granting mandamus where Court denied First Amendment privilege; suggesting appeal available). Counsel is on a family vacation from August 25 to September 1, and is simultaneously working on a renewed Motion to Strike to be filed by September 12.

Joshua Koltun ATTORNEY