UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ART OF LIVING FOUNDATION, ) | Case No.: 10-CV-05022-LHK |
| ) | |
| Plaintiff, ) | ORDER GRANTING MOTION FOR |
| v. ) | RELIEF FROM NONDISPOSITIVE |
| ) | PRE-TRIAL ORDER RE: MOTION TO |
| DOES 1-10, ) | QUASH |
| ) | |
| Defendants. ) | |

Doe Defendant, specially appearing under the pseudonym "Skywalker," moves for relief from Magistrate Judge Lloyd's order denying his motion to quash a subpoena intended to discover his identity from third-party Internet Service Providers.[1] Having considered the parties' briefing and oral arguments, the Court finds that Skywalker's First Amendment right to anonymous speech outweighs the need for discovery at this time. Accordingly, the motion for relief is GRANTED.

**I. BACKGROUND**

The Art of Living Foundation ("AOLF") is an international "educational and humanitarian" organization dedicated to teaching the spiritual lessons of "His Holiness Ravi Shankar." ECF No.

---

[1] Although Skywalker's gender is unknown, because counsel has referred to the Defendant as a "he," the Court will do the same.

1

Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH

85 ¶¶ 1, 17. AOLF is based in Bangalore, India and has chapters in more than 140 countries. *Id.* ¶ 1. Plaintiff, also called Art of Living Foundation, is the United States branch of AOLF. *Id.* ¶ 2. Plaintiff offers courses that employ breathing techniques, mediation and low-impact yoga to achieve stress relief and general wellness. *Id.* ¶ 3.

Defendants are allegedly "disgruntled former student-teachers and students of Plaintiff" who operate internet blogs called "Leaving the Art of Living" and "Beyond the Art of Living" under the pseudonyms "Skywalker" and "Klim."[2] *See id.* ¶ 3. The blogs are intended, at least in part, to provide a forum for criticism of Plaintiff, AOLF and Ravi Shankar. *See* ECF No. 83. The thrust of Defendants' critique is that while AOLF's multifarious organizations purport to exist "for the benefit of humanity," they are in fact "a manipulative and abusive cult." ECF No. 12 at 10.

On November 5, 2010, Plaintiff filed a complaint alleging claims of defamation, misappropriation of trade secrets, copyright infringement and trade libel stemming from postings on Defendants' blogs. *See* ECF No. 1. Specifically, Plaintiff asserted that Defendants published its copyrighted *Breathe Water Sound Manual* ("BWSM") and trade secret teaching methods, and made numerous false and disparaging remarks about Plaintiff and Ravi Shankar.

Because the postings were made pseudonymously, Plaintiff also sought leave to take expedited discovery for the purpose of identifying and serving process on Defendants. *See* ECF No. 5. On December 17, 2010, Magistrate Judge Beeler granted Plaintiff's request. *See* ECF No. 10. On December 20 and 21, Plaintiff served subpoenas seeking to identify Defendants on Google, Inc. and Automattic, Inc., the owners of the companies that host Defendants' blogs. *See* ECF No. 99.

On January 31, 2011—before Google or Automattic had responded to the subpoenas—Defendants, specially appearing through counsel, moved to dismiss Plaintiff's defamation claim, to strike Plaintiff's trade secrets claim under California's Anti-SLAPP provision, and to quash the order allowing discovery. *See* ECF No. 11, 12, 13, 99. Skywalker admitted that he (but not Klim) had published the BWSM and alleged trade secret materials on his blog as part of a larger

---

[2] The Court will refer to Skywalker and Klim collectively as "Defendants" and Skywalker individually by his blogger name.

campaign to "debunk the notion that Ravi Shankar is an enlightened being in possession of mystical 'secret knowledge.'" ECF No. 12 at 2; ECF No. 15. He also indicated that the materials had been removed shortly after being posted in response to a DMCA takedown notice. *See* ECF No. 15 ¶¶ 9-10.

