1  Joshua Koltun (Bar No. 173040)
   Attorney
2  101 California Street
   Suite 2450, No. 500
3  San Francisco, California  94111
   Telephone:  415.680.3410
4  Facsimile:  866.462.5959
   joshua@koltunattorney.com
5
   Attorney for Defendants
6  Doe/Klim and Doe/Skywalker

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE

11

12  ART OF LIVING FOUNDATION, a          )   Case No.:  CV 10-5022 LHK HRL
    California corporation,               )
13                                        )   **[REDACTED] SECOND SPECIAL**
                   Plaintiff,             )   **MOTION TO STRIKE AND**
14                                        )   **MEMORANDUM OF POINTS AND**
          v.                              )   **AUTHORITIES**
15                                        )
    DOES 1-10, inclusive,                 )   Date:        December 8, 2011
16                                        )   Time:        1:30 pm
                   Defendants.            )   Judge:       Hon. Lucy H. Koh
17                                        )   Courtroom:  4
                                          )
18                                        )   ***DOCUMENT SUBMITTED***
                                          )   ***UNDER SEAL AND CHAMBERS***
19                                        )   ***COPY***
                                              ***per LR 79-5(d)***
20                                            **along with the following documents:**
                                                 [Redacted] Special MTS
21                                               [Unredacted ]Koltun Declaration
                                                 [Redacted] Koltun Declaration
22
                                              Filed Herewith [public docket]:
23
                                              Admin Motion to Seal
24                                            2nd Skywalker Declaration
                                              2nd Klim Declaration
25                                            3rd Request for Judicial Notice
                                              Proposed Order
26  _____

27

28

TABLE OF CONTENTS

SUMMARY ...................................................................................................................1

PROCEDURAL BACKGROUND..................................................................................3

PROVENANCE OF DOCUMENTS CONTAINING ALLEGED TRADE SECRETS AND
  COMPARISON TO DOCUMENTS POSTED BY SKYWALKER ..........................4

ARGUMENT ..................................................................................................................5

I.   It is Appropriate for Defendants to Proceed On This Special Motion to Strike..............................5

II.   Plaintiff  Is Not the Owner of the Alleged Trade Secrets and Therefore Has No Standing to Sue
     ...............................................................................................................................6

III.   Most of What Plaintiff Designates as Trade Secret was Never Posted by Skywalker. ................6

IV.   The Material Plaintiff Has Designated As Trade Secret Is Generally Known ...........................7

A.   Information which is Generally Known Cannot be A Trade Secret ............................................7

B.   Much of the Material Designated as Trade Secrets by the ATSD is Not Secret at All ..............8

1.   The Panchakosha Guided Meditation is Freely Sold by AOL.....................................................8

2.   Much of the Material Designated as Trade Secret Would Obviously Be Observed by the
     Students........................................................................................................................8

C.   Much of the Material Designated as Trade Secret  Are Conventional Concepts and
     Terminology of Hindu Mysticism, Many of Which Simply Repeat What AOL Openly Teaches
     and Publishes ............................................................................................................10

V.   Plaintiff  Cannot Show That the Alleged Secret Has Any Independent Economic Value ...........15

VI.   It is Impossible to Disentangle Plaintiff's Trade Secret Claims from Religious Issues, and Thus
     the Claims  Are Barred by the Free Exercise Clause....................................................16

VII.   Neither AOL Worldwide Nor Plaintiff Took Reasonable Measures to Protect these Purported
     "Trade Secrets" .........................................................................................................19

A.   To Be A Trade Secret, Plaintiff Must Show That Reasonable Efforts Have Always and
     Everywhere Been Made to Keep the Information Secret ........................................................19

B.   Plaintiff Cannot Show that AOL Chapters Worldwide Imposed Confidentiality Obligations..20

1.   AOL Chapters Worldwide Do not Necessarily impose NDAs on everyone who receives the
     Manuals or SK Notes....................................................................................................20

C.   Plaintiff  Cannot Show that AOL Chapters Gave Teachers a Basis to Know What Was
     Supposed to be Kept Secret and What Was to be Taught.......................................................21

VIII.   Plaintiff Cannot Show That It Has Suffered Damages As a Result of the Alleged
     Misappropriation, and thus Cannot Prevail On Its Trade Secret Claim ...................................24

CONCLUSION...............................................................................................................25

Joshua Koltun ATTORNEY

1

TABLE OF AUTHORITIES

2

**Cases**

3

*ABBA Rubber Co.v. Sequist*, 235 Cal. App.3d 1, 21 (1991) ....................................................7

4

*Am. Paper & Packaging Prods. v. Kirgan*, 183 Cal. App. 3d 1318, 1326 (1986) ................7

5

*Bayline Partners L.P. v. Weyerhaeuser Co.*, 1994 U.S. Dist. LEXIS 19638, 14-15 (N.D. Cal.)..........20

6

*Brown v. Entm't Merchs. Ass'n.,* 131 S.Ct. 2729, 2739 (2011).................................................25

7

*Buffets, Inc. v. Klinke*, 73 F.3d 965, 968 (9th Cir. 1996) .........................................................7

8

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 732-733 (9th Cir. 1999) ..........25

9

*Computer Econs., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 984-985 (S.D. Cal. 1999) .............6

10

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (1968) ............................................................6

11

*Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 763 (1985).....................................24

12

*Edwards v. Aguillard*, 482 U.S. 578, 599 (1987) ..................................................................18

13

*Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 558 (N.D. Cal. 1999).........................21

14

*Gertz v. Robert Welch., Inc.*, 418 U.S. 342, 349-50 (1974).....................................................24

15

*Hoffmann-La Roche Inc. v. Yoder*, 950 F. Supp. 1348, 1360-1361 (S.D. Ohio 1997)...........20

16

*Imax Corp. v. Cinema Techs.*, 152 F.3d 1161, 1167 (9th Cir. 1998)....................................5, 6

17

*In re Providian Credit Card Cases,* 96 Cal. App. 4th 292, 304-306 (2002). ...........................7

18

*KEMA, Inc. v. Koperwhats*, 2010 U.S. Dist. LEXIS 90790 (N.D. Cal. ) ...............................19

19

*KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 906 (N.D. Cal. 2010.........................16

20

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1249-50 & n.5 (9th Cir.

21

   1999........................................................................................................................17

22

*Malnak v. Yogi*, 440 F.Supp. 1284, 1322 (D.N.J 1977 .........................................................18

23

*MBL (USA) Corp. v. Diekman*, 112 Ill. App. 3d 229, 238 (1983 .....................................19, 21

24

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ......................................5

25

*Motor City Bagels, L.L.C. v. American Bagel Co.*, 50 F. Supp. 2d 460, 480 (D. Md. 1999)..........20, 21

26

*Omnitech Int'l v. Clorox Co.*, 11 F.3d 1316, 1323 n. 8 (5th Cir. 1994);.................................6

27

*Religious Technology Center v. Netcom Online Commun. Serv.,* 923 F. Supp. 1231, 1252 (N.D.Cal.

28

1995). ...............................................................................................................17, 24, 25

*Religious Technology Center v. Wollersheim,* 796 F.2d 1076, 1077 (9th Cir. Cal. 1986) ...................17

*SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir. 1985)............................................6

*Tax Track Sys. Corp. v. New Investor World, Inc*., 478 F.3d 783, 787-788 (7th Cir. 2007) ................20

*United States v. Article or Device, etc.*, 333 F. Supp. 357, 363-364 (D.D.C. 1971) ...........................17

*United States v. Seeger*, 380 U.S. 163, 166-167 (1965) ........................................................................18

*University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536-537, 545 (5th Cir. 1974)..24

*Washington Ethical Soc. v. District of Columbia*, 249 F.2d 127, 129 (D.C. Cir. 1957).......................18

*Wyatt Tech. Corp. v. Malvern Instruments Incorporation*, 2009 U.S. Dist. LEXIS 66097 (C.D. Cal.)16

*Yield Dynamics, Inc. v. TEA Systems Corp.*, 154 Cal. App. 4th 547, 562 (2007................................7, 8

## Statutes

CCP § 2019.210 ......................................................................................................................................5

CCP § 425.16 .................................................................................................................................1, 3, 5

Civ.Code § 3426.1 ..................................................................................................................................7

## Other Authorities

Restatement 3d Unfair Competition, § 39 .......................................................................................7, 8, 15

## [EXCERPTS ATTACHED TO REQUEST FOR JUDICIAL NOTICE, EXH A:]

Eliade, Mircea *Yoga, Immortality and Freedom,* (1958, 2009)...........................................................11

*Encyclopedia of Philosophy* (1967) ....................................................................................................11

