United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ART OF LIVING FOUNDATION, a California corporation,      ) ) | Case No.: 5:10-cv-05022-LHK |
|                   Plaintiff,    ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART |
|     v.             ) ) | AND DENYING IN PART |
| DOES 1-10, inclusive,      ) ) | DEFENDANTS' SECOND SPECIAL MOTION TO STRIKE |
|               Defendants.    ) ) | |

Plaintiff Art of Living Foundation ("Plaintiff" or "AOLF-US"), a California corporation and the United States branch of the international Art of Living Foundation based in Bangalore, India, brings this action for copyright infringement under 17 U.S.C. § 501 *et seq.*, and misappropriation of trade secrets under California Civil Code § 3426 *et seq.*, against Does 1 through 10, former adherents-turned critics of the Art of Living Foundation.  Before the Court are two motions brought by two Doe Defendants, known pseudonymously as "Klim" and "Skywalker" ("Defendants"), appearing specially via counsel: (1) motion for summary judgment on the copyright infringement claim, *see* ECF No. 111 ("MSJ"); and (2) second special motion to strike the trade secret cause of action pursuant to California Code of Civil Procedure § 425.16, i.e.,

1

California's "anti-SLAPP statute,"[1] *see* ECF No. 135 ("MTS").  The Court held a hearing on these motions on January 12, 2012.  Having considered the parties' submissions and argument and the relevant law, and for the reasons explained below, the Court GRANTS Defendants' motion for summary judgment on the copyright infringement claim, GRANTS Defendants' second special motion to strike the trade secrets misappropriation claim as to Defendant Klim, and DENIES Defendants' second special motion to strike the trade secrets misappropriation claim as to Defendant Skywalker.

I.  **BACKGROUND**[2]

A.  **Facts**

1.  **Art of Living Foundation**

The Art of Living Foundation ("AOLF"), founded in 1981 by "His Holiness Sri Sri Ravi Shankar" ("Shankar"), is an international nonprofit educational and humanitarian organization based in Bangalore, India, with chapters in more than 140 countries.[3]  First Am. Compl., ECF No. 85 ("FAC"), ¶¶ 1, 17, 22, 24.  Plaintiff here, also called Art of Living Foundation ("Plaintiff" or "AOLF-US"), is the United States chapter of AOLF and is a California non-profit corporation based in Goleta, California.  FAC ¶¶ 2, 12; Decl. of Ashwani Dhall in Opp'n to Defs.' Mot. to Dismiss, ECF No. 40 ("Dhall Decl."), ¶¶ 9, 11, 13.

All AOLF chapters, including Plaintiff AOLF-US, are dedicated to teaching the wellness and spiritual lessons of Shankar.  FAC ¶ 31; Dhall Decl. ¶¶ 9, 13.  Plaintiff offers courses on breathing, meditation, and yoga, focusing on "Sudarshan Kriya," a rhythmic breathing technique.  Dhall Decl. ¶¶ 14-15.  One such course is called the "Art of Living Course," which teaches the basics of Sudarshan Kriya.  Dhall Decl. ¶ 18.  The fee for the Art of Living Course is typically

---

[1] California's anti-SLAPP statute provides a vehicle for dismissal of a "Strategic Lawsuit Against Public Participation," that is, a lawsuit brought to chill protected expression.

[2] All parties have filed evidentiary objections to the declarations submitted in support of or in opposition to Defendants' pending motions.  To the extent the Court has considered evidence contained in the declarations, it has ruled on the objections to that evidence and noted its rulings in this Order.  To the extent evidence contained in the declarations is not mentioned in this Order, it has not been considered by the Court, and no ruling on the objections is required.

[3] For clarity, the Court refers to the founding branch of the Art of Living Foundation, still based in Bangalore, India, as "AOLF-India."

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

$250. *Id.* Plaintiff submits that the money raised through course subscriptions is used to maintain its facilities, to train new teachers for its courses, and to provide humanitarian aid and community service. *Id.* ¶ 19.

Plaintiff requires the specialized training of its teachers and has developed various written materials for the proper instruction of its courses. *Id.* ¶¶ 21, 23-25. Plaintiff's teaching processes are contained in several written manuals, including: (1) the Training Guide Phase One Manual; (2) the Phase One Supplement Manual; and (3) the Yes! Teacher Notes (collectively, the "Manuals"). *Id.* ¶¶ 24-28 & Exs. A-C.[4] The current president of AOLF-US, Robert Fischman, along with other senior faculty at AOLF-US, co-authored the Manuals, which were created in coordination with Shankar for the benefit of AOLF-US. Decl. of Michael Fischman in Opp'n to Defs.' 2d Mot. to Strike, ECF No. 117 ("Fischman MTS Decl.") ¶ 4. Plaintiff has intentionally not memorialized the teaching processes for Sudarshan Kriya in a formal manual, in an effort to prevent the unlawful distribution of its Sudarshan Kriya teaching principles. Dhall Decl. ¶ 29; Fischman MTS Decl. ¶ 5. However, Mr. Fischman and other AOLF-US senior faculty have drafted a set of Sudarshan Kriya teaching notes ("Teaching Notes"), which are read to teachers-in-training. Fischman MTS Decl. ¶ 5. As with the Manuals, the Teaching Notes were drafted in coordination with Shankar and for the benefit of AOLF-US. *Id.* Teachers-in-training may take down written notes during oral presentations on how to teach Sudarshan Kriya, but all AOLF-US teachers are required to keep these notes strictly confidential. Dhall Decl. ¶¶ 30-33 & Ex. D. Plaintiff stores the Manuals and Teaching Notes in electronic form on password protected computers and in password protected files, and Plaintiff limits the disclosure of these computers and files to only limited persons who must first agree to maintain the confidentiality of the information. *See* Dhall Decl. ¶¶ 34-36;

---

[4] These are the three documents described in a declaration by Ashwani Dhall, the current Director and Chairman of the Board of AOLF-US. *See* Dhall Decl. ¶¶ 25, 55. However, the current President of AOLF-US, Michael Fischman, refers to Plaintiff's teaching manuals as "(a) the Art of Living Part I Course Manual[;] (b) the Art of Living Course TTC One Manual[;] and (c) the Yes! Teacher Notes." Decl. of Michael Fischman in Opp'n to Defs.' 2d MTS, ECF No. 117 ("Fischman MTS Decl."), ¶ 4. Both Dhall and Fischman appear to be referring to the same three documents. Because Plaintiff's Opposition to the MTS adopts Dhall's terminology, the Court does as well. *See, e.g.*, Opp'n to MTS at 3.

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

United States District Court
For the Northern District of California

Fischman MTS Decl. ¶¶ 6-7.  In addition, Plaintiff requires students to sign a nondisclosure agreement as a condition of participating in any AOLF-US course.  Fischman MTS Decl. ¶ 7 & Ex. A (AOLF course registration form).  Plaintiff has used these nondisclosure agreements since the Manuals and Teaching Notes were first published.  *Id.* ¶ 7.  Plaintiff also requires authorized third parties who use the Manuals or Teaching Notes to maintain the same confidentiality procedures used by Plaintiff.  *Id.* ¶ 8.

   In addition to Plaintiff's fee-based courses, Plaintiff also offers an introductory course at no charge called the "Breath Water Sound Course," which explains some of Shankar's basic teachings, including basic breath exercises, sound relaxation methods, meditation techniques, tools for healthy living, and processes to work together as a community.  Dhall Decl. ¶¶ 39-41; Decl. of Jaina Desai in Opp'n to Defs.' MSJ, ECF No. 124 ("Desai Decl."), ¶ 2; *see also* Request for Judicial Notice, ECF No. 29 ("RJN"), ¶ 11 & Ex. K.  Sometime prior to 2002, Shankar developed the idea of memorializing the Breath Water Sound Course in a written manual.  Desai Decl. ¶ 3; Decl. of Robert Fischman in Opp'n to Defs.' MSJ, ECF No. 123 ("Fischman MSJ Decl."), ¶ 5.  Together with employees and volunteers of AOLF-India, AOLF-US, and other AOLF chapters around the world, Shankar wrote the *Breath Water Sound Manual* ("BWSM"), which was completed sometime in 2003, and is used to train teachers of the Breath Water Sound Course.  *See* Desai Decl. ¶ 4; Fischman MSJ Decl. ¶ 6; Dhall Decl. ¶ 42 & Ex. E (BWSM).  Many students who take the Breath Water Sound course subsequently enroll in one of Art of Living's fee-based courses.  Dhall Decl. ¶ 41; Decl. of Natalie Kaharick in Opp'n to Defs.' Mot. to Dismiss, ECF No. 43 ("Kaharick Decl."), ¶¶ 9-10; Fischman MSJ Decl. ¶ 4.

### 2.  Defendants' Blog Postings

   Defendants are Does, but have specially appeared through counsel under their blogger names of "Skywalker" and "Klim."  Defendants are former adherents of the Art of Living Foundation, but are now critical of both the Foundation and Shankar.  *See* 2d Decl. of Doe/Skywalker, ECF No. 101 ("2d Skywalker Decl."), ¶¶ 14, 22-23; 2d Decl. of Doe/Klim, ECF No. 102 ("2d Klim Decl."), ¶ 2; Decl. of Jeffrey M. Rosenfeld in Opp'n to Defs.' MSJ, ECF

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

122 ("Rosenfeld MSJ Decl."), Ex. B [Skywalker's Resp. to 1st Set of Interrogatories] at 5.

Skywalker, who is not a U.S. citizen, joined AOL in a country other than the United States, and is a

former AOLF teacher.  2d Skywalker Decl. ¶¶ 1, 14.  Klim, also not a U.S. citizen, is also a former

AOLF teacher.  2d Klim Decl. ¶¶ 1-2.

Sometime around May 2009, Klim created the blog "Leaving the Art of Living" ("LAOL

Blog"), hosted on Google's Blogger platform, located at <www.artoflivingfree.blogspot.com>.