In their motion to quash, Defendants argued that allowing disclosure of their identities would violate their First Amendment right to anonymous speech. They contended that Plaintiff's claims were "manufactured solely for the purpose of identifying Doe defendants, and are inextricably intertwined with an effort to chill Doe defendants from freely expressing their criticisms of Shankar and the organizations that surround him." ECF No. 28 at 9. They further claimed that there was no "evidentiary basis" for believing that they had "engaged in wrongful conduct that has caused real harm to the interests of [Plaintiff]." *Id.*

On June 15, 2011, while the motion to quash was still pending, the Court granted the motion to dismiss the defamation and trade libel claims, finding that the statements on Defendants' blogs were "constitutionally protected opinions." ECF No. 83 at 9-10. The Court declined to strike the trade secrets claim, but stayed any discovery as to that cause of action because Plaintiff had failed to identify with particularity the "genuinely secret aspects of its teaching lessons and manuals." *Id.* at 19. Subsequently, Plaintiff filed a First Amended Complaint ("FAC") alleging only claims for copyright infringement and misappropriation of trade secrets. *See* ECF No. 85.

On August 10, 2011, Magistrate Judge Lloyd denied Defendants' motion to quash as to Skywalker, but granted it as to Klim. In reaching his conclusion, Judge Lloyd applied the factors discussed in *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), determining that: (1) Plaintiff had alleged a *prima facie* case of copyright infringement because Skywalker had admitted to publishing the BWSM, (2) the subpoenas were targeted to obtain information to identify Skywalker, (3) Plaintiff had no other means to obtain Skywalker's identity, (4) without having Skywalker's identity, it would be prohibitively difficult for Plaintiff to conduct discovery, and (5) even if Skywalker had engaged in protected speech, he had no expectation of privacy because "the First Amendment does not shield copyright infringement." ECF No. 90 at 5-

3

7 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 555-56 (1985)). Importantly, because the undersigned judge had previously ruled that discovery could not proceed on the trade secrets claim until Plaintiff had identified its trade secrets, Judge Lloyd's determination was based solely on Plaintiff's copyright claim. *Id.*

Skywalker moved for relief from the discovery order two weeks later. He contended that because his speech concerned a matter of public interest, the Magistrate Judge should have applied the more rigorous standard articulated by *Highfields Capital Mgmt. L.P. v. Doe,* 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005), in considering whether to allow his identity to be revealed.[3] Amici curiae Public Citizen, the American Civil Liberties Union and Electronic Frontier Foundation filed a brief supporting Skywalker's position.[4]

Although Skywalker remained anonymous, the parties subsequently exchanged initial disclosures. *See* ECF No. 99. Plaintiff also served interrogatories and requests for production on Skywalker through counsel. *See id.* At oral argument, Defendants' counsel indicated that Skywalker has produced documents and responded to interrogatories where they do not apply solely to the trade secrets claim, for which discovery is stayed because Plaintiff has not identified its trade secrets.

On September 12, 2011, Defendants filed a second motion to strike Plaintiff's trade secrets claim. Hearing on that motion is set for December 8, 2011. Defendants also moved for summary judgment on Plaintiff's copyright infringement claim ("MSJ Motion"). *See* ECF No. 111. In that motion, Defendants argued for the first time that the publication of the BWSM was protected by fair use, and submitted evidence that Plaintiff did not own a valid copyright in the BWSM. Hearing on the MSJ Motion is set for January 12, 2012.

---

[3] The *Highfields* standard was developed by Magistrate Judge Brazil and adopted by Judge Chesney. *See Highfields Capital Mgmt. L.P. v. Doe,* 385 F. Supp. 2d 969, 970-71 (N.D. Cal. 2005).

[4] Amici argue that the Court should apply the standard articulated by the New Jersey Court of Appeal in *Dendrite Intern., Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. 2001). Because the *Highfields* court relied heavily on *Dendrite*, and because the tests do not differ meaningfully as applied to this dispute, the Court focuses its discussion on the *Highfields* test.

4
Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH

## II. STANDARD OF REVIEW

In reviewing a magistrate judge's order resolving a pre-trial discovery dispute, the district court may overturn any legal conclusion that is "contrary to law." *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983) (citing 28 U.S.C. § 636(b)(1)). Findings of fact may be reversed only if they are "clearly erroneous." *Id.*

Insofar as the challenged decision involves the application of constitutional standards to particular facts, the district court must review the magistrate judge's conclusion *de novo*. *Id.* at 206 ("[T]he essential independence of the exercise of judicial power of the United States in the enforcement of *constitutional* rights requires that the Federal court should determine such an issue upon its own record and facts elicited before it.") (citing *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 82 (1982) (emphasis in original)). Given that Skywalker's objections raise significant First Amendment concerns, the Court reviews the challenged order *de novo*.