Feuerstein, Georg, *The Deeper Dimension of Yoga* (2003).........................................................12, 13

Feuerstein, Georg, *The Shambhala Guide to Yoga* (1996) ..................................................................11

James, William, *Varieties of Religious Experience* (1902) ................................................................11

*Oxford Dictionary of World Religions*................................................................................................11

Shankar, Ravi, *Wisdom for the New Millennium* (1999) ...................................................11, 12, 14

Smith, Huston, *Cleansing the Doors of Perception* (2000)...............................................................14

Yogi, Mahesh *The Science of Being and the Art of Living* (1963) ...............................................12, 15

Joshua Koltun ATTORNEY

1    TO PLAINTIFF ART OF LIVING FOUNDATION AND ITS COUNSEL OF RECORD:

2  PLEASE TAKE NOTICE that on December 8, 2011, at 1:30 p.m., or as soon thereafter as counsel may be

3  heard, in Courtroom Four of this court, located at 280 South 1ˢᵗ Street, San Jose, defendants Doe/Klim and

4  Doe/Skywalker will specially appear and move the Court under California Code of Civil Procedure section

5  425.16. to strike the second cause of action in the First Amended Complaint. This motion is based upon

6  the Memorandum of Points and Authorities that follows, on Defendants' Request for Judicial Notice and

7  the exhibits thereto, on the Declarations of Doe Klim and Doe Skywalker and Joshua Koltun, all submitted

8  herewith, and on all the pleadings, records and files previously submitted in this case, and on such further

9  material and argument as may be submitted at or before the hearing on this motion.

10    Defendants Doe/Klim and Doe/Skywalker respectfully request this Court to strike the Trade Secret

11  causes of action in the Complaint (as to all Doe Defendants), for the reasons stated below, and determine

12  that Defendants, as "prevailing defendants" under section 425.15(c)(1),  are entitled to reasonable

13  attorneys' fees on the Trade Secret, Defamation and Trade Libel claims, the amount of which to be

14  determined on  subsequent motion.

15                              ***SUMMARY***

16    This Court previously ruled that Defendants have met their initial burden under section 425.16.

17  Plaintiffs had previously filed several documents under seal and claimed that the entire documents

18  were trade secrets, which this Court held was improper.  The Court denied the motion to strike

19  without  prejudice.   Plaintiff has now amended its trade secret designations to specify that certain

20  passages and/or snippets in those documents constitute a trade secret.  Defendants now renew their

21  special motion to strike, based on these amended designations.  As explained further below, Plaintiff

22  cannot show a "probability" that it will "prevail" on the trade secret claim.  CCP § 425.16 (b)(1).

23    As a preliminary matter, Plaintiffs have not shown that they have standing to sue.  The

24  documents at issue, which they contend contain trade secrets, do not originate with Plaintiff

25  (AOLFUS) and appear to have been developed and owned by foreign entities, if by anyone.

26    A great portion of the material that Plaintiff designates as trade secrets simply does not

27  correlate to any information that Skywalker disclosed.  Thus, even assuming *arguendo* that the

28  material were a trade secret, Plaintiff has not shown any misappropriation.

- 1 -

As to the material that does correlate to what Skywalker posted, much of the information is quite obviously not secret.  For example, the "Pankosha meditation" designated as a trade secret is available for sale on the AOL website.  Moreover, the information information designated as a trade secret is self-evidently intended to be conveyed to students, or would be observable by them.  It is undisputed that the students are not under any confidentiality obligation, and under settled principles of law such information cannot be a trade secret.

Much of the allegedly secret information simply restates commonplace concepts of Hindu mysticism.  Moreover, these purportedly "secret" mystical assertions themselves simply restate matters that AOL concede are to be conveyed to students in its courses, and indeed, restate assertions that Shankar makes in his published writings or that AOL makes on its websites.

Plaintiff cannot show that the alleged trade secrets have any economic value.  Indeed, the very value Plaintiff claims appears to be in relation to that which is observed by its students and is therefore *not* secret.

On the facts of this case, it is impossible to disentangle Plaintiff's claims concerning its trade secrets and the purported value thereof from claims of religious authority and revelation.  The trade secret claim cannot be adjudicated on "neutral principles" and is barred by the Free Exercise clause.

Plaintiff may contend that some portion of the above information is information that is not supposed to be conveyed to students.  To a large extent that is simply impossible.  But even if it were true, Plaintiff cannot show that it took any reasonable measures to ensure that the information not be conveyed to students.  First, as noted, the allegedly "secret" information was disclosed to AOL teacher-trainees in 140 AOL chapters around the world.  Many teachers or trainees were given this information without ever agreeing to confidentiality.  Plaintiff cannot show (as the law requires) that all persons given this information, worldwide, from the time the information was first developed, agreed to maintain its confidentiality.   Second, even if all such persons had agreed in some general sense to maintain confidentiality, Plaintiff cannot show that it has taken reasonable measures to clearly specify what information was supposed to be taught, and what information was supposed to be kept secret.  Any reasonable teacher would assume that the information that Plaintiff now designates as "secret" was, on the contrary, a script for precisely what should be taught to students.  That is, in

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

fact, what many, if not all, teachers believe, and the matter Plaintiff purports to designate as secret is routinely conveyed to students.

Plaintiff cannot prevail, because it cannot show that it is entitled to any monetary relief (the only relief it seeks). Plaintiff cannot show any causal link between the disclosure of the putative trade secrets and its drop in revenues, which drop began well before Plaintiffs even began the blogs, let alone the disclosure of the alleged trade secrets. On the contrary, Plaintiff has alleged that the drop in revenues were caused by Defendants' "false" statements. Since this Court has ruled that these statements were constitutionally protected opinion, Plaintiff cannot show that it is entitled to damages based on a misappropriation of its trade secrets.

### *PROCEDURAL BACKGROUND*

In its Order of May 26, 2011 ("Order"), the Court ruled that Defendants had met their initial burden of showing that the disclosure of the alleged trade secrets was speech on a "public issue" under the first prong of section 425.16. Order at 16-17. The Court ruled, however, that plaintiff had made a sufficient *prima facie* showing on its trade secret claim, because, among other reasons Defendants had failed to show that the alleged trade secrets were generally known. *Id.* at 17-18. At the same time, however, the Court ruled that Plaintiff had not identified the "secret aspects" of the documents with specificity. *Id.* at 18-19. The Court denied the Motion to Strike the defamation, trade libel, and trade secrets claims without prejudice. Order at 2, 20.

Plaintiff has now filed a First Amended Complaint, dropping its defamation and trade libel claims and dropping its request for injunctive relief. Plaintiff has also served an Amended Trade Secret Disclosure (hereinafter, "ATSD", attached as Exhibit 1 to the Koltun Declaration). The Exhibits to the ATSD correspond to exhibits that were previously designated as trade secrets in their entirety, which corresponded to the Exhibits A-D of the Dhall Declaration. In the ATSD, however, Plaintiff has highlighted passages/snippets in those Exhibits that it asserts are its trade secrets.

*NB:    In the **redacted** version of this brief, redactions that correspond to passages that Plaintiff designates as Trade Secrets will be denoted as "+++++"; passages that are **not** designated as Trade Secrets, but are designated as "Confidential" filings under this Court's Protective Order, will be denoted by "^^^^^"   In the **unredacted** version, Designated Trade Secrets will be highlighted in highlighted in ==yellow==; Confidential per Protective Order [**Not** Trade Secret] in* ==violet==*.*

***PROVENANCE OF DOCUMENTS CONTAINING ALLEGED TRADE SECRETS AND COMPARISON TO DOCUMENTS POSTED BY SKYWALKER***

**Exhibit A** of the ATSD is entitled "Part I Course Manual," and is referred to in the ATSD as the Training Guide Phase One Manual.  This manual exists in two different versions, an Indian one and a European one, and has been updated or revised a number of times.  Second Skywalker Decl. ("SW Decl.) at 7.  The version attached to the ATSD is an Indian one.  *Id.*  It states that it was revised in August 2006, that it was published in Bangalore, India, and that it is "by Sri Sri Ravi Shankar" and that it is "the Art of Living Part I Course, as taught by Sri Sri Ravi Shankar."  ATSD, Exh A.  ***No version of this document was posted by Skywalker on his blog.***  SW Decl., ¶ 7.