Decl. of Doe/Klim, ECF No. 16 ("Klim Decl."), ¶ 2.  Sometime around May 2010, Skywalker

created the blog "Beyond the Art of Living" ("BAOL Blog") on the Wordpress platform hosted by

Automattic, Inc., located at <aolfree.wordpress.com>.  Dhall Decl. ¶ 44; 2d Skywalker Decl. ¶ 2.

The BAOL Blog is not a commercial website and does not carry advertisements or otherwise

generate revenue for Skywalker or others who post on the site. 2d Skywalker Decl. ¶ 2.  The

Wordpress platform allows only Skywalker himself to edit or post articles directly, but allows

others to leave comments on the BAOL Blog.  *Id.* ¶¶ 3-4.  Some of the articles posted by

Skywalker are his own writing, but others are simply posted by Skywalker on behalf of third-party

authors.  *Id.* ¶ 3.

The two blogs are critical of AOLF and its founder, Shankar, and were created to provide

former AOLF members and currently doubting ones "a space for healing."  Decl. of Jeffrey M.

Rosenfeld in Opp'n to 1st Mot. to Strike, ECF No. 39 ("Rosenfeld 1st MTS Decl."), Exs. B

("About" page of LAOL Blog) & C ("About" page of BAOL Blog").  The BAOL Blog explains

that "[t]he main purpose of both [Blogs] is to provide a critical perspective of both the Art of

Living organization and of Sri Sri Ravi Shankar."  Rosenfeld 1st MTS Decl. Ex. C ("Purpose of

These Blogs" page of BAOL Blog).  Specifically, the Blogs contain the following accusations,

among others: (1) AOLF causes physical harm to participants, resulting from the harmful side

effects of certain meditation methods; (2) AOLF inflicts spiritual abuse on its members by "using

spirituality to manipulate people or to scare them, for instance by making them believe that if they

perform certain services for the organization that their karma will be reduced;" (3) AOLF markets

the Sudarshan Kriya technique as originating with and being unique to AOLF, but it may be just a

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  form of hyperventilation or an ancient yogic breathing technique already commonly known to

2  many yoga practitioners; (4) "the majority of techniques in [AOLF] have been plagiarized from

3  other organizations and sold to course participants as originating from [AOLF];" (5) AOLF and

4  Shankar embezzle the money that they claim goes to charitable projects around the world; (6)

5  AOLF "commercializ[es] a great many sacred Hindu practices and profit[s] heavily from this

6  venture;" (7) AOLF fabricates the statistics that it publishes about its course membership; and (8)

7  AOLF "is actually a cult masquerading as a humanitarian organization," involving the deification

8  of Shankar.  Rosenfeld 1st MTS Decl. Ex. C.

9      Beginning in June 2010, Skywalker began posting various AOLF materials on the BAOL

10  Blog.  First, on June 1, 2010, Skywalker posted an entry titled "Sudarshan Kriya Download and

11  Notes," which included the text of the Sudarshan Kriya Notes, as well as a hyperlink to a website

12  that, at the time, contained a download of the Sudarshan Kriya tape, i.e., the voice of Shankar

13  chanting the "So Ham" mantra.  Decl. of Doe/Skywalker, ECF No. 15 ("Skywalker Decl.") ¶ 9 &

14  Ex. B; 2d Skywalker Decl. ¶ 5.  Next, on July 20, 2010, Skywalker posted the text of two more

15  documents: "Training Guide Phase 1," and "Yes+ Teacher Notes."  Skywalker Decl. ¶ 9 & Exs. C

16  & D; 2d Skywalker Decl. ¶ 6.  According to Skywalker, the Yes+ Teacher Notes that he posted is

17  not a manual prepared by AOLF but instead a collection of notes written by someone named

18  "Diego" documenting an AOLF teacher's advice on how best to teach the Yes+ Course.  2d

19  Skywalker Decl. ¶ 6.  Finally, on July 21, 2010, Skywalker posted the text of the BWSM.

20  Skywalker Decl. ¶ 9 & Ex. E; 2d Skywalker Decl. ¶ 6.  According to data generated by Wordpress,

21  the webpage that contained the BWSM was viewed 147 times in July 2010, and 351 times in

22  August 2010, the only two months during which the BWSM was posted on the BAOL Blog.

23  Skywalker Decl. ¶ 12; 3d Decl. of Doe/Skywalker, ECF No. 137 ("3d Skywalker Decl."), ¶ 5 &

24  Ex. D.

25      On August 25, 2010, the posting functionality of the BAOL Blog was disabled, and

26  Skywalker received a notice from Wordpress that it had received a takedown notice pursuant to the

27  Digital Millennium Copyright Act ("DMCA takedown notice").  Skywalker Decl. ¶ 10 & Ex. F.

28

6

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

The DMCA takedown notice was on Art of Living letterhead but was sent from an entity called Vyakti Vikas Kendra India ("VVK India"), "a registered charitable trust founded by His Holiness Sri Sri Ravishankar" with a main office in Karnataka, India. *See* Skywalker Decl. ¶ 10 & Ex. F. The takedown notice refers to an instruction manual known as the "Sudarshan Kriya Notes," in which VVK India claims exclusive copyright. *Id.* After receiving this takedown notice, due to lack of resources to consult counsel or challenge the assertion of copyright, Skywalker deleted the text of the Training Guide Phase 1, Yes+ Teacher Notes, and the BWSM from his blog on August 27, 2010. *See* Skywalker Decl. ¶ 10; 3d Skywalker Decl. ¶ 2 & Ex. A. Skywalker has not reposted the BWSM or any other AOLF materials. Skywalker Decl. ¶ 10; 3d Skywalker Decl. ¶ 2.

Plaintiff did not discover that the BWSM had been posted on Skywalker's BAOL Blog until late August 2010. Dhall Decl. ¶ 62. By then, Skywalker had already removed the BWSM from his Blog, before Plaintiff was able to serve a takedown notice. *See id.*

### 3.  Plaintiff's Allegations

Plaintiff alleges that Defendants committed copyright infringement by publishing the BWSM on the BAOL Blog. Plaintiff also alleges that its teaching Manuals and Teaching Notes for "Sudarshan Kriya" contain trade secrets, and that Defendants misappropriated these trade secrets by publishing the confidential Manuals and Teaching Notes on their blogs. Plaintiff alleges that their course enrollment and revenue have dropped since the Manuals, Teaching Notes, and BWSM were disclosed on Defendants' Blogs. Dhall Decl. ¶¶ 68-69 & Ex. F.

### B.  Procedural History

Plaintiff filed its original complaint in federal court on November 5, 2010, alleging defamation, misappropriation of trade secrets, copyright infringement, and trade libel stemming from the postings on Defendants' blogs. *See* ECF No. 1 ("Compl."). Because the postings were made pseudonymously, Plaintiff also sought leave to take expedited discovery for the purpose of identifying and serving process on Defendants. *See* ECF No. 5. After the Magistrate Judge granted Plaintiff's request, *see* ECF No. 10, Plaintiff served subpoenas on Google, Inc. ("Google")

7

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1   and Automattic, Inc. ("Automattic"), the owners of the companies that host Defendants' blogs,

2   seeking identifying information about Defendants.  *See* ECF No. 99 at 2.

3        On January 31, 2011 – before Google or Automattic had responded to the subpoenas –

4   Defendants Skywalker and Klim, specially appearing through counsel, filed three motions: (1)

5   motion to dismiss for lack of personal jurisdiction, and for failure to state a claim with respect to

6   Plaintiff's defamation and trade libel claims, *see* ECF No. 11; (2) special motion to strike

7   Plaintiff's defamation, trade libel, and trade secret claims pursuant to Cal. Civ. Proc. Code §

8   425.16, i.e., California's "anti-SLAPP statute," *see* ECF No. 12; and (3) motion to quash or modify

9   the order allowing discovery, *see* ECF No. 13.  Skywalker admitted that he (but not Klim) had

10   published the BWSM and alleged trade secret materials on his blog as part of a larger campaign to

11   "debunk the notion that Ravi Shankar is an enlightened being in possession of mystical 'secret

12   knowledge.'"  ECF No. 12 at 2; *see* Skywalker Decl. ¶ 9.  Skywalker also indicated that the

13   materials had been removed shortly after being posted in response to a DMCA takedown notice.

14   *See* ECF No. 15 ¶¶ 9-10.

15        The Court issued a ruling on the motion to dismiss and motion to strike on June 15, 2011.

16   The Court denied Defendants' FRCP 12(b)(2) motion to dismiss for lack of personal jurisdiction,

17   but determined that the alleged defamatory and libelous statements on Defendants' blogs were

18   "constitutionally protected opinions," and on that basis granted Defendants' motion to dismiss the

19   defamation and trade libel claims.  Order Granting Motion to Dismiss and Denying Motion to

20   Strike, June 15, 2011, ECF No. 83 ("Merits Order") at 6, 9-10.  Having granted the motion to

21   dismiss with leave to amend, the Court did not reach the merits of Defendants' motion to strike the

22   defamation and trade libel claims.  *See id.* at 13, 14.  Although the Court granted Plaintiff leave to

23   amend its defamation and trade libel claims, Plaintiff has not done so.  *See generally* FAC.  The

24   Court denied without prejudice Defendants' motion to strike the trade secrets claim, but stayed any

25   discovery as to that cause of action because Plaintiff had failed to identify with particularity the

26   "genuinely secret aspects of its teaching lessons and manuals."  Merits Order at 19.

27

28

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

United States District Court
For the Northern District of California

1    Defendants' motion to quash the order allowing discovery, *see* ECF No. 13, was granted as

2    to Klim but denied as to Skywalker on August 10, 2011, by the Magistrate Judge in this matter.

3    Defendants filed a motion for relief from the Magistrate Judge's nondispositive pre-trial order,

4    which this Court granted on November 9, 2011.  *See* Order Granting Motion for Relief From

5    Nondispositive Pre-Trial Order Re: Motion to Quash, Nov. 9, 2011, ECF No. 129 ("Discovery

6    Order").  Upon determining that the balance of harms weighed in favor of preserving Defendants'

7    anonymity at this stage of the proceedings, the Court stayed all discovery related to Skywalker's

8    identity pending resolution of Defendants' second special motion to strike and for summary

9    judgment, which are now before the Court.  *See id.* at 13-16.