## III. DISCUSSION

### A. The motion to quash the subpoena seeking Skywalker's identity must be granted

It is well established that the First Amendment protects the right to anonymous speech. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."). While the Internet clearly facilitates anonymous communication, "there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." *Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online Speakers)*, No. 09-71265, 2011 WL 61635, at *2 (9th Cir. Jan. 7, 2011) (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *Id.* (citing *McIntyre*, 514 U.S. at 341-42).

However, the right to anonymity is not absolute. Where anonymous speech is alleged to be unlawful, the speaker's right to remain anonymous may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim. *See, e.g.*, *Sony Music*, 326 F. Supp. 2d 556 (plaintiffs alleging widespread copyright infringement may discover the identities of individuals alleged to have illegally downloaded plaintiffs' musical recordings); *In re Anonymous Online Speakers*, 2011 WL 61635 (finding no clear error in requiring disclosure of the identity of individuals alleged to have tortiously interfered with plaintiff's contracts by posting anonymous messages on internet blogs); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) (allowing discovery as to the identity of an anonymous website domain owner alleged to have infringed plaintiff's trademarks); *but see Highfields*, 385 F. Supp. 2d 969 (quashing a subpoena seeking the identity of an individual accused of trademark infringement, defamation and unfair competition stemming from anonymous posts on an internet message board); *Dendrite Intern., Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. 2001) (preventing disclosure of the identity of an individual alleged to have posted defamatory statements against a public corporation on an internet message board); *John Doe No. 1 v. Cahill*, 884 A.2d 451 (Del. 2005) (preventing disclosure of the identity of an individual alleged to have posted defamatory statements against a political candidate on an internet message board).

As the Ninth Circuit has recently noted, "the many federal district and state courts that have dealt with this issue have employed a variety of standards to benchmark whether an anonymous speaker's identity should be revealed." *In re Anonymous Online Speakers*, 2011 WL 61635, at * 5 (discussing various standards). In order to avoid compromising First Amendment rights in a baseless lawsuit, most courts first require the plaintiff to make a *prima facie* showing of the claim for which disclosure is sought. Some courts have accepted a "legitimate, good faith basis" for the plaintiff's allegations, *see In re Subpoena Duces Tecum to America Online, Inc.*, No. 40570, 2000 WL 1210372, at *8 (Va. Cir. Ct. Jan. 31, 2000), *rev'd on other grounds by America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350 (Va. 2001), while more exacting standards demand the production of admissible evidence establishing each essential element of a claim, *see, e.g.*,

*Cahill*, 884 A.2d 451 (requiring the plaintiff to meet a hypothetical summary judgment standard); *Highfields*, 385 F. Supp. 2d at 975 ("The plaintiff must adduce *competent* evidence … address[ing] all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts.") (emphasis in original).

In addition to the plaintiff's initial burden, the most rigorous standards require the court to balance "the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Highfields*, 385 F. Supp. 2d at 980; *see also Dendrite*, 775 A.2d at 760 ("The court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."); *compare Cahill*, 884 A.2d at 461 (no balancing test is required because "[t]he summary judgment test is itself the balance"). In effect, these tests resemble the preliminary injunction inquiry, which requires the court to "balance the competing claims of injury and … consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citations omitted).

### 1. Given the nature of Skywalker's speech, *Highfields* more appropriately balances the parties' competing interests than *Sony Music*

In choosing the proper standard to apply, the district court should focus on the "nature" of the speech conducted by the defendant, rather than the cause of action alleged by the plaintiff. *See In re Anonymous Online Speakers*, 2011 WL 61635, at *6 ("We suggest that the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes."); *SI03, Inc. v. Bodybuilding.Com, LLC*, No. 10-35308, 2011 WL 2565618, at *1 (9th Cir. June 29, 2011) ("The district court should have determined the nature of the speech at issue before settling upon a standard for disclosure."). For example, a more rigorous standard may be applicable where the defendant's speech is political, religious or literary, while commercial speech should be subject to a lesser standard. *See id.* (requiring the plaintiff to meet *Cahill*'s hypothetical summary judgment standard would be inappropriate if the defendants'

speech were purely commercial). As the Ninth Circuit has explained, "the specific circumstances surrounding the speech serve to give context to the balancing exercise." *In re Anonymous Online Speakers*, 2011 WL 61635, at *6.