**Exhibit B** to the ATSD is entitled "the Art of Living Course TTC One Manual" and is what the ATSD refers to as "The Phase One Supplement Manual" and (apparently) what the FAC refers to as "the Continuation Manual."  FAC, ¶ 90.  This 54 page document ***bears some resemblance*** to the 35-page "Teacher Training Guide Phase I," the text of which was posted by Skywalker on his Blog.  SW Decl., ¶ 8, Exh C [sealed per DE 75].  The version of this document, the text of which was posted by Skywalker, states that it is published by the "North American Ashram, August 2006.  *Id.*  The North American Ashram is based in Montreal, Canada.  *Id.*

Although Plaintiff's original designation of trade secrets had contained an Exhibit C that corresponded to the "Yes! Teacher Notes" referred to in the FAC, the ATSD does ***not*** contain an ***Exhibit C***, and thus, apparently, Plaintiff is ***not*** designating anything in the Yes! Teacher Notes as a trade secret.  *Contrast* FAC, ¶ 90 (Yes! Teacher Notes contain trade secrets).

**Exhibit D** to the ATSD is a document entitled "Sudarshan Kriya Notes (Revised June, 2000)," which closely resembles, but is not identical, to the document  entitled "Sudarshan Kriya Notes," the text of which was posted by Skywalker.  SW Decl., ¶ 5, 9; Exh B [sealed, DE 75].  Although neither version of the Sudarshan Kriya Notes bears any indication of its origin on its face, Skywalker received a cease and desist letter from an ***Indian*** AOL-affiliated entity, Vyakti Vikas Kendra, which asserted that "the Copyright in these Notes belongs exclusively to us."  SW Decl., ¶ 10, Exh. F (1st Decl).

With regard to these  materials, Plaintiff's counsel stated at the May 26 hearing that "some were developed by Sri Sri Ravi Shankar, [and] some were developed by the California Corporation with Sri Sri Ravi Shankar.  Transcript at 5.

Joshua Koltun ATTORNEY

1    In August 2010, after Skywalker had already posted allegedly trade secret material on his

2    Blog, students attending a Teacher Refresher Course were required to sign a contract with the

3    International Art of Living Foundation (a Swiss entity), which stated that:

4        IAOLF will provide the Teacher with printed and recorded material such as the Teacher's
         Manual and the Sudarshan Kriya tape in order to teach the courses. This material remains the
5        property of IAOLF.

6    SW Decl., ¶15, Exh. A.

7                                    *ARGUMENT*

8    **I.    *It is Appropriate for Defendants to Proceed On This Special Motion to Strike***

9        The Court denied the Motion to Strike without prejudice, and thus it may be renewed. With

10   respect to the defamation and trade libel claims, since Plaintiff has not renewed these claims, this

11   Court should rule that these claims are dismissed with prejudice, and that Defendants have prevailed

12   on these claims and thus are entitled to an award of reasonable attorneys' fees, the amount of which is

13   to be set by separate motion.  Section 425.16(c)(1).

14       With respect to the trade secret claims, this Court has ruled that Skywalker's posting of the

15   alleged trade secrets constituted speech on a "public issue" and that therefore Defendants had met

16   their initial burden under the § 425.16.

17       Plaintiff has, per this Court's order, now purported to specify what precisely it contends is the

18   "secret" material within its former voluminous disclosure.  Defendants herewith submit additional

19   evidence responsive to this purported specification of the alleged trade secrets.  For the reasons stated

20   below, Plaintiff cannot meet its *prima facie* burden of showing that it would prevail on its trade secret

21   claim. [1]  Moreover, even if Plaintiff could show the requisite "probability [of]  prevail[ing]" against

22

23   [1] Defendants respectfully submit that the Court erred in denying the first Motion to Strike.  A plaintiff
     that fails to indicate with specificity what it is claiming as a trade secret has failed to carry its burden,
24   as a matter of law, as to the existence of that trade secret.  *Imax Corp. v. Cinema Techs.,* 152 F.3d
     1161, 1167 (9th Cir. 1998)(granting summary judgment for defendant on the ground tht in failing to
25   specify the trade secret with specificity plaintiff had failed to carry its burden of showing the existence
     of a trade secret.)  On a motion to strike under section § 425.16, the same standard applies as on a
26   summary judgment motion.  *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir. 2001).
         The requirement of specificity here is similar to that requiring specificity in pleading fraud,
27   except that in the trade secret context courts do not require specificity in the complaint itself, so as not
     to force Plaintiff to disclose secret matters in open court.  Thus provisions such as CCP § 2019.210
28

Joshua Koltun ATTORNEY

Skywalker, it cannot do so as to the other  Defendants, and thus the trade secret claim as to them should be stricken.

**II.**     ***Plaintiff  Is Not the Owner of the Alleged Trade Secrets and Therefore Has No Standing to Sue***

To have standing to pursue a claim of trade secret misappropriation, a plaintiff must be able to show that it developed the alleged trade secret or by some transaction became the owner of the rights *Omnitech Int'l v. Clorox Co*., 11 F.3d 1316, 1323 n. 8 (5th Cir. 1994); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir. 1985).  Plaintiff has failed to show that it is the owner of the alleged trade secrets in question, and the evidence appears to show that it is not.   The material designated as trade secrets all appears to originate from abroad, and to have been developed by Ravi Shankar.  Plaintiff is an American entity with some loose affiliation to other AOL entities.  Plaintiff has not shown that it is the owner of the alleged secrets in question or any other basis for concluding that it has standing to sue thereon.

**III.**     ***Most of What Plaintiff Designates as Trade Secret was Never Posted by Skywalker.***

Most of the material that Plaintiff now designates as trade secret was never posted by Skywalker.  As noted, ATSD Exh. A, was never posted on Skywalker's blog, and while the 54 page "TTC One Manual" (ATSD Exh. B) does bear some resemblance to the 35 page "Teacher Training Guide Phase I" posted by Skywalker (1st SW Decl,. Exh. C), there is again almost no overlap between the material in the ATSD Exh. B designated as Trade Secret and the material posted by Skywalker.

The only item of overlap between ATSD Exh. A and B and the material posted by Skywalker is this:  In ATSD, Exh. A, at 20-22, and again in ATSD, Exh. B at 31-32, there is a passage entitled "Panchakosha Guided Meditation," which corresponds to a passage on page 28 of the "Teacher

---

are designed to enable the plaintiff to specify the trade secret confidentially, as expeditiously as possible, because as a substantive matter a defendant need not defend itself against an improperly vague trade secret claim.  *Imax, supra; Computer Econs., Inc. v. Gartner Group, Inc*., 50 F. Supp. 2d 980, 984-985 (S.D. Cal. 1999)(former section 2019(d) was designed to codify  *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (1968), which upheld ***the dismissal*** of a trade secret action where plaintiff failed to specify trade secret with particularity, but which recognized that such specification need not take place in the complaint itself) .

At a minimum, Defendants preserved their right to renew the motion to strike until Plaintiffs have specified the trade secret with particularity.

1  Training Guide Phase I" posted by Skywalker.  1st SW Decl, Exh. C.  As explained below in section

2  I.V.B, the "Panchakosha Guided Meditation" is not secret.

3   There *is* a significant overlap between material in ATSD Exh. D "Sudarshan Kriya Notes" that

4  has been designated as Trade Secret and material posted by Skywalker.  SW Decl, ¶ 5, 9; Exh. B

5  (sealed).  However, some material does not overlap.  For example, the "Children's Kriya" on page 13

6  of ATSD Exh. D was not posted by Skywalker.  *Id*.  As explained below, the portions of Exhibit D

7  that Skywalker posted are not trade secrets.

8   All of the other material designated as Trade Secrets is irrelevant, since Skywalker never

9  disclosed such material.  SW Decl. ¶ 7-8.

10  **IV.  *The Material Plaintiff Has Designated As Trade Secret Is Generally Known***

11   **A.  *Information which is Generally Known Cannot be A Trade Secret***

12   Information which is "generally known" cannot, by definition, be a trade secret.  Civ.Code §

13  3426.1(d)(1).  Thus, for example, the scripts used by telemarketers are not a trade secret because they

14  are disclosed to the public.  *In re Providian Credit Card Cases,* 96 Cal. App. 4th 292, 304-306 (Cal.

15  App. 1st Dist. 2002)   This is true even if the scripts are disclosed in piecemeal fashion.  *Id.*  Nor can a

16  trade secret include information that can be discovered with very little effort.  *Buffets, Inc. v. Klinke*,

17  73 F.3d 965, 968 (9th Cir. 1996);  *Am. Paper & Packaging Prods. v. Kirgan*, 183 Cal. App. 3d 1318,

18  1326 (1986).  This is because the concept of "secrecy" in trade secret law is intertwined with the

19  requirement that the information derive independent value from the secrecy.  *Yield Dynamics, Inc. v.*

20  *TEA Systems Corp.*, 154 Cal. App. 4th 547, 562 (2007) (*citing* Rest.3d Unfair Competition, § 39, com.