10    Pursuant to the Court's Merits Order, Plaintiff served an Amended Trade Secret Disclosure

11    ("ATSD") on Defendants on July 7.  *See* Decl. of Koltun Decl. ISO MTS, ECF No. 136 ("Koltun

12    MTS Decl."), Ex. 1; Opp'n to MTS at 6.  On July 14, 2012, Plaintiff filed a First Amended

13    Complaint alleging only claims for copyright infringement under 17 U.S.C. § 501 *et seq.*, and

14    misappropriation of trade secrets under California Civil Code § 3436 *et seq.*, against all Doe

15    Defendants operating as or with anonymous Defendant Skywalker.  *See* FAC at 10-11.  Defendants

16    subsequently filed the pending motion for summary judgment on the copyright claim and second

17    special motion to strike the trade secret claim.

18    Although Skywalker and Klim have remained anonymous, the parties have exchanged

19    initial disclosures.  *See* ECF No. 99.  Plaintiff also served interrogatories and requests for

20    production on Skywalker through counsel.  *See id.*  At oral argument, Defendants' counsel

21    indicated that Skywalker has produced documents and responded to interrogatories where they do

22    not apply solely to the trade secrets claim, for which discovery is stayed because Plaintiff has not

23    identified its trade secrets with sufficient particularity.

24    **II.  MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT CLAIM**

25    Defendants move for summary judgment on Plaintiff's copyright claim, asserting: (1)

26    Plaintiff does not own the copyright in the BWSM; (2) Skywalker's posting of the BWSM was

27    protected "fair use"; (3) Plaintiff cannot show entitlement to any money damages; and (4) Plaintiff

28

9

has misued its alleged copyright for the improper purpose of chilling Defendants' free speech on an issue of public interest.

### A. Legal Standard

Summary judgment is proper when the pleadings, discovery, and affidavits demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

In ruling on a motion for summary judgment, the Court may consider only admissible evidence. *See* Fed. R. Civ. P. 56(c)(2); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).[5] The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ruling on a motion for summary judgment." *Id.*; *accord House v. Bell*, 547 U.S. 518, 559-60 (2006). However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, where the nonmoving party will have the burden of proof at trial on a particular issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's

---

[5] "We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses." *Celotex Corp.*, 477 U.S. at 324.

10

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

case." *Celotex Corp.*, 477 U.S. at 325.  Provided there has been adequate time for discovery, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (internal quotation marks omitted).  To carry this burden, the nonmoving party may not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts").  The nonmoving party has the burden of identifying in its opposition papers, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  It is not the Court's responsibility "to scour the record in search of a genuine issue of triable fact."  *Id.*; *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) (holding that "the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein").  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 322-23 (internal quotation marks omitted).

### B.  Prima Facie Case

The Copyright Act, 17 U.S.C. § 106, protects the owner of a copyright by granting him or her, *inter alia*, exclusive rights to "reproduce, distribute, and publicly display copies of the work." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003); *see* 17 U.S.C. § 106.  To establish a prima facie case of copyright infringement, a plaintiff must show (1) "ownership of a valid

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

copyright," and (2) "violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011); *see* 17 U.S.C. § 501(a).

### 1.   Infringing Act

Plaintiff has presented no evidence that Klim reproduced, distributed, or publicly displayed copies of the BWSM.  Thus, Klim is entitled to summary judgment on the issue of noninfringement, and Defendant s' motion for summary judgment is therefore GRANTED as to Klim on that basis.  However, Skywalker admits that he posted the text of the BWSM on his BAOL Blog on July 21, 2010, and therefore Skywalker is not entitled to summary judgment on the same basis as Klim. *See* 2d Skywalker Decl. ¶ 6.  The Court therefore considers whether Plaintiff has carried its burden of proving copyright ownership in the BWSM.

### 2.   Copyright Ownership

Plaintiff bears the burden of proving copyright ownership, which is always a threshold question in copyright infringement actions.  *See Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011) (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984)); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003).  To prove ownership, Plaintiff must establish either that it authored the asserted work, or that there has been a "transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant."  4-13 NIMMER ON COPYRIGHT § 13.01.

Here, Plaintiff asserts copyright in the BWSM because: (1) "Plaintiff was an author of the [BWSM]; and (2) "all copyrights to the [BWSM] have been assigned to Plaintiff."  Opp'n to MSJ at 6.  For the reasons discussed below, the Court agrees with Defendants that Plaintiff has failed to adduce admissible and competent evidence in support of either ownership theory and has therefore failed to create a genuine issue of fact on an essential element of its prima face case.

### a.   Authorship

As an initial matter, Plaintiff urges the Court to view its certificate of registration as prima facie proof of ownership of a valid copyright.  *See* Fischman MSJ Decl. ¶ 9 & Ex. A.  The

United States District Court
For the Northern District of California

12

certificate of registration lists the "Art of Living Foundation" as the author and identifies the BWSM as a "[w]ork made for hire."  Fischman MSJ Decl. Ex. A.  Ordinarily, "[a] certificate of registration raises the presumption of copyright validity and ownership."  *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987 n.2 (9th Cir. 2009) (citing *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075-76 (9th Cir. 2000)); *accord United Fabrics Int'l, Inc. v. C & J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) ("A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'") (quoting 17 U.S.C. § 410(c)).  This presumption of validity, however, applies only where "registration [is] made before or within five years after first publication of the work."  17 U.S.C. § 410(c).  Here, the BWSM has a first publication date of June 1, 2003, but Plaintiff did not obtain a registration certificate from the U.S. Copyright Office until October 25, 2010, more than five years after the work's original publication.  *See* Dhall Decl. ¶¶ 37-38, 63 & Ex. D; Fischman MSJ Decl. ¶ 9 & Ex. A.  Because the registration was obtained more than five years after the BWSM's first publication, the registration certificate, on its own, does not constitute prima facie evidence of valid copyright ownership.  *See* 17 U.S.C. § 410(c); *see also McCarthy v. Stollman*, No. 06 Civ. 2613 (DAB), 2009 WL 1159197, at *4 n.4 (S.D.N.Y. Apr. 29, 2009).  Instead, the evidentiary weight to be accorded is subject to the discretion of the Court.  *See* 17 U.S.C. § 410(c); *Lanard Toys Ltd. v. Novelty, Inc.*, 2007 WL 2439505, at *7 (C.D. Cal. Mar. 17, 2006); *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 515 (S.D.N.Y. 2003).

In determining what evidentiary weight to accord Plaintiff's registration certificate, the Court considers whether the other evidence in the record corroborates the information in the registration certificate that the BWSM is a "work made for hire" for the benefit of AOLF-US, for even a presumption of validity "may be overcome by the 'offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.'"  *Lamps Plus*, 345 F.3d at 1145 (quoting *Entm't Research Grp., Inc. v. Genesis Creative Grp.*, 122 F.3d 1211, 1217 (9th Cir. 1997)).  For example, "the statutory presumption of validity [of the copyright] can be rebutted if

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

1   the alleged infringer demonstrates that the plaintiff's work 'is not original but copied from

2   another's work.'"  *Entm't Research Grp.*, 122 F.3d at 1218 (quoting *N. Coast Indus. v. Jason*

3   *Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992)); *see also Syntek Semiconductor Co., Ltd. v.*

4   *Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (explaining that the validity of the

5   copyright "can be challenged by presenting evidence attacking the elements of a valid copyright,

6   such as ownership, copyrightable subject matter, and originality").  Indeed, "[o]riginality is the

7   indispensable prerequisite for copyrightability."  *N. Coast Indus.*, 972 F.2d at 1033.

8          The Court finds that Plaintiff's assertion of authorship is undermined by Plaintiff's own

9   evidence to the contrary.  For its claim that AOLF-US employees contributed to the original

10  writing of the BWSM in 2002, Plaintiff relies exclusively on two declarations, one by the current

11  president of AOLF-US, Michael Fischman, and the other by the current Secretary for the Office of

12  His Holiness Sri Sri Ravi Shankar and AOLF-India, Jaina Desai.  *See* Fischman MSJ Decl. ¶ 1;

13  Desai Decl. ¶ 1.  These two declarations state that Shankar conceived of the idea for the BWSM in

14  2002, and that subsequently, Shankar and employees and volunteers of AOLF-India, AOLF-US,

15  and other AOLF chapters from around the world "began writing the [BWSM]."  Fischman MSJ

16  Decl. ¶ 6; Desai Decl. ¶ 4.  These two declarations, however, go on to state, "This work was done

17  *for the benefit of the Art of Living Foundation in India* with the understanding that *the Art of Living*

18  *Foundation in India would own the [sic] all of the rights to this [BWSM]*."  Fischman MSJ Decl. ¶

19  6 (emphases added); Desai Decl. ¶ 4 (same).  Under the "works made for hire" provision of the

20  Copyright Act, "the employer or other person for whom the work was prepared is considered the

21  author" and owns the copyright, absent a written agreement to the contrary.  17 U.S.C. § 201(b);

22  *see Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).  Thus, to the extent the

23  original 2002 BWSM was a "work made for hire," as Plaintiff claims it was, the Fischman and

24  Desai Declarations establish that AOLF-India was the author, not AOLF-US.  Furthermore,

25  Plaintiff has produced no evidence of any intent that AOLF-US be a co-author.  In short, Plaintiff's

26  own evidence could only support a finding that AOLF-India, not AOLF-US, owned the original

27

28

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1    copyright to the BWSM, notwithstanding any contributions AOLF-US employees may or may not

2    have made to the original writing.