### i. *Sony Music* did not involve protected speech

The "speech" at issue in *Sony Music* barely implicated the First Amendment at all. The *Sony Music* plaintiffs were record companies suing forty unidentified defendants alleged to have illegally downloaded and distributed plaintiffs' copyrighted songs using a "peer to peer" file copying network. *Sony Music*, 326 F. Supp. 2d at 557. The plaintiffs' sought to identify the defendants so that they could be served with process, and the defendants moved to quash. The *Sony Music* court began its analysis by recognizing the First Amendment protection in anonymous speech. *Id.* at 562-63. However, in granting the request for discovery, the court found that an individual using the internet to illegally download or distribute copyrighted music is "not seeking to communicate a thought or convey an idea. Instead the individual's real purpose is to obtain music for free." *Id.* at 564.

*Highfields*, on the other hand, addressed claims based on critical, anonymous commentary within the ambit of the First Amendment. *See Highfields*, 385 F. Supp 2d at 975. The plaintiff, Highfields Capital Management, was a hedge fund manager and shareholder of Silicon Graphics, Inc. (SGI). The anonymous defendant used the screen name "highfieldcapital" to post several comments referencing SGI's stock performance on an internet message board. The plaintiff sued for defamation, trademark infringement, and unfair competition, and requested disclosure of the defendant's identity from the owner of the message board. In considering the plaintiff's request, the magistrate judge first found that the defendant's remarks consisted of "sardonic commentary," "parody" and "irony" protected by the First Amendment. *Id.* The court further noted that "a person like defendant has a real First Amendment interest in having his sardonic message reach as many people as possible—and being free to use a screen name of the kind he used here carries the promise that more people will attend to the substance of his views." *Id.* at 980. Finding that the plaintiff's allegations of misconduct did not outweigh the defendants' First Amendment interests,

the court denied the request for discovery. *See id.* Thus, while *Sony Music* implicitly assumes that the only First Amendment interest at issue is the right to anonymity, *Highfields* is premised on the understanding that the content of the defendant's speech also has First Amendment value.

### ii. Skywalker's speech raises substantial First Amendment concerns

As in *Highfields*, the speech at issue here merits First Amendment protection. In its Order of June 15, 2011, the Court noted that Skywalker's blogs are "obviously critical … [and filled] with heated discussion and criticism of the Art of Living Foundation and Ravi Shankar." ECF No. 83 at 10. In dismissing Plaintiff's defamation claim, the Court also concluded that Skywalker's statements were "constitutionally protected opinions." *Id.* The Court further found that "anonymous statements that the Art of Living Foundation is basically a cult and a sham is speech on a 'public issue.'" *Id.* The California Court of Appeal has noted that "although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 649 (Cal. Ct. App. 1996) (allegations that the Church of Scientology harmed and abused its members was speech in connection with a 'public issue')). Given that AOLF has chapters in 140 countries and is "one of the United Nations' largest volunteer-based NGOs," Skywalker's condemnation of the organization is clearly a matter of public interest. *See* ECF No. 85 ¶ 1.

Contrary to Plaintiff's assertions, evidence of copyright infringement does not *automatically* remove the speech at issue from the scope of the First Amendment. While "the First Amendment does not shield copyright infringement," *Harper*, 471 U.S. at 555-56, "copyright law contains built-in First Amendment accommodations." *Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003). Perhaps the most important is the doctrine of fair use, which allows the public to use copyrighted works "for purposes such as criticism, comment, news reporting, teaching … and scholarship." 17 U.S.C. § 107; *see also Elvis Presley Enters. V. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003) ("First Amendment concerns in copyright cases are subsumed within the fair use inquiry."). In this case, the Court has acknowledged that "Skywalker appears to have published the