21  f: "Although trade secret cases sometimes announce a 'novelty' requirement, the requirement is

22  synonymous with the concepts of secrecy and value … and the correlative exclusion of self-evident

23  variants of the known art.") [2]

24

25  _____

26  [2]  Defendants recognize that there is some disagreement among the precedents on this issue.  *ABBA Rubber Co.v. Sequist*, 235 Cal. App.3d 1, 21 (1991) holds that there is no "reasonably ascertainable" exception in California law.  Defendants submit that *American Paper* is the better reasoned decision.

27  While it may be true that there is no express exemption in the statute for information that is "readily ascertainable," the concept is implicit in the independent economic value requirement.  Information

28

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

**B.**   *Much of the Material Designated as Trade Secrets by the ATSD is Not Secret at All*

**1.**   *The Panchakosha Guided Meditation is Freely Sold by AOL*

Much of the material designated as Trade Secret is not secret at all.  To take a simple example, the only item in ATSD Exhs. A or B that was posted by Skywalker was the  "Panchakosha meditation."  This "guided meditation" is frequently conducted publicly by Ravi Shankar.  SW Decl., ¶ 17.  CDs of Ravi Shankar conducting this meditation are sold on the AOL website and can be downloaded directly from the internet from AOL Europe -- for 6 Euros.  Koltun Decl., ¶ 2, Exh 2.[3]

**2.**   *Much of the Material Designated as Trade Secret Would Obviously Be Observed by the Students*

Other information that Plaintiff has designated as trade secret are obviously not secret at all, because these "secrets" were observed by AOL students.  This is a matter as to which the Court questioned Plaintiff's counsel at the May 26 hearing.  Counsel conceded that students of the AOL courses are not under any confidentiality obligation.  Transcript at 10-11.  He insisted, however, that there was a "distinction" between the "teaching methods" or "process" (which he asserted was a trade secret) and the "material" that is taught the students (which he conceded was not).  *Id.* at 11-12.  The Court suggested that students would necessarily observe the methods the teacher is using, and counsel conceded that "some of the methods" would be observable.  *Id.* at 12.  He contended, however, that

> if you read through the trade secrets … not everything would be disclosed to students.  It's not all in the form of, for example what specifically is said to the student, but how the class is arranged, how it's broken up into different groups, …. I won't get into specifics because obviously we're not in a closed courtroom here.  But I think that not all of the aspects of the trade secrets, of the Manuals and Principles, are disclosed to students, and I think that can be gleaned simply by reviewing the Manuals and Principles.

*Id.* The Court commented that

> well, from what you've described, like how the room is arranged, I just think that would be visible to any student.  How are you going to keep that away from a student who is seeing it and who is participating in the arrangement?

---

that is readily ascertainable cannot have independent economic value by virtue of its being not generally known.  *See Yield Dynamics, supra; Restatement, supra.*

[3]  Other material designated by Plaintiff is in fact generally known, but in any event does not correlate to any material SW posted on his Blog.  *See, e.g.* SW Decl., ¶ 18; ATSD, Exh. A at 10; 3rd RJN, Exh. D (Ujjayi technique).

- 8 -

1    *Id.* at 12-13.  Counsel conceded that "some aspects the student would be able to glean, … but I think

2    other aspects are not observable by students."  *Id.* at 12.

3         Despite the foregoing colloquy, Plaintiff has now specifically designated the arrangement of

4    the room as a trade secret.  ATSD, Exh. A at xiv. ("++++++++++++++++++++++++++++++++++

5    ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

6    +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++"); *see also, e.g.,*

7    *id.* VII.A. ("+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

8    +++++++++.").

9         Much of the remaining designations are of a similar nature – statements or conduct that would

10   be readily observable to the students.  *See, e.g. id.* at 1 ("++++++++++++++++++++++++++++++

11   ++++++++++++++++++++++++++++++++++++++++"); ATSD Exh. D at 7 [VI.5-6] ("+++++++++

12   ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

13   ++++++++++++."); *see generally id.,* VII.B.

14        Similarly,  instructions such as "+++++++++++++++++++++++++++++++++++++++++++++

15   ++++++++++++++++++++" (ATSD, Exh. D at VII.2.b]) must necessarily have been conveyed to

16   students or else the instructions make no sense.  *See also id.* VII.D (instructions regarding practicing

17   Kriya at home) *compare id.*, Exh. A at 51 (not designated TS)

18        The same is true for the various health considerations described.  The students would observe

19   if a person was restricted from performing some of the functions.  *Id.*  at VII.10. ("++++++++++++

20   +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++").

21   Indeed, it is difficult to understand how any of the health consideration can be considered a trade

22   secret, in light of the fact that students are forced to fill out a health section of the course registration

23   form [*Id.* a VIII.A.], and the overarching advice "+++++++++++++++++++++++++++++++++++++

24   ++++++++++++++++++++++" *Id.* (emphasis in original).

25        Plaintiff has designated as a trade secret matters that the documents expressly state are to be

26   conveyed to students.  See, e.g. ATSD, Exh. D at VI.7: ("+++++++++++++++++++++++++++++

27   ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

28   +++++++++++++++++++++++++++++++")  In other places it is self-evident from the content of

- 9 -

Joshua Koltun ATTORNEY

the material that it is essentially a script for interactions to be had with students.  *See, e.g.,* ATSD at 1 ("+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++") (italics in original).

### C.   *Much of the Material Designated as Trade Secret Are Conventional Concepts and Terminology of Hindu Mysticism, Many of Which Simply Repeat What AOL Openly Teaches and Publishes*

Understood within the context of Hindu concepts and parlance, much of what Plaintiff now designates as "trade secrets" are simply commonplace assertions of Hindu mysticism.[4]  Moreover, these mystical assertions more or less regurgitate what is written in the non-secret material that Plaintiff concedes was to be conveyed to students, not to mention the many published teachings of Shankar that AOL offers for sale to the general public.

---

[4] AOL's insistence that it is "nondenominational" is itself quite common among modern Hindu mystics.  *See* Encyclopedia of Philosophy, "Hinduism", p.3-4 (Ramakrishna, and later Vivekenanda and Aurobindo claimed that Hinduism could be adapted to embrace all religions); Vivekenanda, Bhakti Yoga at 219-20 ("I am not this limited little being, I am the Universal.  I am the life of all the Sons of God.  I am the soul of Buddha, of Jesus, of Mohammed."), 245 ("I have found it possible in my life to worship all of them and to be ready for all that are yet to come.").
    Thus the following assertion, which Plaintiff has designated as "trade secret," is commonplace: "
        +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++
ATSD, Exh. D at 1. Nor indeed, is that comment any different from similar comments that Plaintiff concedes are to be conveyed to students, ATSD, Exh. A ("^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^ ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^."   And indeed, such sentiments are frequent in Shankar's published books.  *Wisdom for the New Millennium,* at 56, 57 (Jesus and Buddha simply enlightened masters, who, like others, help that help you get rid of "garbage" so that your mind can drop its illusions and surrender); 129 (Jesus "did all he could" to show us how to "get into the soul, the spirit, the source of life, the Self … recognize the Divinity within you … and you will inherit the kingdom"); 131 ("you cannot understand the sayings of Jesus if you are not alive with prana, with life force"); 141 (the Bible has parallels to the Upanishads, Christian as well as Buddhist traditions can be traced to India); 143 ("All the ten religions in the world belong to you").

Joshua Koltun ATTORNEY

A fundamental concept in Hindu mystical thought is the belief that the *Atman* (Self) is properly understood as being the *Brahman* (Infinite, Divine, Absolute, Being):

> The famous equation which forms the most influential point of Upanisadic teaching … the true meaning of the *Veda* [sacred Hindu scriptures]: the finest essence of the world is the Self, and "That thou art" …In brief, the eternal element within man is identical with *Brahman*, the sacred power pervading and sustaining the cosmos.

*Encyclopedia of Philosophy* (1967) at 2 (entry for Hinduism).[5]  As William James explained in his famous lectures:

> In India, training in mystical insight has been known since time immemorial under the name of Yoga. Yoga means the experimental union of the individual with the divine. It is based on persevering exercise; and the diet, posture, breathing, intellectual concentration, and moral discipline vary slightly in the different systems which teach it. The yogi, or disciple, who has by these means overcome the obscurations of his lower nature sufficiently, enters into the condition termed Samadhi, 'and comes face to face with the facts which no instinct or reason can ever know.'

James, *Varieties of Religious Experience* (1902) at 391 (quoting Vivekenanda, *Raja Yoga* (1891)).