3         Accordingly, Plaintiff's only possible claim to authorship must be based on any non-trivial,

4    original contributions AOLF-US employees made to the BWSM after "control over the work on

5    the [BWSM] was transferred from the Art of Living in India to Plaintiff" in 2003.  Fischman MSJ

6    Decl. ¶ 7; Desai Decl. ¶ 5.  To prevail on this theory, Plaintiff must show that its changes to the

7    2002 draft version were sufficiently substantial and original that the final 2003 BWSM was, in

8    essence, a new, derivative work.  *See* 17 U.S.C. § 103(b).  Again, Plaintiff relies exclusively for

9    this issue on Mr. Fischman's declaration, which states simply that Plaintiff "finalized" the BWSM

10   in 2003.  Fischman MSJ Decl. ¶ 8.  Beyond this vague assertion that Plaintiff "finalized" the

11   BWSM in 2003, however, the record is completely bereft of evidence explaining what

12   contributions AOLF-US employees made after "control" of the BWSM was transferred.  Indeed,

13   Defendants have come forward with evidence that Plaintiff's contributions post-2003 were de

14   minimis.  Defendants submit a version of the BWSM that Skywalker recalls seeing sometime in

15   2002.  *See* 3d Skywalker Decl. Ex. B.  Mr. Fischman's declaration confirms that "[t]he 2002

16   publication attached to the third Skywalker declaration as Exhibit B was a draft of the [BWSM]."

17   Fischman MSJ Decl. ¶ 6.  Upon independent review of the 2002 draft version and the asserted

18   2003 final version of the BWSM, the Court finds that the substantive content of the two versions is

19   virtually identical.  At the hearing on this motion, Plaintiff's counsel conceded that "the changes

20   [AOLF-US made in 2003] were relatively minor.  I think if you do a comparison of . . . the 2002

21   manual to the 2003, I believe there's an additional page of text at the end and there are some

22   formatting changes.  But by and large the changes were minor."  Tr. at 11.  When pressed,

23   Plaintiff's counsel was unable to articulate what specific contributions AOLF-US employees made

24   to the BWSM after "control" was transferred in 2003, and instead alluded only to some "format

25   changes."  Tr. at 7, 8.  By Plaintiff's own admissions, then, Plaintiff's "original" contributions after

26   "control" was transferred from AOLF-India to AOLF-US were largely minor, editorial changes.

27   Plaintiff has failed to provide sufficient evidentiary support for its claim to authorship of the

28
Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

BWSM, and therefore the Court gives the copyright registration certificate, which was obtained on the eve of this litigation, no evidentiary weight.[6][7]   The Court therefore turns to Plaintiff's alternative theory of ownership: transfer of rights.

### b.   Transfer

Plaintiff's second theory of copyright ownership is based on a purported transfer of copyright from AOLF-India to AOLF-US in 2003.  Ownership of a copyright is freely transferrable "by any means of conveyance or by operation of law."  17 U.S.C. § 201(d).  However, the Copyright Act explicitly provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).  Thus, to establish a valid transfer, Plaintiff must present evidence of either a written instrument of conveyance, or a written memorandum of a previous oral or written conveyance.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (explaining that "an earlier oral assignment can be confirmed later in a writing"); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996) (holding that a writing dated more than fourteen years after the oral transfer was sufficient to establish transfer of copyright ownership).  "The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so."  *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990).

---

[6] In other cases, courts have given substantial weight to belatedly obtained registration certificates where the defendant utterly failed to come forward with any argument or evidence to rebut the presumption of validity.  *See, e.g.*, *Troll Co. v. Uneeda Dolla, Inc.*, 483 F.3d 150, 154 (2d Cir. 2007) (finding that plaintiff company was likely to succeed in proving ownership, even though copyright registrations were obtained belatedly); *Yurman Design*, 275 F. Supp. 2d at 516-17 (granting summary judgment to plaintiff on the issue of copyright validity, although registration certificate was procured more than five years after first publication, where defendant produced no evidence as to why the certificates were invalid).  Such is not the case here.

[7] Because the Court gives no weight to the registration certificate, the Court need not address Defendants' additional allegation that Plaintiff's registration certificate from the Copyright Office was fraudulently obtained and thus invalid.

16

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1      Here, Plaintiff asserts that AOLF-India assigned its copyright interest in the BWSM to

2   AOLF-US in 2003.  However, Plaintiff has presented neither a copy of the actual written

3   assignment nor a copy of a written memorandum confirming a prior transfer of rights.  More

4   importantly, Plaintiff has presented no evidence whatsoever of any such conveyance.  Rather,

5   Plaintiff's sole evidence on the transfer is again Mr. Fischman's and Ms. Desai's declarations,

6   which state simply that "[i]n 2003, . . . [a]ll copyright in the [BWSM] were also assigned to

7   Plaintiff."  Fischman Decl. ¶ 7; Desai Decl. ¶ 5.

8      These bare, conclusory statements are insufficient to sustain Plaintiff's prima facie case.

9   *See Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A

10  conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

11  insufficient to create a genuine issue of material fact.").  First, Mr. Fischman's and Ms. Desai's

12  declarations fail to establish a foundation for their personal knowledge of any transfer of copyright.

13  Under Federal Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is

14  introduced sufficient to support a finding that the witness has personal knowledge of the matter."

15  The matter must be known to the declarant personally, as distinguished from matters of opinion or

16  hearsay.  Fed. R. Evid. 602.  While "[e]vidence to prove personal knowledge may consist of the

17  witness's own testimony," *id.*, a declarant's "mere assertions of personal knowledge and

18  competency to testify are insufficient" to establish the truth of the matters asserted, *see Boyd v. City*

19  *of Oakland*, 458 F. Supp. 2d 1015, 1024 (N.D. Cal. 2006).  Here, Mr. Fischman's declaration

20  merely states that he is currently the President of AOLF-US, but does not state that he was AOLF-

21  US's president in 2003, at the time of the supposed transfer.  Likewise, Ms. Desai's declaration

22  states that she is currently the Secretary for AOLF-India, but does not state that she held that

23  position at the time of the supposed transfer, nor does she explain what her job responsibilities as

24  "Secretary" entail.  Although personal knowledge can sometimes be inferred from the position held

25  by the declarant, Mr. Fischman's and Ms. Desai's positions do not on their own support a

26  reasonable inference that they have personal knowledge of a particular oral or written agreement

27  that allegedly occurred eight years earlier.  *Cf. In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000)

28

17

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

(company's credit manager could be presumed to have personal knowledge of the firm's credit practices); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (corporate officer could be presumed to have personal knowledge of the identity of the company's employees and the scope of their employment duties); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (chairman of an executive council could be presumed to have personal knowledge of the council's activities during his tenure).

Second, and fatal to Plaintiff's claim, Mr. Fischman's and Ms. Desai's declarations do not make any reference to the writing required by statute. Nor do they even disclose whether the purported assignment of rights was written or oral. Indeed, Plaintiff seems unclear on its own theory as to the BWSM's chain of title. At oral argument, Plaintiff's counsel first indicated, "We do have a written assignment that—we've given certain information about that written assignment to the Defendant," but then switched course and stated, "This was a, an oral assignment that was confirmed later in writing." Tr. at 3. Defendants' counsel later stated that, although he has asked Plaintiff to produce the requisite writing, he has never seen any such evidence. Tr. at 17. To this, Plaintiff's response was, "We haven't produced a good number of things. The Defendants haven't produced a good number of things. We have an agreement right now that both sides are essentially standing down on certain discovery issues until we have a decision on these motions . . . ." Tr. at 18.

The Court is not persuaded by Plaintiff's attempt to rationalize its failure to produce evidence of either a written assignment or a written confirmatory memorandum, as is statutorily required to establish copyright ownership by way of transfer. Proof of copyright ownership is a key part of Plaintiff's own prima facie case of copyright infringement, and Plaintiff has articulated no rational motive for withholding such evidence until after the Court rules on a summary judgment motion on this very claim. Once Defendants put Plaintiff on notice that they were moving for summary judgment based on lack of copyright ownership, Plaintiff should have "'come forward with all of [its] evidence'" on this essential element of its prima facie copyright claim. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (quoting *Celotex*, 477

18

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

U.S. at 326); *see* MSJ at 6.  Plaintiff's failure to come forward with evidence of a written assignment or of an oral assignment later confirmed in writing raises the inference that such evidence simply does not exist.  Absent proof of a written instrument, there can be no valid transfer of copyright.

At oral argument, Plaintiff's counsel argued that the purpose of the written assignment requirement under 17 U.S.C. § 204(a) is to prevent conflicts regarding ownership of a given work, and that "it would be unprecedented" to allow an accused infringer to use this statutory provision against a putative owner.  Tr. at 24.  The Court disagrees with Plaintiff's characterization of the law.  In *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996), the defendant challenged the validity of a copyright transfer between a third party and the plaintiff, arguing that the confirmatory memorandum was insufficient under the Copyright Act because it was not executed contemporaneously with the transfer itself.  *See* 85 F.3d at 1428-29.  The Ninth Circuit rejected this argument, reasoning that, "where 'the copyright holder appears to have no dispute with its licensee on [the matter of ownership], it would be anomalous to permit a third party infringer to invoke this provision against the licensee.'"  *Id.* (quoting *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982)).  Read in context, therefore, *Magnuson* and *Eden Toys* simply held that a written confirmatory memorandum need not be executed contemporaneously with the transfer itself to establish proof of valid copyright ownership for an infringement claim; so long as there is some evidence of an earlier oral grant, confirmed by a later writing, a plaintiff can proceed with its infringement claim.  To this Court's knowledge, however, the Ninth Circuit has not construed *Magnuson* to absolve a plaintiff of its fundamental responsibility to come forward with evidence that a prior oral agreement, later confirmed in writing, in fact occurred as part of its prima facie case.  *Cf. Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830-33 (3d Cir. 2011) (agreeing with the reasoning of *Magnuson* and *Eden Toys*, but nonetheless granting summary judgment in favor of the defendant because plaintiff failed to produce sufficient evidence of an actual oral transfer).

In sum, Plaintiff has failed to put forth admissible evidence from which a reasonable jury could find that Plaintiff either authored the BWSM or was assigned the rights to it.  Accordingly,

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

Plaintiff has not made a showing sufficient to establish the existence of an element essential to its

copyright infringement claim, and summary judgment must be granted in Defendants' favor.

### C.  Affirmative Defenses and Plaintiff's Rule 56(d) Motion

As discussed above, Plaintiff's "complete failure of proof" as to its copyright ownership of

the BWSM, an essential element of Plaintiff's prima facie copyright infringement claim,

"necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 322.  Consequently, the

Court need not consider Defendants' remaining arguments as to fair use, copyright misuse, or

damages.