9

Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH

[protected materials] … as part of a larger effort to debunk the notion that the Art of Living Foundation and Ravi Shankar possess some 'secret higher knowledge.'" *Id*. Although the Court need not determine at this stage if Skywalker's conduct is protected by fair use, the circumstances here create a substantial question as to whether the doctrine applies. *See New Era Publications Intern., ApS v. Carol Pub. Group*, 904 F.2d 152 (2d Cir. 1990) (the use of copyrighted quotations in a biography of Church of Scientology founder L. Ron. Hubbard was protected where the intended purpose of the work was to show that "Hubbard was a charlatan and the Church a dangerous cult"). The Court therefore finds that even if Skywalker's speech is not "political" or "religious," as he has argued, it at least raises significant constitutional issues.

        iii.    *Highfields* **is consistent with recent Ninth Circuit precedent indicating that courts should consider the potential impact of a discovery request on chilling protected First Amendment activity**

Although there is a "paucity of appellate precedent" on this issue, *In re Anonymous Online Speakers*, 2011 WL 61635, at *5, one recent Ninth Circuit case supports the application of the *Highfields* standard to the instant dispute. In *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), the Court of Appeal considered the efforts of a party in California's same-sex marriage suit to obtain internal campaign communications related to the development and advertising of a ballot proposition campaign. The *Perry* court first considered whether the proponents—the opponents of disclosure—had made a "prima facie showing of arguable First Amendment infringement" by demonstrating that the discovery request "would likely have a chilling effect on political association." *Id.* at 1160, 1165. Finding that disclosure would have such a chilling effect, the court determined that the plaintiffs had failed to "demonstrate a sufficient need for the discovery to counterbalance that infringement." *Id.* at 1164.

While *Perry* did not involve compelled discovery of an anonymous speaker's identity, its analysis suggests that where substantial First Amendment concerns are at stake, courts should determine whether a discovery request is likely to result in chilling protected activity. *See In re Anonymous Online Speakers*, 2011 WL 61635, at *4 (noting that the *Perry* analysis is "instructive" in a discovery dispute regarding anonymous speech). The *Highfields* court addressed similar

10
Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH

concerns by considering whether disclosure of the defendant's identity would deter other critics from exercising their First Amendment rights. *See Highfields*, 385 F. Supp. 2d at 980-81 ("When word gets out that the price tag of effective sardonic speech [includes disclosure of the speaker's identity], that speech likely will disappear."). Conversely, *Sony Music* made no mention of the chilling effect of disclosure. Of course, this makes sense, given that the conduct at issue had little First Amendment value. However, because disclosure of Skywalker's identity here could discourage other bloggers from engaging in lawful, critical speech, the *Highfields/Perry* analysis is more likely than *Sony Music* to focus the Court on striking the proper balance between competing interests.

Accordingly, the Court concludes that the question of whether Skywalker's identity may be revealed should be considered under the *Highfields* standard.

### 2. *Highfields* requires granting the motion to quash

*Highfields* establishes a two-part test for determining whether to allow discovery seeking the identity of an anonymous defendant: (1) The plaintiff must produce competent evidence supporting a finding of each fact that is essential to a given cause of action; and (2) if the plaintiff makes a sufficient evidentiary showing, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant. *Id*. 975-76.

#### i. Evidence supporting a prima facie case

Plaintiff has arguably met its burden under the first prong. To establish a *prima facie* case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act. *See* 17 U.S.C. § 501(a); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011). In proving ownership, the plaintiff must establish that it either authored the asserted work, or that there has been a "transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant." 4-13 NIMMER ON COPYRIGHT § 13.01.

11
Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH

Here, Magistrate Judge Lloyd found that Plaintiff established that "it is the author of the BWSM and owns the copyright for it." ECF No. 90 at 5. The Magistrate Judge apparently relied on the declaration of Plaintiff's Chairperson, Ashwani Dhall, which states: "Art of Living authored and published an informational booklet entitled the Breath Water Sound Manual in 2003, which Art of Living subsequently registered with the United States Copyright Office, Registration No. TX0007240203." ECF No. 40 ¶ 37.[5] The Magistrate Judge also found that Skywalker's admission that he had published the BWSM was sufficient to show copying. ECF No. 90 at 6.