These concepts are all part of the "teachings" of Shankar contained in his many books offered by AOL for sale worldwide  *See, e.g.,* Shankar, *Wisdom for the New Millennium* at 32 ("The divine is within you, you are in God and God is in you."); 42 ("to an enlightened person, everyone is a form of God."); 97 ("go beyond concepts of reality that is beyond thoughts, that is beyond words …"); 103-04 (the Upanishads explain four aspects of God; "truth and energy, that is God, … and that is what you are made up of, too"); 116 ("there is a greater formlessness that is ruling the entire creation, and you are the center of that formlessness, whatever you want to call it. God. Consciousness. No-mind. Nirvana. Spirit.").

The "So Ham" *mantra* used in the Sudarshan Kriya breathing technique is simply a traditional *mantra* which restates the foregoing belief system.  It is one of the "great Vedantic maxims," meaning "I am he," which "affirm[s] one's essential identity with the transcendental Reality, or Self." Feuerstein, Georg, *The Shambhala Guide to Yoga* (1996) at 105.

---

[5]  *See also* Oxford Dictionary of World Religions (entries for *Atman* and *Brahman)*;  Feuerstein, Georg, *The Deeper Dimension of Yoga* (2003) at 387-88 (definitions of *Atman* and *Brahman*); Eliade, Mircea *Yoga, Immortality and Freedom,* (1958, 2009) at 3.

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

As the purportedly "scientific" studies disseminated by AOL recognize, Sudarshan Kriya, like other physical techniques, can produce "altered states of consciousness."[6]  Outside of this "scientific" context, however, AOL makes the further mystical assertion that the altered state of consciousness induced by Sudarshan Kriya is itself a revelation of the Divine/Infinite/Absolute/Cosmic  "reality":[7]

> +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
> ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
> ++++++++[8]
>
> +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
> ++++++++++++++++++++++++++++++++++++++++++++++++

ATSD, Exh. D.[9]

---

[6] Kjellren, et al. at 6 [1st RJN; rjn382] (comparing Sudarshan Kriya to flotation-tank therapy).  Some of Shankar's writings go well beyond these "scientific" studies in making health claims for Sudarshan Kriya.  *See* Shankar, *Wisdom for the New Millennium*, *supra* at 47-48 (unnamed German doctor cured of brain cancer by Sudarshan Kriya and purported scientific explanation for same); 123 (Sudarshan Kriya "floods your system with energy" and washes every cell," which is "improves your genes" and is passed on to your children.)

[7]  *See also, e.g.* ATSD, Exh. D, at I.C.("+++++++ +++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++ +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

[8]  Feuerstein (2003) at 313-14 (the *hamsa* mantra, or alternatively *so'ham,* signifies "the natural motion of breathing," called "*ajapa-japa,"* and is understood to mean "I am he."

[9]  The conceit whereby the Art of Living claims to be both validated by modern science and to itself be a "Yogic Science of Breath" *see* 1st MTS at 3, is itself borrowed from the Transcendental Meditation ("TM") movement of Maharishi Mahesh Yogi, of which Ravi Shankar was once an adherent.  Significantly, Yogi originally called his belief-system "***The Science of Being and the Art of Living***."
    Much of AOL's material appears to be derivative of TM materials, as indeed TM is derivative of general Hindu mystical philosophy.  *See,* Yogi, *The Science of Being and the Art of Living* (1963) at 27 (atman /brahman formula recast as "Science of Being"); 35 (Upanishads show Being as the ultimate reality); 88 ("the art of living requires that the mind be in constant communion with the absolute state of life, so that whatever the mind is thinking, in whatever action it is engaged, it is never separated from the direct influence of the eternal absolute Being."); 102 ("To use the almighty power

Joshua Koltun ATTORNEY

In this respect, as well, AOL's claims are utterly conventional.  *See, e.g.,* James, *supra,* Eliade, 56 ("By means of *pranayama* –that is, by increasingly prolonging inhalation and exhalation (the goal of this practice being to allow as long an interval as possible to pass between the two moments of respiration) – the yogin can, then, penetrate all the modalities of consciousness.")

Traditionally, such consciousness or insight or enlightenment is thought to be accessible only with the assistance of a guru:

> Yoga is an initiatory tradition, which means it revolves around the communication of esoteric or spiritual knowledge from a qualified teacher to an initiated disciple.  The Knowledge that is being transmitted is not merely of an intellectual variety but has the special quality of liberating or illuminating wisdom. …the guru is a teacher who not merely instructs or communicates information, … [but rather] transmits wisdom and, by his very nature reveals … the spiritual Reality.

Feuerstein (2003) at 127-128.[10]

The "whole spiritual path" of Yoga "shares in the following paradox:

> the guru's transmission stems from the Spirit itself, which is not separate from us, since it is our very own ultimate identity.  …  The reason, Yoga tells us, it that while we are inherently free, we do not at present realize this in every moment … the search ends when we fully and in every moment live in and as the Spirit, which is truly indivisible whole, whereas the so called individual is in fact a fragmented being conjured by the illusion of the ego."

Feuerstein (2003) at 130.  Of course, there is always the difficulty of ensuring that you have truly found a truly enlightened Master as opposed to a charlatan.  *Id.* at 123  ("not a few gurus who profess to be, or are portrayed by their followers as being, if not the World teacher, then at least fully enlightened masters.  The question of authenticity naturally rears its head.")**.**

---

of nature it is necessary to put oneself in the hands of that almighty power."); 105 (the key is to surrender … "unless the conscious mind transcends thinking and feeling it cannot arrive at the plane of being" … "surrender to the almighty will of God, surrender to almighty nature, is the most advanced ideology in life.  If one really surrenders, one loses the petty individuality of the time-space-causation-bound mind and gains the unlimited, eternal status of absolute being"); 106 ("natural harmony with Cosmic Being"); 115 (breathing or prana "is the vibratory nature of Being, which creates the manifested life-stream of individuals from the unmanifested ocean of Being"); 118 ("The breathing of an individual is thus in harmony with the nature of cosmic Being, the level of prana."); 272 ("The impersonal aspect of God is formless, supreme: it is eternal and absolute Being."); 276 "the impersonal God is the Being which dwells in the heart of everyone"); 286 ("A state of mind is created which is as if he were deeply hypnotized by the idea: I am That, thou are That and all this is That.")

[10] *See also, e.g.,* Oxford, *supra,* (entry for guru: "the idea of a person as a channel for divine knowledge … "ultimately it is the guru's grace that bestows liberation"), Vivekenanda, *supra,* 135-138 ("The Need of a Guru")

AOL teachers openly  teach their students that Ravi Shankar is such an enlightened master:

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^^^

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^

ATSD, Exh. A at 86 (not designated TS).   The Sudarshan Kriya Notes are thus not conveying

anything different when they say: ATSD, Exh. D, at 1 ("+++++++++++++++++++++++++++

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

+++++++++++++++++++++++++++++") Indeed, Shankar in his publications openly teaches that

without an act of faith and surrender to the Master (i.e. to himself), one cannot liberate the cosmic

power within oneself:

> The Master is there to practically demonstrate to you, and tell you, there is only one.  I am you,
> you are me.  When the Master says this, seeing the Master as he is, not through blocked vision
> or suspicious eyes, that is Shraddha, faith.  The Master doesn't have to get anything from you.
> If you see with the same suspicious eyes, you will wonder what he is up to.  Then you're
> stuck, reeling around  on your own small mind unable to peep through into the Divine, the
> Infinite, the whole existence.  You'll miss the whole joy.  You'll miss the whole essence that
> you're longing for, knowingly and unknowingly.

Shankar, *Wisdom for the New Millennium*, at 211.

Indeed, as AOL teachers warn students, it is essential that knowledge of the Sudarshan Kriya

technique be transmitted under the aegis of AOL, because

^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

ATSD, Exh. A at 34, which is the same as the "secret" imparted at Exh. D, at I.B: ("+++++++++++

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

+++++++++++++++++++++++++++++++++++++++").  This too is a conventional belief.

Smith, Huston: Cleansing the Doors of Perception (2000) at 42 ("India developed the guru system in

which disclosures to disciples are calibrated to the disciples' capacities to comprehend them … if

[higher states of consciousness] are accessed by people who are unprepared for them, one of two

things will happen.  Either … the subject will be damaged, or the significance of the experience will

Joshua Koltun ATTORNEY

1    be missed.")[11]

2          Thus the comments pervading the Sudarshan Kriya Notes are really only (quite conventional)

3    claims that this particular Guru has the capacity to connect one with the Absolute/Infinite/Cosmic,

4    with the corollary that the AOL teachers playing tapes of the voice of the master are themselves

5    assisting in this transmission.[12]   *See, e.g.,* ATSD, Exh. D at 1 (1 ("++++++++++++++++++++++

6    ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

7    ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

8    +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

9    +++++++++++++++++++++++++++").