Furthermore, because the Court grants summary judgment based not on one of Defendants'

affirmative defenses, but rather on Plaintiff's own failure to substantiate its prima facie claim of

copyright infringement, the Court DENIES Plaintiff's Motion for Denial of Defendants' Motion

for Summary Judgment under Federal Rule of Civil Procedure 56(d).  *See* Opp'n to MSJ at 18.

Rule 56(d) allows the Court to deny or defer ruling on a premature summary judgment motion

where the non-moving party "shows by affidavit or declaration that, for specific reasons, it cannot

present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  But this rule applies "only

'where the non-moving party has not had the opportunity to discover information that is essential

to its opposition.'"  *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (quoting

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)).

Here, Plaintiff's declaration states that further discovery is needed to elicit facts relating

solely to calculation of damages for the copyright claim.  *See* Rosenfeld MSJ Decl. ¶¶ 10-12.  Such

evidence is not essential to Plaintiff's opposition because it would not affect the Court's copyright

ownership analysis above.  *Cf. Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d

462, 465 (9th Cir. 1990) (district court did not abuse its discretion by granting summary judgment

on copyright liability while discovery motions relating solely to the issue of damages remained

outstanding).  Plaintiff itself should be in possession of any evidence pertaining to the issue of

copyright ownership, and Plaintiff should have presented this evidence, which is critical to

establishing its prima facie case, in defending against this summary judgment motion.  Rule 56(d)

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

does not allow Plaintiff to defeat Defendants' summary judgment motion by withholding evidence in Plaintiff's possession that is critical to establishing Plaintiff's own prima facie case. "'[S]o long as the losing party was on notice that [it] had to come forward with all of [its] evidence,' summary judgment can properly be entered." *MAI Sys.*, 991 F.2d at 520 (quoting *Celotex*, 477 U.S. at 326). Accordingly, Plaintiff's Rule 56(d) request to deny or defer ruling on the summary judgment motion pending further discovery is denied, and Defendants' motion for summary judgment on Plaintiff's copyright claims is GRANTED.

## III.  MOTION TO STRIKE TRADE SECRETS CLAIM

The Court next considers Defendants' renewed special motion to strike Plaintiff's trade secrets claim pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. The Court denied without prejudice Defendants' first special motion to strike the trade secrets claim, but stayed discovery on the trade secrets until Plaintiff identified with reasonable particularity "the genuinely secret aspects of its teaching lessons and manuals." *See* Merits Order at 19-20. Plaintiff subsequently served on Defendants pursuant to Cal. Civ. Proc. Code § 2019.210 an Amended Trade Secret Disclosure ("ATSD"), in which Plaintiff identified various passages of three documents that allegedly comprise trade secrets: (1) the Training Guide Phase One Manual; (2) the Phase One Supplement Manual; and (3) Sudarshan Kriya Teaching Notes.[8] *See* Koltun MTS Decl. ¶ 1 & Ex. 1. Defendants again specially move to strike Plaintiff's trade secrets claim. For the reasons discussed below, the Court again DENIES Defendants' anti-SLAPP motion.

### A.  Legal Standard

"A SLAPP suit – a strategic lawsuit against public participation – seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055 (2006) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1109 n.1 (1999)). "While SLAPP suits masquerade as

---

[8] In Plaintiff's opposition, Plaintiff explains that it intends to re-designate its trade secrets more broadly and requests that the Court adopt a schedule for this re-designation. Opp'n to MTS at 4. The Court addresses this issue separately in section III.C.3.c, *infra*, but for purposes of analyzing the instant motion, the Court assumes that the purported trade secrets, to the extent any exist, are contained within these three documents.

21

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

United States District Court
For the Northern District of California

1    ordinary lawsuits such as defamation and interference with prospective economic advantage, they

2    are generally meritless suits brought primarily to chill the exercise of free speech or petition rights

3    by the threat of severe economic sanctions against the defendant, and not to vindicate a legally

4    cognizable right." *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 21 (2010) (internal

5    quotation marks and citation omitted).  California's legislature enacted Cal. Civ. Proc. Code §

6    425.16, the anti-SLAPP statute, to provide a procedural remedy allowing courts "to promptly

7    expose and dismiss meritless and harassing claims seeking to chill protected expression." *Mindys*

8    *Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (internal quotation marks and citation

9    omitted); *see* Cal. Civ. Proc. Code § 425.16(a), (b).  "To encourage 'continued participation in

10   matters of public significance,'" the statute is to be "'construed broadly.'"  *Simpson Strong-Tie*, 49

11   Cal. 4th at 21 (quoting Cal. Civ. Proc. Code § 425.16(a)); *accord Mindys Cosmetics*, 611 F.3d at

12   595.

13          The anti-SLAPP statute provides that "[a] cause of action against a person arising from any

14   act of that person in furtherance of the person's right of petition or free speech under the United

15   States Constitution or the California Constitution in connection with a public issue shall be subject

16   to a special motion to strike, unless the court determines that the plaintiff has established that there

17   is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  A

18   special motion to strike brought under the anti-SLAPP statute involves a two-step analysis.  "First,

19   the defendant must make a prima facie showing that the plaintiff's cause of action arises from an

20   act by the defendant in furtherance of the defendant's right of petition or free speech in connection

21   with a public issue."  *Simpson Strong-Tie*, 49 Cal. 4th at 21 (internal quotation marks and

22   alterations omitted).  Second, if the defendant makes this prima facie showing, then "the cause of

23   action shall be stricken unless the plaintiff can establish a probability that the plaintiff will prevail

24   on the claim."  *Id.*

25          To establish a probability of prevailing on the claim, a responsive plaintiff must "state and

26   substantiate a legally sufficient claim."  *Rusheen*, 37 Cal. 4th at 1056 (internal quotation marks and

27   alterations omitted).  The plaintiff's burden at step two, however, is a relatively low one.  *See*

28

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

*Roberts*, 660 F.3d at 1163 ("In the anti-SLAPP context, 'probability' is a low bar."); *Mindys Cosmetics*, 611 F.3d at 598 ("[T]he second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong."). To withstand a special motion to strike, the plaintiff need only show a "'minimum level of legal sufficiency and triability,'" or "'minimal merit.'" *Mindys Cosmetics*, 611 F.3d at 598 (quoting *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 438 n.5 (2000), and *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 675 (2005), respectively).

The applicable standard "is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff." *Mindys Cosmetics*, 611 F.3d at 599 (internal quotation marks and citation omitted). If the plaintiff demonstrates that the complaint is both "'legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited,'" then the anti-SLAPP motion to strike must be denied. *Manufactured Home Cmties., Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1176-77 (9th Cir. 2011) (quoting *Wilson v. Parker, Covert & Chidestar*, 28 Cal. 4th 811, 821 (2002) (emphasis omitted)); *see* Cal. Civ. Proc. Code § 425.16(b)(2). Conversely, "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim,'" then the motion must be granted. *Manufactured Home Cmties.*, 655 F.3d at 1176-77 (quoting *Wilson*, 28 Cal. 4th at 821). In determining whether the plaintiff has carried its burden at step two, the court considers "the pleadings[] and supporting and opposing affidavits stating the facts upon which the liability or defense is based," Cal. Civ. Proc. Code § 425.16(b)(2), but "the court does not *weigh* the credibility or comparative probative strength of competing evidence.'" *Manufactured Home Cmties.*, 655 F.3d at 1176-77 (quoting *Wilson*, 28 Cal. 4th at 821 (emphasis in original)).

### B.  Prima Facie Showing of a Protected Act

The Court previously determined that Defendants had met their initial burden by showing that Defendant Skywalker's publication of the alleged trade secrets was directly connected to protected speech on a public issue. Merits Order at 16-17. As the Court previously determined,

23

**United States District Court**
For the Northern District of California

1   Defendants' anonymous statements that AOLFUS is basically a cult and a sham are speech on a

2   "public issue."  *Cf. Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 649 (1996)

3   (allegations that Church of Scientology harmed and abused its members was speech in connection

4   with a "public issue").  Furthermore, Defendant Skywalker appears to have published the alleged

5   trade secret documents – Art of Living teaching manuals – as part of a larger effort to debunk the

6   notion that the Art of Living Foundation and Ravi Shankar possess some "secret higher

7   knowledge."  Merits Order at 16.  Thus, Plaintiff's trade secret misappropriation claims "arise[]

8   from" an act in furtherance of Defendant Skywalker's right to free speech.  *Simpson Strong-Tie*, 49

9   Cal. 4th at 21.  No new facts have come to light that alter the Court's previous analysis.

10  Accordingly, the Court again finds that Defendants have made a prima facie showing that

11  Plaintiff's suit against them arises from a protected act.

12              **C.  Probability of Prevailing**

13          Because Defendants have met their initial burden, the burden thus shifts to Plaintiff to

14  demonstrate "a probability of prevailing" on its misappropriation of trade secrets claim.  *Mindys*

15  *Cosmetics*, 611 F.3d at 598; *see* Cal. Civ. Code § 425.16(b)(1).  Plaintiff claims that select passages

16  of (1) the Training Guide Phase One Manual; (2) the Phase One Supplement Manual; and (3)

17  Sudarshan Kriya Teaching Notes, comprise trade secrets belonging to Plaintiff.  *See* Koltun MTS

18  Decl. ¶ 1 & Ex. 1 (ATSD).  California has adopted a version of the Uniform Trade Secret Act

19  ("UTSA"), Cal. Civ. Code § 3426 *et seq.*, which defines a trade secret as:

20          information, including a formula, pattern, compilation, program, device, method,
        technique, or process, that: (1) [d]erives independent economic value, actual or
21      potential, from not being generally known to the public or to other persons who can
        obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts
22      that are reasonable under the circumstances to maintain its secrecy.