Skywalker argues that Plaintiff may not rely on testimony that "merely recites the ultimate legal conclusion that [Plaintiff] 'authored the BWSM'" in establishing copyright ownership. ECF No. 119 at 4. However, Skywalker offers no evidence rebutting Plaintiff's claim to authorship of the BWSM.[6] Nor does he cite any case holding that the declaration of an individual with personal knowledge of the work's authorship is insufficient to establish ownership. *See Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931, 2011 WL 3667335, at *13 (S.D.N.Y. Aug. 22, 2011) (noting in dicta that declarations from a record company's employees were prima facie evidence of

---

[5] Plaintiff alleges that it applied for a copyright registration for the BWSM on October 19, 2010, several weeks before filing this lawsuit. *See* FAC ¶ 51. A plaintiff is not barred from bringing an infringement action between the time the copyright application is filed and the Copyright Office's issuance of the registration certificate. *See, e.g.*, *Dielsi v. Falk*, 916 F. Supp. 985, 994 n. 6 (C.D. Cal. 1996).

[6] In their motion for summary judgment, Defendants do attack Plaintiff's claim to authorship of the BWSM and argue that Skywalker's publication of the work is protected by fair use. *See* ECF No. 111 at 6-7. Given that the motion for summary judgment is pending and that Skywalker has prevailed on other grounds, the Court declines to consider those arguments here. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (a court is not required to consider evidence or argument not previously presented to the magistrate judge because to do so "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court.") (internal citations omitted). It is worth noting, however, that because fair use is generally considered an affirmative defense, a defendant's conduct may be constitutionally protected even where a plaintiff establishes a *prima facie* case of copyright infringement. *See, e.g.*, *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003) (finding that although the plaintiff had shown ownership and copying, the district court did not abuse its discretion in finding fair use). As the fair use doctrine enshrines an important First Amendment protection, a court determining whether to unmask an anonymous defendant might consider fair use arguments raised in a motion to quash even where the applicable standard requires only a *prima facie* showing of the plaintiff's claim. *See Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) (applying the *Sony Music* factors and rejecting defendants' vague allegations that their unauthorized downloading of plaintiffs' musical recordings 'may' be protected by fair use).

12

Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH

copyright ownership); *compare Lanard Toys Ltd. v. Novelty, Inc.*, No. CV 05-8406, 2007 WL 2439505, at *7 (C.D. Cal. March 17, 2006) (declaration stating that plaintiff owned the "trademark" in the asserted works was insufficient to prove copyright ownership). More importantly, because the Court finds that Plaintiff has failed to meet its burden under *Highfields*' second prong, it is unnecessary to determine whether Plaintiff's evidence is sufficient to establish a *prima facie* case of copyright infringement.

### ii. Balancing of harms

#### a. Injury to Skywalker and the chilling of First Amendment activity

In applying the second part of the *Highfields* analysis, the Court must first consider the "magnitude of the harm" to Skywalker that would result from revealing his identity. The Court may also examine the possibility that disclosure will deter other would-be critics or bloggers from exercising their First Amendment rights. *See Perry*, 591 F.3d at 1158 ("We also consider the substantial costs imposed on the public interest … [and the chilling impact of disclosure] not only [on] the official proponents of initiatives and referendums, but also [on] the myriad social, economic, religious and political organizations that publicly support or oppose ballot measures.").

First, to the extent that Skywalker's anonymity facilitates free speech, the disclosure of his identity is itself an irreparable harm. *See id.* ("One injury to Proponents' First Amendment rights is the disclosure itself. Regardless of whether they prevail at trial, this injury will not be remediable on appeal."). As the Supreme Court has explained, "an advocate may believe her ideas will be more persuasive if her readers are unaware of her identity. Anonymity thereby provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message simply because they do not like its proponent." *McIntyre*, 514 U.S. at 342. The *Highfields* court put it more succinctly: "Anonymity liberates." *Highfields*, 385 F. Supp. 2d at 980. Insofar as Skywalker may communicate his message more openly or garner a larger audience by employing a pseudonym, unveiling his true identity diminishes the free exchange of ideas guaranteed by the Constitution.