10         And thus it is a supreme irony that Plaintiff contends that the "teaching methods" supposedly

11   contained within these notes constitute a trade secret, when in fact these notes advise teachers that, to

12   the contrary:

13         

14

15   ATSD, Exh. D., at VII

16

17   **V.      *Plaintiff Cannot Show That the Alleged Secret Has Any Independent Economic Value***

18         The proponent of the trade secret must be able to demonstrate that the alleged trade secret

19   is sufficiently valuable and secret to afford an actual or potential economic advantage over
     others."  (Rest.3d Unfair Competition, § 39.) The advantage "need not be great," but must be
20   "more than trivial." (Rest.3d Unfair Competition, § 39, com. e, p. 430.)  Merely stating that
     information was helpful or useful to another person in carrying out a specific activity, or that
     information of that type may save someone time, does not compel a factfinder to conclude that
21   the particular information at issue was "sufficiently valuable … to afford an … economic
     advantage over others." (Rest.3d Unfair Competition, § 39.)  The fact finder is entitled to
22   expect evidence from which it can form some solid sense of how useful the information is,
     e.g., how much time, money, or labor it would save, or at least that these savings would be

23

24   ---

[11]  Compare Yogi, *The Science of Being and the Art of Living, supra,* at 58 (TM can only be taught by
25   expert masters); 307 (necessity of maintaining the purity of TM teaching).

26   [12] The teaching of the Sudarshan Kriya technique is done in conjunction with a tape of Ravi Shankar
     chanting the "So Ham" mantra. SW Decl., ¶ 5; *see also* 1st RJN at rjn 295 (Blog posts criticizing
27   AOL belief system concerning the mystical power of the sacred tape).   Skywalker did not post this
     tape, and was not involved with the posting of it on another website by persons unknown to him.  SW
28   Decl., ¶ 5.

Joshua Koltun ATTORNEY

"more than trivial." (Rest.3d Unfair Competition, § 39, com. e, p. 430.)

*Yield Dynamics, Inc. v. TEA Systems Corp.,* 154 Cal. App. 4th 547, 564-565 (2007).

Here, Plaintiff only makes opaque and conclusory statements to the effect that Plaintiff's "confidential teaching methods distinguish its courses from those offered by other organizations." Dhall Decl., ¶ 67.  Such statements are devoid of any specifics that might enable a factfinder to find that the allegedly secret "methods" derive any value, let alone nontrivial value, from their secrecy. *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 906 (N.D. Cal. 2010)(conclusory declarations regarding economic value are insufficient); *Wyatt Tech. Corp. v. Malvern Instruments Incorporation*, 2009 U.S. Dist. LEXIS 66097 (C.D. Cal.)(conclusory testimony re confidential "strategies" insufficient to raise triable issue of fact).

Indeed, Plaintiff's evidence affirmatively indicates the precise opposite:

> Much of the success of Art of Living's courses derives from Art of Living's teaching methods. This connection has been confirmed by the feedback from Art of Living's students.

*Id.,* 65.  If the "methods" are those as to which students have provided "feedback," then necessarily these are methods that are observable by students and not secret for the reasons given above. Moreover, much of the material designated as a secret is not really a teaching method at all, but rather a series of marketing statements extolling the virtues of Sudarshan Kriya over other therapies, not to mention the virtues of Ravi Shankar as the font of the putative powers of Sudarshan Kriya.

## VI.   *It is Impossible to Disentangle Plaintiff's Trade Secret Claims from Religious Issues, and Thus the Claims  Are Barred by the Free Exercise Clause*

As Plaintiff's counsel told the Court, the "Sudarshan Kriya Notes" are "the most sacred documents … in the organization."  Transcript at 24.  As explained above in section IV.C, Plaintiff's designated "trade secrets" are permeated with Hindu mystical assertions -- claims about the supernatural effects of of Sudarshan Kriya and the divine authority of Ravi Shankar.  As explained above, there is nothing materially different between the claims made in the Sudarshan Kriya notes from the material openly taught to the "end-students," let alone from the published writings of Ravi Shankar or for that matter many other Hindu gurus and mystics.

Plaintiff may well contend that Ravi Shankar's "secret" teachings place some special secret gloss on these well-known Hindu concepts and on his "public" teachings.  But such a contention

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

1  cannot be adjudicated without "impermissibly entangl[ing]" the court or a jury in matters of religious

2  doctrine.  *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1249-50 & n.5

3  (9th Cir. 1999)(claims regarding transmission of religious authority or lineage cannot be adjudicated

4  on "neutral secular principles.").

5  To be sure, this Court did state in *Religious Technology Center v. Netcom Online Commun.*

6  *Serv.,* that "there is no authority for excluding any type of information because of its nature [from

7  trade secret protection;]" and that trade secret laws have "expanded" so that a religion may use

8  them "to protect a monopoly in its religious practices" *Id.* 923 F. Supp. 1231, 1252 (N.D.Cal. 1995).

9  There was no authority at the time, because the Ninth Circuit had not yet decided *Maktab.*  Moreover,

10  even after *Maktab,* there may be factual situations in which it is possible to adjudicate the trade secret

11  nature of certain practices of religious groups without entangling the court in matters of religious

12  doctrine or authority.  *Religious Technology Center* is distinguishable, because  it involved

13  Scientology's "e-meter" device and related "technologies," the uniqueness of which were was

14  apparently not in dispute.  *Id.* at 1239 & n.4; *Religious Technology Center v. Wollersheim,* 796 F.2d

15  1076, 1077 (9th Cir. Cal. 1986) (describing technologies); *see also United States v. Article or Device,*

16  *etc.*, 333 F. Supp. 357, 363-364 (D.D.C. 1971)(unsuccessful FDA attempt to penalize fraudulent

17  claims concerning "e-meter" technologies).

18  Here, by contrast, the alleged "secrets" themselves are not technologies of any sort, but rather

19  a series of mystical claims and contentions.  Plaintiff may dispute the contention herein by defendants

20  that these are utterly conventional Hindu mystical claims.  But that dispute is not one that a Court or

21  factfinder can permissibly adjudicate.  There is no way to separate out the "methods" or the

22  "techniques" here from the substance of what is being taught, that is to say claims of transmission of

23  divine revelation and authority.  This is all the more true where, as here, the disclosure of the putative

24  "secret" claims of divine authority was for the public purpose of showing that purportedly benign

25  humanitarian organization is in fact a cult surrounding a religious leader purporting to hold the key to

26  enlightenment.

27  It is no answer to this problem that Plaintiff denies that it is a religious organization.  Indeed,

28  that is part of the very issue Skywalker was seeking to address and prove by his disclosures

Joshua Koltun ATTORNEY

1   (irrefutably, one might add.).  The contention that AOL is "nondenominational," even if true, does not

2   constitute a denial that it is a religious organization.  Nor does AOL's pretensions to being a

3   "scientific" spiritual movement alter the analysis.  A set of beliefs need not refer to relate to a divine

4   or supreme being in order to be deemed a religion for constitutional purposes.  *See, e.g., United States*

5   *v. Seeger*, 380 U.S. 163, 166-167 (1965); *Washington Ethical Soc. v. District of Columbia*, 249 F.2d

6   127, 129 (D.C. Cir. 1957).  Indeed, even persons that deny that they are religious may be deemed to

7   be religious for purposes of Free Exercise Clause analysis.  *Welsh v. United States*, 398 U.S. 333, 339

8   (1970).

9       In any event AOL quite explicitly does make claims concerning Divinity, albeit sometimes

10  using alternative terminology such as Infinite and Absolute and Being.

11      "Concepts concerning God or a supreme being of some sort are manifestly religious . . . .
    These concepts do not shed that religiosity merely because they are presented as a philosophy

12  or as a science." *Malnak v. Yogi*, 440 F.Supp. 1284, 1322 (D.N.J 1977), *aff'd per curiam* , 592
    F.2d 197 (1979)

13  *Edwards v. Aguillard*, 482 U.S. 578, 599 (1987)

14      The question whether AOL is a religion is remarkably similar to that which the Court

15  considered in an extensive and thoughtful analysis in the *Malnak* decision cited with approval by the

16  Supreme Court.  Despite the claims by its proponents that Transcendental Meditation ("TM") is not a

17  religion, the Court ruled that it *is* a religion and consequently banned TM from being taught in the

18  public schools.  *Id.* 440 F. Supp.  at 1327.