23  Cal. Civ. Code § 3426.1(d).  The UTSA further defines "misappropriation" to include:

24          (1) Acquisition of a trade secret of another by a person who knows or has reason to
25      know that the trade secret was acquired by improper means; or

26          (2) Disclosure or use of a trade secret of another without express or implied consent
27      by a person who:

28
                                            24

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

   (i) Derived from or through a person who had utilized improper means to acquire it;

   (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

   (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Cal. Civ. Code § 3426.1(b).  Thus, to show a probability of prevailing on its claim of misappropriation of trade secrets, Plaintiff must show through the pleadings and affidavits that: (1) the materials it has identified in its ATSD comprise a "trade secret, as defined under Cal. Civ. Code § 3426.1(d); and (2) Defendants misappropriated that trade secret.

Although the Court previously determined that Plaintiff had established "a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited," the Court granted Defendants leave to renew their anti-SLAPP motion.  *See* Merits Order at 17, 20. (citing *Religious Tech. Ctr. v. Netcom On-Line Cmty. Servs.*, 923 F. Supp. 1231, 1250-51 (N.D. Cal. 1995)).  Defendants' second anti-SLAPP motion now seeks to strike the trade secrets claim on grounds that: (1) Plaintiff lacks standing to sue; (2) adjudication of Plaintiff's claim is barred by the Free Exercise Clause; (3) Plaintiff fails to establish the existence of a trade secret; (4) Plaintiff fails to establish that Defendants misappropriated the putative trade secrets; and (5) Plaintiff cannot establish damages.  Many of these arguments were also addressed in the Court's first Merits Order, but some of them are new or more fully developed in Defendants' second motion to strike.  The Court addresses each of these arguments in turn.

   **1.   Standing to Sue**

25

United States District Court
For the Northern District of California

As a threshold matter, Defendants argue that Plaintiff has failed to establish proof of ownership of the putative trade secrets and thus lacks standing to sue for their misappropriation. Defendants argue that the "material designated as trade secrets all appears to originate from abroad, and to have been developed by Ravi Shankar."  MTS at 6.  However, Defendants offer no citations to the record in support of this allegation.  Unlike with the BWSM, Plaintiff has submitted a declaration by Mr. Fischman, President of AOLF-US, stating that Mr. Fischman himself co-authored the Manuals and Teaching Notes at issue, in coordination with Shankar and other senior faculty at AOLF-US.  *See* Fischman MTS Decl. ¶¶ 4-5.  Mr. Fischman's affidavit, based on personal knowledge, is sufficient to create a triable issue of fact as to ownership of the putative trade secrets, and Defendants' bare conclusory assertion is insufficient to defeat Plaintiff's evidence of ownership as a matter of law.  Thus, lack of standing is not a proper ground for striking the trade secrets claim.

### 2.  Excessive Entanglement with Free Exercise

Defendants next argue that the Free Exercise Clause of the First Amendment bars the Court and any jurors from evaluating Plaintiff's trade secret claim as presented, because doing so would require the judicial system to "impermissibly entangle[]" itself in religious matters.  MTS at 17 (quoting *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1249-50 & n.5 (9th Cir. 1999)); *see* MTS Reply at 9.

The Supreme Court has plainly held that the First Amendment prohibits courts from resolving "controversies over religious doctrine and practice" in adjudicating church property disputes.  *Presbyterian Church v. Hull Mem. Presbyterian Church*, 393 U.S. 440, 449 (1969); *accord Maktab*, 179 F.3d at 1248.  Courts must be careful not to "implicat[e] secular interests in matters of purely ecclesiastical concern."  *Presbyterian Church*, 393 U.S. at 449.  The Ninth Circuit has cautioned, however, that "[i]n avoiding the religious thicket, . . . we must be careful not to deprive religious organizations of all recourse to the protections of civil law that are available to others.  Such a deprivation would raise its own serious problems under the Free Exercise Clause." *Maktab*, 179 F.3d at 1248 (citing *Everson v. Bd. of Educ.*, 330 U.S. 1, 16 (1947)).  Thus, so long as

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

the asserted claims "are susceptible to decision by neutral principles," the Court can resolve a trade secret misappropriation dispute without violating the First Amendment. *Maktab*, 179 F.3d at 1249.

Here, Plaintiff has asserted that certain passages of its Manuals and Teaching Notes comprise trade secrets. In its previous Merits Order, the Court already rejected Defendants' contention that the "spiritual" nature of Plaintiff's asserted works precludes them from receiving trade secret protection. *See* Merits Order at 17. The Court cited *Religious Technology Center* in observing that "there is no authority for excluding any type of information [from trade secret protection] because of its nature" alone. *Id.* (quoting *Religious Tech. Ctr.*, 923 F. Supp. at 1252). Defendants now argue that *Religious Technology Center* is inapplicable because it was decided before the Ninth Circuit decided *Maktab*. *Maktab*, however, simply reinforced the principle that "a court may resolve property disputes by applying secular principles of property, trust[,] and corporate law when the instruments upon which those principles operate are at hand." 179 F.3d at 1249. *Maktab* did not hold that works of a religious nature are not entitled to trade secret protection.

Defendants argue that the alleged "secrets" are simply "a series of mystical claims and contentions" that are indistinguishable from "conventional Hindu mystical claims." MTS at 17. Defendants further argue that "[i]nsofar as Plaintiff is contending that it has added 'additional and novel elements' to the traditional Hindu concepts to which its teaching methods refer[,] the question whether those 'additional' elements (whatever they may be) are in fact 'novel' additions to the Hindu tradition is itself an inquiry that would ensnare the judicial system in questions of religious doctrine." MTS Reply at 8-9.

The Court is not persuaded. Resolution of Plaintiff's trade secret claim does not require the Court to *interpret* Hindu beliefs or other religious teachings, nor does it require the Court to declare whether a particular belief is correct or not. To the contrary, the Court can determine the trade secret status of Plaintiff's designated materials as it would any secular work—by: (1) comparing it to evidence of what is "generally known" to the public or to other persons who can obtain economic value from its disclosure or use; (2) considering whether Plaintiff derives economic

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  value from its nondisclosure; and (3) evaluating whether Plaintiff takes reasonable measures to

2  maintain the secrecy of the information.  "While the trade secret laws did not necessarily develop

3  to allow a religion to protect a monopoly in its religious practices, the laws have nonetheless

4  expanded such that [a religious entity's] techniques, [if] 'used in the operation of the enterprise,'

5  are deserving of protection if secret and valuable."  *Religious Tech. Ctr.*, 923 F. Supp. at 1252.  A

6  defendant cannot deprive a plaintiff's materials of trade secret protection simply by invoking the

7  Free Exercise Clause through allegations that the materials overlap with religious doctrinal

8  principles.

9      Because it is possible for the Court to adjudicate Plaintiff's trade secret claim by resort to

10  neutral principles of trade secret law and without excessive entanglement in matters of religious

11  doctrine or practice, the Court declines to strike the trade secrets claim based on the Free Exercise

12  Clause.

13                           **3.  Existence of a Trade Secret**

14      The gravamen of Defendants' second special motion to strike is that Plaintiff has not

15  identified the existence of a trade secret.  As described above, "the test for a trade secret is whether

16  the matter sought to be protected is information (1) that is valuable because it is unknown to others

17  and (2) that the owner has attempted to keep secret."  *DVD Copy Control Ass'n Inc. v. Bunner*, 116

18  Cal. App. 4th 241, 251 (2004).  "Whether information is a trade secret is ordinarily a question of

19  fact."  *San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1537 (2007) (citing *In re*

20  *Providian Credit Card Cases*, 96 Cal. App. 4th 292, 300 (2002)).  In its previous Merits Order, the

21  Court already ruled that Plaintiff had sufficiently substantiated its claim of having a trade secret in

22  its teaching methods.  Defendants nonetheless continue to attack the existence of a trade secret on

23  multiple grounds.  For the reasons that follow, the Court again denies Defendants' anti-SLAPP

24  motion.

25                        **a.  Independent Economic Value**

26      First, Defendants argue that Plaintiff has not identified a trade secret because (1) the

27  material Plaintiff has designated as a trade secret is generally known by others, and (2) even if it is

28

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1  not generally known, Plaintiff cannot show that the material has any independent economic value

2  from its secrecy.  A trade secret requires proof of "independent economic value, actual or potential,

3  from not being generally known to the public or to other persons who can obtain economic value

4  from its disclosure or use."  Cal. Civ. Code § 3426.1(d)(1).  To qualify as a trade secret, the

5  information must be "sufficiently valuable and secret to afford an actual or potential economic

6  advantage over others."  *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 565

7  (2007) (internal quotation marks and citation omitted).

8        The Court previously ruled that Defendants had not established that the Manuals and

9  Teaching Notes are generally known to the public, and that Plaintiff had submitted competent

10 evidence that Plaintiff generates revenue from its courses and lessons based on the confidential

11 teaching manuals.  Merits Order at 18 (citing Dhall Decl. ¶¶ 64-69).  The Court further noted that

12 "Plaintiff distinguishes itself from other organizations that teach breathing, yoga, and meditation by

13 offering classes based on its confidential teaching manuals."  Merits Order at 17-18 (citing *ABBA

14 Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (1991)).  Defendants take issue with the Court's

15 ruling for several reasons, none of which entitle Defendants to the relief they seek.

16       First, Defendants argue that some of the designated trade secret material – in particular, the

17 Panchakosha meditation, the text of which is contained in the Training Guide Phase One Manual

18 and the Phase One Supplement Manual – has in fact already been publicly disclosed by Shankar

19 and other AOLF entities.  Defendants submit evidence that members of the public can readily

20 obtain audio versions of Shankar himself conducting the Panchokosha meditation, including as a

21 download from the AOLF-Europe website, and as a CD sold on the AOLF website.  *See* Koltun

22 MTS Decl. ¶ 2.  The Court agrees that, to the extent the Manuals and Teaching Notes contain the

23 text of the Panchakosha meditation as conducted by Shankar in these publicly available media,

24 those portions are publicly known and therefore not protectable under the trade secret statute.