Furthermore, revelation of an anonymous speaker's identity may invite "ostracism for expressing unpopular ideas, … retaliation from those who oppose her ideas or from those whom she criticizes, or simply give unwanted exposure to her mental processes." *Cahill*, 884 A.2d at 457 (internal citation omitted). In this case, Skywalker submitted a declaration expressing concern that revealing his identity would "expose me and my family to harassment and retaliation from loyal adherents of Ravi Shankar." ECF No. 15 ¶ 4. He also claims that disclosure would "set a precedent that would make others fearful that if they honestly voiced their opinions concerning Shankar and/or AOL, they too would face such harassment and retaliation." *Id.* Skywalker supports these contentions with a "widely circulated" internet posting by an AOLF leader denouncing another "dissident" and disclosing the contact information of acquaintances who could testify that the dissident was "unstable." *See* ECF No. 29-4 at 16-17.

While the Court agrees with the Magistrate Judge that such evidence is not particularly reliable, "it is consistent with the self-evident conclusion that important First Amendment interests are implicated by [Plaintiff's] discovery request." *Perry*, 591 F.3d at 1163. Furthermore, declarations from affected individuals alone have been found to demonstrate that disclosure will chill protected conduct. *See id.* (declarations from ballot initiative proponents stating that they would be deterred from participating in future campaigns); *Dole v. Serv. Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459 (9th Cir. 1991) (declarations of two union members who said they would no longer participate in membership meetings if the meeting minutes were disclosed). The Court therefore finds that Skywalker has raised a reasonable inference that unveiling his identity will both subject him to harm and chill others from engaging in protected speech.

### b. Injury to Plaintiff

Denying the discovery request at this time will not cause comparable injury to Plaintiff's interests. Plaintiff seeks to conduct discovery as to Skywalker's "motives for and the extent of his misconduct" as well as "other persons involved in his misconduct and any financial benefit he obtained from his misconduct." ECF No. 109 at 14. At oral argument, Plaintiff's counsel could not explain why such information could not be obtained through interrogatories, to which

Skywalker has apparently responded in the past, or by means other than a traditional in-person deposition.[7] *Compare Arista Records LLC v. Doe*, 604 F.3d 110, 124 (2d Cir. 2010) (noting that the defendant's fair use arguments raised "questions of credibility and plausibility that cannot be resolved while Doe 3 avoids suit by hiding behind a shield of anonymity"). It also appears that Plaintiff could acquire some of the information it seeks—such as the number of people who viewed or downloaded the BWSM and whether Skywalker's blog generated revenue—from Google or Automattic. Finally, counsel has been unable to clarify why a deposition is necessary *at this time*—with motions to strike and for summary judgment fully briefed and pending—rather than after resolution of those motions. In this sense, the instant case differs significantly from those in which discovery as to an anonymous defendant's identity was necessary in order to effect service of process. *See, e.g.*, *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999); *Sony Music*, 326 F. Supp. 2d 556. In fact, this case appears to be unique among the relevant body of case law in that Skywalker has not only appeared through counsel and filed numerous dispositive motions, but also propounded and responded to interrogatories and requests for production. Skywalker's engagement in the litigation, albeit under a pseudonym, diminishes Plaintiff's need to obtain his true name at this time.

Of course, if Defendants' pending motions are unsuccessful, disclosure of Skywalker's identity may be necessary in order to conduct a pre-trial deposition and to enforce any judgment ultimately obtained against him. However, the proper scope of discovery can be fashioned at that time.

---

[7] For example, Fed. R. Civ. P. 30 provides: "The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Alternatively, Fed. R. Civ P. 31 allows for depositions by written questions. At least one magistrate judge has also entered a protective order allowing an anonymous defendant to be deposed but prohibiting his identity to be disclosed except to the parties' lawyers. *See Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240 (4th Cir. 2009). As neither party has proposed any such alternative solutions, the Court will not consider whether one might be appropriate here.

## IV. CONCLUSION

For the reasons explained above, the motion for relief from Magistrate Judge Lloyd's order denying the motion to quash is GRANTED. Any discovery related solely to Skywalker's identity is stayed pending resolution of Defendants' motions to strike and for summary judgment. At that time, Plaintiff may renew its motion to compel discovery.

**IT IS SO ORDERED.**

Dated: November 9, 2011

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No.: 10-CV-05022-LHK
ORDER GRANTING MOTION FOR RELIEF FROM NONDISPOSITIVE PRE-TRIAL ORDER RE: MOTION TO QUASH