19      Ravi Shankar began his career as an adherent of TM and the belief-system of Art of Living

20  bears many similarities to that movement.  *See* footnote 9, *supra*.  Significantly, the "puja" ritual

21  discussed in *Malnak* – an invocation expressing reverence for "'the Lord,' other named entities or

22  individuals, "the tradition of our Master," and Guru Dev, who is portrayed as a personification of a

23  divine being or essence," is *identical* to the puja repeatedly referenced in the Sudarshan Kriya notes.

24  *Malnak*, 440 F. Supp. 1284, 1305-07; ATSD , Exh. D at II.3., II.5 , SW Decl., ¶ 23.  The only

25  difference is that subtle alterations have been made to the words to suggest that *"Guru Dev"* refers to

1  Ravi Shankar rather than to Yogi's predecessor in the "lineage" of  Masters.[13]

2          Given what Plaintiff is claiming as its Trade Secret, neither this Court nor a jury can evaluate

3  the claim without impermissibly entangling themselves in religious matters.  Thus the claim must fail

4  as a matter of law.

5  **VII.    Neither AOL Worldwide Nor Plaintiff Took Reasonable Measures to protect these purported "Trade Secrets"**

6          Despite the self-evidently public nature of the foregoing material, Plaintiff contends in its

7  ATSD that this material constitutes "instructions to teachers … which are not to be conveyed to

8  students of the course," or "information that is not to be conveyed by the student-teacher to the end-

9  student, [but r]ather … is for the student-teacher's own education, to prepare him or her to teach

10  Sudarshan Kriya." *See, e.g.,* ATSD at 1.

11          But even if it were true that AOL did not intend for any of the designated information to be

12  conveyed to end-students,  Plaintiff cannot show that it took any reasonable measures to enable

13  teachers to understand precisely what content was supposedly a "secret" and what content was

14  supposed to be taught to students, let alone that the other 139 national chapters of AOL did so.

15      **A.    To Be A Trade Secret, Plaintiff Must Show That Reasonable Efforts Have Always and Everywhere Been Made to Keep the Information Secret**

16

17          Courts will look at a number of factors to determine whether information is a trade secret, one

18  of the most important of which is the manner in which the trade secret owner acts to ensure that the

19  information is kept secret.  *MBL (USA) Corp. v. Diekman*, 112 Ill. App. 3d 229, 238 (1983).  It is

20  insufficient to simply contend in a conclusory fashion that there is an "understanding" that

21  information was to be kept confidential.  *KEMA, Inc. v. Koperwhats*, 2010 U.S. Dist. LEXIS 90790

22  (N.D. Cal. ).   The fact that a document is stored on a password protected computer, and was

23

24  _____

[13]   AOLFUS teaches in the public schools.  Dhall Decl., ¶ 17.  This is obviously problematic.
25  Comically, AOLFUS tries to avoid this difficulty by instructing its teachers as follows:

26      ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
        ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
27      ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
        ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

Dhall Decl, Exh. C, at 28 (not designated TS).
28

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

1    distributed to persons who signed nondisclosure agreements,  does not show that the party took

2    reasonable measures to protect the trade secret, if the document was also distributed to third parties

3    who did not sign nondisclosure agreements.  *Tax Track Sys. Corp. v. New Investor World, Inc*., 478

4    F.3d 783, 787-788 (7th Cir. 2007).  Relying on vague oral promises is not a reasonable effort to

5    maintain the secrecy of alleged trade secrets, especially if other persons are required to sign a written

6    nondisclosure agreement.  *Bayline Partners L.P. v. Weyerhaeuser Co.*, 1994 U.S. Dist. LEXIS 19638,

7    14-15 (N.D. Cal.).

8        The proponent of a putative trade secret cannot meet its burden of showing that reasonable

9    measures were taken by testimony that "most" many people who received that alleged trade secret

10   information signed nondisclosure agreements; rather it must show by admissible evidence show that

11   *all* persons who received the information did so.  *Motor City Bagels, L.L.C. v. American Bagel Co.*, 50

12   F. Supp. 2d 460, 480 (D. Md. 1999).  By the same token, evidence that reasonable measures are ***now***

13   being taken to ensure the secrecy of information are insufficient without evidence that adequate

14   measures have been taken from the outset, when the information nwas first developed.  *Hoffmann-La*

15   *Roche Inc. v. Yoder*, 950 F. Supp. 1348, 1360-1361 (S.D. Ohio 1997).

**B.**     **Plaintiff Cannot Show that AOL Chapters Worldwide Imposed Confidentiality**
           **Obligations**

**1.**     **AOL chapters worldwide do not  necessarily impose NDAs on everyone who**
           **receives the Manuals or SK Notes**

19        It must be remembered that AOL is a worldwide organization, with numerous independent

20   chapters in each country.  As Plaintiff's counsel conceded at the hearing, the relationship between

21   AOLFUS and the international organization and/or its other chapters is a "loose" one, not parent-

22   subsidiary.   Transcript at 5.  There is no central mechanism that controlled the confidentiality policies

23   of the 140 different national chapters.  SW Decl., ¶ 14. As noted above, the documents that have been

24   designated as containing these trade secrets all originated outside the United States.

25        Neither Skywalker nor Klim taught in or were affiliated with AOLFUS, but rather, each was

26   affiliated with a different AOL chapter abroad.  S.W. Decl., ¶ 14; 2nd Klim Decl., ¶ 1.  In practice the

27   AOL chapters impose confidentiality obligations only haphazardly, if at all.  *Id.*  Some student-

28   teachers get access to the manuals and SK Notes while training to be teachers, but then do not

Joshua Koltun ATTORNEY

graduate, are not given teaching positions, and never sign the teacher contracts that contain confidentiality provisions.  SW Decl., ¶ 14.  Klim was a teacher for many years but was never asked to sign a nondisclosure or confidentiality agreement of any kind.  Klim Decl., ¶ 3.  The contract that the International (Swiss) AOL entity tried to make teachers sign during a refresher course in 2010 -- *after* Skywalker posted the alleged trade secrets -- obviously has no legal impact on persons who obtained the information previously, and who never signed those documents.

### C.      *Plaintiff  Cannot Show that AOL Chapters Gave Teachers a Basis to Know What Was Supposed to be Kept Secret and What Was to be Taught*

The failure to mark the information that was allegedly confidential as such generally precludes a finding that this information is a trade secret.  *Gemisys Corp. v. Phoenix Am., Inc*., 186 F.R.D. 551, 558 (N.D. Cal. 1999).  Where employees are not informed as to what in particular is considered confidential, the employer has not taken reasonable measures to protect the alleged trade secret.  *MBL (USA) Corp.,* 112 Ill. App. 3d at  238.  The use of general boilerplate notice is not sufficient to create a trade secret if it is not highlighted or isolated in such a way as to put one on notice as to what is claimed as a trade secret.  *Motor City Bagels,* 50 F. Supp. 2d at  480.

Even if Plaintiff could show that all persons given access to the "Manuals and Principles" – ie. ATSD, Exhs. A, B & D – had signed effective nondisclosure agreements, it simply cannot show any basis on which a teacher who signed such an NDA would have understood what content was supposed to be taught to the students and what information, if any, was a secret that was to be withheld or (somehow) hidden from students.  Plaintiff's counsel assured the Court that it was possible to "glean" what was secret "simply by reviewing the Manuals and the Principles."   But in fact it is not possible.  There is nothing in these documents (other than the highlighting added by counsel for purposes of litigation) that would indicate how one is to distinguish what is to be conveyed to students and what is to be withheld from them.  Indeed, as discussed above, many of the points Plaintiffs have designated are quite obviously ones that would be readily observable by students, and others are quite evidently

Joshua Koltun ATTORNEY

1  intended to be conveyed to students.[14]

2        To take a simple example, Skywalker understood the "General Points on Kriya" in the SK

3  Notes were canned answers that teachers understood they were supposed to give in response to

4  student questions.  SW Decl., ¶ 16, 20-21.  He frequently conveyed these canned answers to students

5  and often observed other teachers doing the same.  *Id.*

6        There is nothing in the content or instructions surrounding these points that suggest that this

7  was an unreasonable interpretation, indeed it appears to be the only reasonable interpretation.[15]   The

8  very language of the SK Notes seems to directly indicate that this is the case:

9  "++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

10  ++++++++++++++++++++++++."  ATSD Exh. D at 1.  It must be kept in kept in mind that the SK

11  Notes are read out to the teacher-trainees, who are expected to write them down verbatim.  FAC, ¶ 41.

12  Thus when the trainees are told "++++++++++++++++++++++++++++++++++++++++++++++"

13  ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++," it

14  would certainly be natural to assume that this means that the information being read out is a set of

15  scripts or canned speeches that are to be repeated."  Moreover, since much of the allegedly "secret"