25 Nonetheless, it appears that the Manuals designated by Plaintiff contain not only the text of the

26 Panchakosha meditation, but also instructions to AOLF teachers regarding how to guide students

27 through the meditation.  Plaintiff has presented an affidavit from current AOLF-US President

28

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART
SECOND SPECIAL MOTION TO STRIKE

**United States District Court**
For the Northern District of California

1    Michael Fischman, explaining that AOLF-US's "teaching methods are specific approaches to the

2    teaching of breathing, meditation, and yoga, which were designed by [AOLF-US] to simplify the

3    processes and to maximize the benefit for students."  Fischman MTS Decl. ¶ 9.  Although Plaintiff

4    cannot rely solely on Fischman's bare statement that "[AOLF-US's] teaching methods are novel

5    and innovative approaches to the teaching of breathing, meditation, and yoga," Fischman explains

6    more specifically that, for example, "the Panchakosha Guided Meditation described in the Manuals

7    contains timing, breathing, and resting instructions, referred to as 'gaps.' . . . The gaps (and other

8    instructions) are important and intentional aspects of [AOLF-US's] unique approach to the

9    Panchakosha Guided Meditation, and these aspects differentiate our process from other versions of

10   Panchakosha."  Fischman MTS Decl. ¶ 10.  The ATSD confirms Plaintiff's position that "[t]he

11   trade secret portions [of the Manuals] contain instructions to teachers about Plaintiff's classes on

12   breathing, meditation, and yoga, which are not to be conveyed to students of the course."  Koltun

13   MTS Decl. Ex. 1.  Similarly, the ATSD explains that "[l]arge portions of Plaintiff's Sudarshan

14   Kriya teachings [sic] notes contain information that is not to be conveyed by the student-teacher to

15   the end-student.  Rather, this information is for the student-teacher's own education, to prepare him

16   or her to teach Sudarshan Kriya."  Koltun MTS Decl. Ex. 1.  To the extent Plaintiff is claiming a

17   trade secret in its *methods* for teaching meditation through instructional courses, as opposed to the

18   meditation exercises themselves, the Court again concludes that Plaintiff has sufficiently

19   substantiated its claim, at least at this stage of the proceedings.  While Defendants have identified a

20   trade secret designation problem, they have not wholly undermined Plaintiff's claim to be in

21   possession of a trade secret in its teaching methods.

22        In addition, Defendants argue that many aspects of the designated materials cannot be trade

23   secrets because they are observed by students enrolled in the course.  Certainly, in *Self Directed*

24   *Placement Corp. v. Control Data Corp.*, 908 F.2d 462 (9th Cir. 1990), the Ninth Circuit affirmed

25   the grant of summary judgment in favor of defendants accused of trade secret misappropriation, in

26   part because the aspects of the plaintiff's self-help course alleged to be trade secrets "were in the

27   public domain because any student taking the course would have access to them."  908 F.2d at 465.

28

United States District Court
For the Northern District of California

1    Here, however, Plaintiff has submitted evidence that AOLF-US requires students to sign a

2    nondisclosure agreement upon enrollment in one of Plaintiff's courses, and that this policy has

3    been in place since before the Manuals and Teaching Notes were published.  *See* Fischman MTS

4    Decl. ¶ 7 & Ex. A (course registration form).  Thus, this case is analogous to *Religious Technology*

5    *Center*, in which the district court determined that the Church's religious texts could qualify as

6    trade secrets, in part because the Church's adherents were under a duty of confidentiality as to the

7    relevant materials.  923 F. Supp. at 1252; *see also Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125,

8    1130 (10th Cir. 2003) (program for infant swimming instruction could be trade secret,

9    notwithstanding fact that parents and bystanders were allowed to watch and videotape lessons).

10        Next, Defendants argue that the Manuals and Teaching Notes are not protectable as trade

11   secrets because they contain "conventional concepts and terminology of Hindu mysticism," as well

12   as techniques that are already widely known within the yoga community.  *See* MTS at 10.  While it

13   is true as a general matter that a plaintiff cannot claim trade secret protection for information that is

14   already widely known, "[t]he secrecy requirement is generally treated as a relative concept and

15   requires a fact-intensive analysis."  *DVD Copy Control Ass'n*, 116 Cal. App. 4th at 251 (citation

16   omitted).  Furthermore, even when discrete elements are commonly known, "[c]ombinations of

17   public information from a variety of different sources when combined in a novel way can be a

18   trade secret."  *2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D.

19   Cal. 2006); *see also Harvey Barnett*, 338 F.3d at 1130-32 (reversing a district court's grant of

20   summary judgment for improperly looking at the components of the plaintiff's infant swimming

21   program "in isolation, rather than as a whole, in determining that [plaintiff] does not possess a trade

22   secret"); *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 740 (2d Cir.

23   1965) (finding that, although eight of the nine constituent elements of a particular chemical process

24   were in the public domain, the "unified description of the design, process and operation, i.e., the

25   way in which all of the features were interrelated, the know-how by which it was done and the

26   method of making it work" was a secret and worthy of protection).

27

28

31

United States District Court
For the Northern District of California

1    As previously discussed, Plaintiff's purported trade secrets are its teaching methods and

2    processes, which Plaintiff submits distinguishes its courses from other competitor's yoga,

3    breathing, and meditation courses.  Mr. Fischman's declaration states that AOLF-US's teaching

4    methods "are novel and innovative approaches to the teaching of breathing, meditation, and yoga.

5    While [AOLF-US's] teaching methods refer to concepts from Hindu traditions, our teaching

6    methods incorporate many additional and novel elements, which transform the methods . . . into

7    [AOLF-US's] proprietary teaching methods."  Fischman MTS Decl. ¶ 10.  Although this evidence

8    is scant at best, Defendants have not presented evidence that clearly defeats Plaintiff's assertion

9    that its combination of teaching methods and processes are unique and novel.  *Cf. Harvey Barnett*,

10   338 F.3d at 1130-31 (crediting Plaintiff's expert declarations regarding the program's novelty as

11   sufficient to create a genuine issue of material fact).

12       Finally, Defendants argue that Plaintiff has not shown how its Manuals and Teaching Notes

13   have any independent economic value.  However, as the Court already noted in its previous Merits

14   Order, Plaintiff has submitted a declaration from the current Chairperson of the Board of Directors

15   for AOLF-US, Ashwani Dhall, which states that "[AOLF-US] distinguishes its courses from other

16   courses [in breathing, yoga, and meditation] by requiring the specialized training of its teachers,"

17   the teaching processes for which are contained in the Manuals and Teaching Notes.  Dhall Decl. ¶¶

18   20-21, 23-25; *see* Merits Order at 17-18.  Again, although this evidence is weak, Defendants have

19   not come forward with any competent rebuttal evidence.  Accordingly, Defendants have not

20   defeated Plaintiff's attempt to establish evidentiary support for its claim.  The anti-SLAPP motion

21   cannot be granted on this ground.

22                          **b.   Reasonable Efforts to Maintain Secrecy**

23       Second, Defendants argue that Plaintiff has not taken reasonable measures to protect any

24   purported trade secrets.  Information is protectable as a trade secret where the owner has taken

25   "efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code §

26   3426.1(d)(2).  As this Court noted in its previous Order, "[e]fforts at maintaining secrecy need not

27   be extreme, just reasonable under the circumstances."  *Religious Tech. Ctr.*, 923 F. Supp. at 1254;

28

                                             32

United States District Court
For the Northern District of California

Merits Order at 18.  "Reasonable efforts" can include: (1) advising employees of the existence of a trade secret, *Religious Tech. Ctr.*, 923 F. Supp. at 1253; (2) limiting access to the information on a "need to know basis," *Courtesy Temporary Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288 (1990); (3) requiring employees to sign confidentiality agreements, *MAI Sys.*, 991 F.2d at 521; and (4) keeping secret documents under lock, *Religious Tech. Ctr.*, 923 F. Supp. at 1253.

The Court previously determined that Plaintiff had submitted admissible evidence that "it keeps the [Manuals] and [Teaching Notes] on password-protected computers, limits access to the electronic files, requires teachers to agree not to disclose the manuals and lessons, and requires teachers to agree to not use the manuals and lessons for any other purpose than teaching Plaintiff's courses."  Merits Order at 18 (citing Dhall Decl. ¶¶ 29-36).  The Court determined that, although there was no evidence that students must sign nondisclosure agreements, the fact that students do not receive the actual Manuals and Teaching Notes, in conjunction with Plaintiff's other evidence, was sufficient to create a triable issue of fact as to the reasonableness of Plaintiff's efforts to maintain the secrecy of their proprietary teaching processes.  Merits Order at 18.

Plaintiff now submits additional evidence that it does, in fact, require students to sign a nondisclosure agreement upon enrollment in one of Plaintiff's courses, and that this policy has been in place since before the Manuals and Teaching Notes were published.  *See* Fischman MTS Decl. ¶ 7 & Ex. A (course registration form).  Thus, if anything, Plaintiff's case has strengthened. Defendants argue that the nondisclosure agreement at the bottom of AOLF-US's course registration forms is not sufficiently conspicuous, and that Plaintiff has failed to produce evidence of similar nondisclosure agreements by the other 140 AOLF chapters around the world.  However, "[j]ust because there is something else that [Plaintiff] *could* have done does not mean that [its] efforts were unreasonable under the circumstances."  *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1112-13 (10th Cir. 2009) (material issue of fact regarding secrecy of production processes existed where plaintiff posted signs warning employees to keep production processes confidential, required key employees to sign confidentiality agreements, barred visitors from viewing the production processes, marked certain relevant documents confidential, and subjected contractors to

confidentiality agreements); *see also Religious Tech. Ctr.*, 923 F. Supp. at 1254-55.  The UTSA

requires "reasonable efforts" to protect a secret, not maximum security.  "[O]nly in an extreme case

can what is a 'reasonable' precaution be determined on a motion for summary judgment, because

the answer depends on a balancing of costs and benefits" in a particular commercial context, which

involves issues of fact.  *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th

Cir. 1991).  Plaintiff has submitted sufficient evidence of reasonable measures to maintain the

secrecy of its Manuals and Teaching Notes to withstand Defendants' anti-SLAPP motion.