16  content is simply extolling the efficacy of Sudarshan Kriya as opposed to other practices, a teacher

17  would naturally assume that these talking points were part of the general marketing of AOL that

18  pervades its courses.  ATSD, Exh. D at I.B. ("+++++++++++++++++++++++++++++++++++++

19  ++++++++++++++++++++++++") *with* id., Exh A at 61 ("^^^^^^^^^^^^^^^^^^^^^^^^^^^^

20

21  ———————————————

[14]  Plaintiff's amended designations are insufficiently specific under CCP § 2019.210.  It is impossible
22  to determine what Plaintiff is actually asserting is secret.  Matters that are designated as "secret" in
one place are not secret in another.  *See, e.g.* ATSD, Exh. A at 51 ("Home Kriya" not designated as
23  Trade Secret") with *id* at VIII.C. (individual Kriya at home designated as Trade Secret, although
designated material is obviously intended to be taught ("+++++++++++++++++++++"..)  Defendants
24  do not waive their procedural objections.  However, this incoherence goes beyond simply failure to
comply with a procedural requirement in this litigation, but rather also shows a fatal flaw as a matter
25  of substantive trade secret law.  Since the designations (in this litigation) are themselves unclear as to
what is assertedly secret and what is not, Plaintiff cannot show that it gave clear instructions to the
26  persons purportedly charged with maintaining secrecy.

[15]  Plaintiff is not contending that the Sudarshan Kriya technique itself is a trade secret, and indeed
27  has posted numerous purportedly "scientific" studies of the technique." ATSD Exh. D at III-V (not
designating teaching of SK as a secret); 1st RJN, Exh I.

28

1   ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^"); *id* at 94 ("++++++++++++

2   ++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

3   +++"].

4          Moreover, comparing these "points" to other portions of the manuals that Plaintiff now

5   concedes were ***not*** secret, it is difficult to discern what the difference in the content of what Plaintiff

6   concedes was to be conveyed to students and what was supposedly to be maintained as a "secret."

7          Take the first point as an example:  "++++++++++++++":

8          +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
           +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
9          +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
           +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
10         ++++++++++++++++

11         +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
           +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
12         +++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
           +++++++++++++

13  ATSD, Exh. D at 1.  In ATSD, Exh. A, by comparison, there is a lesson to be given to students (not

14  designated as a trade secret), that is very similar.

15         ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
           ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^
16         ^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^

17  *Id.* at 32.  And there are many more similar passages within the ATSD that have not been designated

18  as trade secrets and are quite evidently intended to be conveyed to students.  *See e.g. id.* at (xi); *id,*

19  Exh. B at 9, 11, 15.  Indeed, the AOL website contains the following explanation: "Sudarshan Kriya

20  incorporates specific natural rhythms of the breath which harmonize the body, mind and emotions.

21  This unique breathing technique eliminates stress, fatigue and negative emotions such as anger,

22  frustration and depression, leaving you calm yet energized, focused yet relaxed."  3rd RJN, ¶ 2, Exh.

23  B. [16]

24

25

26  ───────────────────────────
    [16] By the same token, the "point" about "+++++++++++++++++++++++++++++++++++++"  ATSD,
    Exh. D at I.C. is more or less replicated in the outline of what is to be taught to students in ATSD,
27  Exh. A., at (xii) "Excerpts from Guruji's talk" and "^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^^."  The
    Point H "+++++++++++++++++++++" simply repeats what is stated on the AOL website, that

28

Joshua Koltun ATTORNEY

Joshua Koltun ATTORNEY

1  There is simply no evidence suggesting that Plaintiff –let alone AOL chapters worldwide, took

2  adequate measures to ensure that teachers would keep any of the information designated as Trade

3  Secrets a secret; indeed most reasonable teachers would have understood their instructions to be

4  precise opposite, that they were to regard these putative "secrets" to be scripts to be recited faithfully

5  and from which they should never deviate. [17]

6  **VIII.  Plaintiff Cannot Show That It Has Suffered Damages As a Result of the Alleged Misappropriation, and thus Cannot Prevail On Its Trade Secret Claim**

7  Plaintiff in the FAC has dropped its request for injunctive relief.  Thus Plaintiff can only

8  "prevail" in this action if it can show that it is entitled to an award of money damages.  Since the

9  evidence of the misappropriation here is that Skywalker published the alleged trade secrets for free on

10  the internet, there is no issue of unjust enrichment.  Plaintiff can only recover if it can show that it

11  suffered an "actual loss."  Civ. Code § 3426.3.[18]

12  Plaintiff has insisted that there is a correlation between the commencement of Klim and

13  Skywalker's blogs and a drop in revenue.  But Plaintiff's own evidence concerning revenues

14  demonstrates that there was *no* such correlation – revenue has been dropping steadily since well

15  before *either* Defendant began their respective Blogs, despite the fact that enrollment has been more

16  or less *flat*.  Dhall Decl., Exh. F.  In any event, evidence of "correlation [is] not evidence of

17

18  ───────────────

19  "Sudarshan Kriya came into being … when Sri Sri Ravi Shankar …went into a ten-day period of silence," whereupon  the Sudarshan Kriya came like an inspiration."  3rd RJN, ¶, Exh C.

20  [17]  This Court recognized that the students themselves did not sign nondisclosure agreements.  Order
21  at 18:8.  That distinguishes the case from *Religious Technology Center*, in which the "parishioners"
themselves subject to nondisclosure agreements.  *Id.*, 923 F. Supp. at 1252. 1254 n.25.  The Court
22  reasoned that AOLFUS's efforts at maintaining secrecy were reasonable, however, because the
students did not receive the actual manuals.  Order at 18:9.  Defendants respectfully urge that the
23  relevant issue is not whether the physical copies of the manuals were kept away from students, but
rather whether the information claimed to be a trade secret was conveyed to or observed by students.

24  [18] The alternative statutory remedy of a "reasonable royalty" is only available in cases in which the
Defendant commercially exploited the trade secret.  *University Computing Co. v. Lykes-Youngstown*
25  *Corp.*, 504 F.2d 518, 536-537, 545.  Moreover, where, as here, the disclosure relate to matters of
public concern, unless the Plaintiff can show "actual malice,"  the constitution prevents a plaintiff
26  from recovering presumed, as opposed to actual, damages.  *Gertz v. Robert Welch., Inc.*, 418 U.S.
342, 349-50 (1974) (private figure must show actual malice to recover presumed damages); *Dun &*
27  *Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 763 (1985)(*Gertz* rule on presumed damages is good
law at least as to matters of public concern).

28

Joshua Koltun ATTORNEY

1   causation." *Brown v. Entm't Merchs. Ass'n.,* 131 S.Ct. 2729, 2739 (2011).  Plaintiff has not and

2   cannot show by admissible evidence that the brief posting of the alleged trade secrets has caused any

3   actual damage.

4          Moreover, this Court's ruling dismissing the defamation claims effectively negates Plaintiff's

5   (inadmissibly speculative) proposed inference that the posting of the alleged trade secrets caused any

6   drop in the number of students enrolling in its courses.  As counsel passionately argued, "we are here

7   because the Art of Living has been harmed … a relaxed atmosphere … is key to teaching these classes

8   and for the Art of Living to make money … the allegations regarding rape, sexual fondling, and

9   sexual harassment have been devastating."[19]   But this Court has ruled that the "devastating"

10  statements at issue are constitutionally protected.  Order at 10-12.  Thus Plaintiff cannot now contend

11  that it has shown that any drop in enrollment was caused by Skywalker having posted the alleged

12  trade secrets.  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 732-733 (9th Cir.

13  Cal. 1999) (overturning jury finding of damages in defamation/Lanham Act case where liability was

14  based on three statements, two of which were held, on appeal, to be constitutionally protected.); *cf.*

15  *Religious Technology Center.,* 923 F. Supp. at 1248 (("[t]o the extent that Erlich's postings suppress

16  demand for the original works by "persuading [potential buyers] that [L. Ron Hubbard, the founder of

17  Scientology] was a charlatan' or that the Church is a fraud, as clearly Erlich intends, such a devastating

18  critique' is not within the scope of copyright protection.")

19                                   ***Conclusion***

20         For the reasons stated, Defendants respectfully request that the motion to strike be granted.

21  Dated: September 12 ,  2011                    _____\s_____

22                                               Joshua Koltun
                                                 Attorney for Defendants
23                                               Doe/Klim and Doe/Skywalker

24

25

26  _____

27  [19] Hearing Transcript at 44-45; Dhall Decl.¶ 53 ("Many of the people inquiring about the Blogs have
     informed Art of Living that they would not register for Art of Living's courses as a result of the false
28  statements on the Blogs.")