### c.   Failure to Designate with Particularity

Finally, Defendants contend that Plaintiff's failure to define the alleged trade secret with

specificity constitutes a failure to show the existence of the trade secret as a matter of substantive,

rather than purely procedural, trade secret law.  MTS Reply at 3-4.  The Court has already rejected

this argument.  *See* Merits Order at 19.  California Code of Civil Procedure 2019.20 provides that

"[i]n any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets

Act . . ., before commencing discovery relating to the trade secret, the party alleging the

misappropriation shall identify the trade secret with reasonable particularity."  This provision was

adopted "to require the trade secret claimant to identify the alleged trade secret with adequate detail

to allow the defendant to investigate how it might differ from matters already known and to allow

the court to craft relevant discovery."  *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147 (2009).  The

Court previously ruled that, while discovery on the trade secrets claim may not proceed until

Plaintiff identifies the scope of its trade secrets with reasonable particularity, Plaintiff's failure to

designate with reasonable particularity was not a proper ground for striking the claim altogether

pursuant to an anti-SLAPP motion.  Merits Order at 19.  The Court's ruling has not changed.  *See*

*Brescia*, 172 Cal. App. 4th at 149 ("[S]ection 2019.210 [is not] a substitute for a summary

judgment motion or a trial.");  *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1270 (C.D. Cal. 2007)

(noting that § 2019.210's particularity requirement is "related to discovery rather than pleading").

While Plaintiff's ATSD may perhaps be overbroad, Plaintiff has come forward with evidence that

at least some aspects of its teaching processes and methods may constitute trade secrets, as

34

discussed above.  Thus, Plaintiff has shown that its trade secret misappropriation claim has at least "minimal merit" sufficient to overcome this anti-SLAPP motion, even if Plaintiff may ultimately lose at trial after Defendants have the benefit of further discovery.

That said, the Court is sympathetic to Defendants' frustration with Plaintiff's protracted failure to identify its own purported trade secrets in a manner sufficient to allow discovery to proceed.  Notwithstanding Plaintiff's attempt, in its ATSD, to designate with reasonable particularity those portions of Plaintiff's Manuals and Teaching Notes that comprise Plaintiff's trade secrets, Plaintiff now seeks to withdraw that designation and re-designate its trade secrets, in light of new evidence not previously known to Plaintiff's counsel that AOLF-US requires its students, in addition to its teachers, to sign confidentiality agreements.  While the Court will allow Plaintiff to serve a second amended trade secret disclosure within seven (7) days of the date of this Order, the Court hereby puts Plaintiff on notice that this is its final opportunity to amend its trade secret designations with particularity.  *See Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292 (DLC), 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008) (granting summary judgment where plaintiff was unable to identify its trade secrets with specificity after plaintiff was placed on notice that its final submission would "constitute its binding representation of the full corpus of its alleged trade secrets").  Should Plaintiff fail to adequately identify its trade secrets and to explain how the allegedly protected information is distinguishable from the general knowledge of the public or those skilled in the relevant field, Defendants may move for summary judgment, and the Court will not entertain a FRCP 56(d) motion from Plaintiff on this issue.  *Cf. Imax Corp. v. Cinema Techs.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (granting summary judgment for defendant where plaintiff failed to identify the precise numerical dimensions and tolerances of its projector, thereby failing to carry its burden of showing the existence of a trade secret).

### 4.  Misappropriation

Skywalker has already previously admitted to posting the putative trade secret documents on the BAOL Blog in June and July 2010.  *See* Merits Order at 17 (quoting Defs.' 1st Mot. to Strike at 6).  Although Skywalker now seeks to trivialize the amount of overlap between his blog

35

United States District Court
For the Northern District of California

postings and the materials designated as trade secrets by Plaintiff, Skywalker continues to concede that there is at least some overlap.  *See, e.g.*, MTS at 6-7 ("There *is* a significant overlap between material in ATSD Ex. D "Sudarshan Kriya Notes" that has been designated as Trade Secret and material posted by Skywalker.").  Thus, Skywalker's anti-SLAPP motion cannot be granted based on lack of misappropriation.

By contrast, Plaintiff has presented no evidence that Klim misappropriated any of the alleged trade secret materials.  Accordingly, Defendants' anti-SLAPP motion is GRANTED as to Klim only.

### 5.  Proof of Damages

Finally, Defendants argue that the trade secret claim should be struck because Plaintiff is unable to show entitlement to any damages, and Plaintiff has dropped its request for injunctive relief from its FAC.  *See* MTS at 24.

The Court does not agree that, as a matter of law, Plaintiff will necessarily be unable to establish entitlement to damages.  Defendants argue that Plaintiff has presented no evidence that AOLF-US has suffered a loss of revenues as a result of Defendants' publication of AOLF-US materials on the BAOL Blog.  But as Plaintiff correctly notes, damages for trade secret misappropriation may be awarded not only for actual loss, but also for unjust enrichment, and if neither loss nor unjust enrichment can be proven, the Court may also order payment of a reasonable royalty in certain circumstances.  *See* Cal. Civ. Code § 3426.3; *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 626 (1992).  The reasonable royalty provision of the statute "track[s] the common law practice of allowing for reasonable royalties when the plaintiff could not prove any loss and the defendant 'made no actual profits.'"  *See Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1311 (2010).  Accordingly, the Court does not agree with Defendants that this anti-SLAPP motion can be granted for failure to show entitlement to damages.

In sum, Plaintiff has met its low burden of showing that its trade secret misappropriation claim has at least "a minimum level of legal sufficiency and triability."  *Mindys Cosmetics*, 611 F.3d at 598.  Although Defendants have also presented some evidence undermining the existence

36

Case No.: 5:10-CV-05022-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART SECOND SPECIAL MOTION TO STRIKE

United States District Court
For the Northern District of California

of a valid trade secret, it is not the Court's role to "weigh the credibility or comparative probative strength of competing evidence" on a special motion to strike. *Manufactured Home Cmties.*, 655 F.3d at 1176-77. Accordingly, Defendants' second special motion to strike the trade secrets claim is GRANTED as to Klim only, but DENIED as to Skywalker.

## IV.   REQUEST FOR ATTORNEYS' FEES

In connection with their anti-SLAPP motion to strike, Defendants also request that the Court award them attorneys' fees as "prevailing defendants" under Cal. Civ. Proc. Code § 425.16(c)(1) with respect to the defamation and trade libel claims. MTS at 1, 5. Generally, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c); *see also Bernardo v. Planned Parenthood Fed. of Am.*, 115 Cal. App. 4th 322, 360-67 (2004) (explaining policy behind mandatory fees and costs provision of anti-SLAPP statute). The Ninth Circuit has clarified that "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court, and that these provisions do not conflict with the Federal Rules of Civil Procedure." *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (citing *United States ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999)). Defendants argue that they qualify as "prevailing defendant[s]" for purposes of § 425.15(c) because Defendants' first special motion to strike the defamation and trade libel claims was denied as moot without prejudice, upon the Court's dismissal of those claims with leave to amend, and Plaintiff has not renewed those claims. MTS at 5. Plaintiff contends that Defendants are not prevailing parties because the Court never ruled on their motion to strike the defamation and trade libel claims, and since Plaintiff has voluntarily chosen not to renew those claims in the FAC, the anti-SLAPP remedies no longer remain available to Defendants. Opp'n to MTS at 8 n.1.

Courts have found that "[a] defendant may be deemed a prevailing party entitled to attorneys' fees, even if a plaintiff voluntarily dismisses the claims that were subject to an anti-SLAPP motion to strike." *Plevin v. City & Cnty. of S.F.*, No. 11-02359, 2011 WL 3240536, at *4 (N.D. Cal. July 29, 2011); *see Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (1998) ("[W]here

37

the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under [§ 425.16(c)].").  The California Court of Appeal instructs that "[a] plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which an anti-SLAPP motion is directed."  *ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal. App. 4th 1307, 1323 (2006).  Similarly, "a plaintiff cannot amend a pleading to avoid a pending anti-SLAPP motion."  *Id.*; *see also Sylmar Air Conditioning v. Pueblo Contracting Servs.*, 122 Cal. App. 4th 1049, 1054-55 (2004) (rejecting plaintiff's argument that "an amendment of the complaint is qualitatively different than dismissal of the complaint and therefore it should not be treated similarly").

Here, the anti-SLAPP motion was no longer pending at the time Plaintiff amended its complaint.  Nonetheless, "[i]n determining whether to exercise their discretion to deem a defendant a prevailing party, courts must consider the 'critical issue' of 'which party realized its objectives in the litigation.'"  *Plevin*, 2011 WL 3240536, at *4 (quoting *Coltrain*, 66 Cal. App. 4th at 107).  Although Plaintiff's decision to remove the defamation and trade libel claims from the FAC does not automatically render Defendants prevailing parties for purposes of attorney's fees, Plaintiff has not asserted, let alone demonstrated, that it dismissed the defamation and trade libel claims because Plaintiff "had substantially achieved its goals through settlement or other means, because the defendant was insolvent, or for other reasons unrelated to the probability of success on the merits."  *Coltrain*, 66 Cal. App. 4th at 107.

In *Plevin*, the district court found that the defendant's motion to strike certain state law claims was denied as moot because plaintiff did not intend to assert the claims in an amended complaint, but nonetheless found that the defendant could move for attorneys' fees under the anti-SLAPP motion.  2011 WL 3240536, at *5.  Similarly here, the Court concludes that Plaintiff's amendment of the Complaint to remove the defamation and trade libel claims is tantamount to a voluntary dismissal of those claims, which would likely have become subject to another anti-SLAPP motion.  Accordingly, the Court concludes that Defendants are entitled to move for

38

attorneys' fees under § 425.16(c)(1) with respect to the defamation and trade libel claims after judgment is entered.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on the copyright claim is GRANTED.  Defendants' second special motion to strike the trade secret claim is GRANTED as to Defendant Klim, and DENIED as to Defendant Skywalker.  Plaintiff shall serve its second amended trade secret disclosure on Defendants within seven (7) days of the date of this Order.  Defendants may move for attorney's fees under Cal. Civ. Proc. Code § 425.16(c)(1) with respect to the defamation and trade libel claims after judgment is entered.

**IT IS SO ORDERED.**

Dated: May 1, 2012

_Lucy H. Koh_
LUCY H. KOH
United States District Judge